IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL ABRAMOWITZ *et al.*, <br><br> *Plaintiffs,* <br><br> –v.– <br><br> KARI LAKE, *in her official capacity as Senior Adviser to the Acting CEO of the United States Agency for Global Media*; <br><br> VICTOR MORALES, *in his official capacity as Acting CEO of the United States Agency for Global Media*; <br><br> and <br><br> UNITED STATES AGENCY FOR GLOBAL MEDIA, <br><br> *Defendants.* | **Case No. 25-cv-00887 (RCL)** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'**
**MOTION TO STAY PROCEEDINGS AND PROPOSED SCHEDULE**

Plaintiffs Michael Abramowitz, Anthony LaBruto, and J. Doe 2 oppose Defendants' Motion to Stay Proceedings and Proposed Schedule. ECF No. 17. Plaintiffs in a related case–a diverse group of U.S. Agency for Global Media ("USAGM") employees, unions, and nonprofit organizations–filed their complaint on March 21, 2025 in the District Court for the Southern District of New York. *See* Complaint, *Widakuswara v. Lake*, No. 25-civ-2390 (S.D.N.Y. Mar. 21, 2025), ECF No. 1 ("*Widakuswara* Complaint"). Just three business days later, Plaintiff Michael Abramowitz, the Director of VOA, and two VOA contract employees, filed this case in this district. ECF No.1.

As explained below, these two cases, although related, concern different plaintiffs and different causes of actions, which alone is sufficient to defeat Defendants' motion. Moreover, Plaintiff Abramowitz, as the Director of the Voice of America, has the critical understanding of the agency, its mission, and operations that will facilitate this Court's consideration of the legal challenges to Defendants' efforts to close the network. The unlawful actions challenged in both cases also occurred in this district. Finally, the first-filed case challenging efforts to dismantle USAGM and its networks was filed before this Court: the cancellation of grants for Radio Free Europe/Radio Liberty ("RFE/RL").[1] Courts have relied on these types of considerations in denying similar motions to stay a related case.

Plaintiffs thus respectfully ask the Court to deny Defendants' Motion to Stay, ECF No. 17, and to grant Plaintiffs' Motion to Set an Expedited Preliminary Injunction Briefing Schedule, ECF No. 15.

## LEGAL STANDARD

Federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them." *Edge Inv., LLC v. District of Columbia*, 927 F.3d 549, 552 (D.C. Cir. 2019). This obligation can only be overcome under "exceptional circumstances." *Id.*

## ARGUMENT

### A. Defendants Have Not Satisfied Their High Burden for a Stay.

#### 1. The First-Filed Rule Does Not Apply in This Case Because Neither the Parties nor the Causes of Action Are the Same.

Defendants premise their stay motion on cases relying on the first-filed rule for certain related cases. But the case law in this Circuit makes clear that the first-filed rule does not apply because the related *Widakuswara* action concerns different parties and distinct causes of action.

---

[1] *RFE/RL v. Lake*, No. 1:25-cv-00799 (D.D.C. Mar. 18, 2025) (Lamberth, J.).

Defendants correctly point out that in this Circuit, district courts have discretion to stay a pending suit where there is a related case in another district, but a stay may only be granted "[w]here two cases between the same parties on the same cause of action are commenced in two different federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first." *Holland v. ACL Transp. Servs., LLC*, 815 F. Supp. 2d 46, 55 (D.D.C. 2011) (citing *Wash. Metro. Area Transit Auth. v. Ragonese,* 617 F.2d 828, 830 (D.C. Cir. 1980)); *see also Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 349 (D.C. Cir. 2003).

In the D.C. Circuit, the first-filed rule "is deemed to apply only when 'two cases *between the same parties* [and] *on the same cause of action* are commenced in two different Federal courts[.]" *See Nat'l Indus. for Blind v. Dep't of Veterans Affs.*, 296 F. Supp. 3d 131, 138 (D.D.C. 2017) (quoting *Ragonese*, 617 F.2d at 830) (emphasis added). "[T]he first-filed rule is inapposite here, as the instant case generally involves neither the same parties nor the same causes of action," *id.,* as the cases invoked by Defendants make clear.[2]

Unlike *Widakuswara*, this case features as a plaintiff Michael Abramowitz, the Director of VOA, who, joined by two other non-parties to *Widakuswara*, Anthony LaBruto and J. Doe 2, brings this suit to vindicate Congress's intent with respect to VOA, one of the several international broadcasting networks that Defendants are unlawfully dismantling. In so doing, Abramowitz is likewise vindicating his right–and duty–to lead the network, while LaBruto and J. Doe 2 seek to avoid the immediate harms the Defendants' actions portend with respect to their employment and,

---

[2] *See Columbia Plaza Corp. v. Sec. Nat. Bank*, 525 F.2d 620, 628 (D.C. Cir. 1975) ("The problem of whether to enjoin another action *involving the same parties and issues* . . . cannot be solved by blind application of a mechanical 'rule of thumb.'") (emphasis added) (declining to stay case); *Holland v. ACL Transp. Servs., LLC*, 815 F. Supp. 2d 46, 55 (D.D.C. 2011) ("This Circuit follows the well-established rule that [w]here two cases *between the same parties on the same cause of action* are commenced in two different federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first." (internal quotation marks omitted) (emphasis added)) (addressing circumstance where same parties filed dueling lawsuits). *See also, e.g.*, *Hisler v. Gallaudet Univ.*, 344 F. Supp. 2d 29, 35 (D.D.C. 2004) (declining to stay case).

as relevant to J. Doe 2, Plaintiff's ability to stay in the United States. Unlike the plaintiffs in *Widakuswara*, who include a diverse group of full-time employees, PSCs, a director of USAGM, and various organizational plaintiffs such as unions and nonprofits that rely on USAGM's work, this case features the lawful head of VOA, who can provide a unique perspective for understanding VOA and whose claims necessarily depend on VOA's proper functioning, and LaBruto and J. Doe 2, who provide perspective on how Defendants' actions have directly harmed contractor-journalists at VOA. Thus, there is no overlap among the party plaintiffs, and for that reason alone, Defendants' motion for a stay should be denied.

The causes of actions are also distinct. Although some constitutional and administrative causes of actions overlap, Plaintiffs' claims here are distinct as they are fundamentally (and solely) concerned with vindicating Congress's intent with respect to VOA and premised on Defendants' unlawful dismantling of the network. By contrast, the plaintiffs in *Widakuswara* bring claims largely rooted in First Amendment violations, such as allegations of viewpoint discrimination and chilling of free speech. *See Widakuswara* Complaint ¶¶ 102-16; Memorandum in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, *Widakuswara v. Lake*, No. 25-civ-2390 (S.D.N.Y. Mar. 24, 2025), ECF No. 17 at 15-26. Further, *Widakuswara* challenges the dismantling of USAGM, not just VOA, as in this action. *Contra Widakuswara* Complaint at 53-54 *with* ECF No. 1 at 33. These First Amendment claims are unrelated to Director Abramowitz's statutory authority and obligations, and they do not concern LaBruto's and J. Doe 2's claims premised on VOA's dismantling.

In other words, Plaintiffs here assert Director Abramowitz's statutory rights and duties that only he can vindicate. Further, the difference between the causes of actions in the two cases provides a second, independent reason to deny Defendants' stay motion.

### 2. Defendants' Other Stay Arguments Fail.

Beyond citing cases discussing the inapplicable first-filed rule, Defendants' motion offers little more than boilerplate on courts' discretion to stay cases. But this case does not constitute an "exceptional circumstance" that overcomes "the unflagging obligation" of the federal courts to exercise their jurisdiction. *Edge Inv., LLC*, 927 F.3d at 552. Defendants principally argue that they face the possibility of inconsistent rulings and that they are being forced to litigate in two fora. Simply put, those basic facts about litigation are not enough to warrant a stay. Of course, it goes without saying that Defendants have engendered this litigation and all other litigation related to their unlawful dismantling of USAGM and its broadcasting networks. That multiple lawsuits by distinct parties with distinct interests have been filed against Defendants is a predictable consequence of their conduct.

In any event, courts within this Circuit have explicitly rejected Defendants' argument that parallel litigation alone—a reality of nationwide litigation—somehow qualifies as sufficient hardship for a stay. "It is . . . seemingly incumbent upon the government Defendants to explain why, in our federal system, inconsistent judgments from courts in different jurisdictions should be considered inherently problematic." *Nat'l Indus. for Blind*, 296 F. Supp. 3d at 141. Indeed, Defendants' own cases make this point. *See Hisler v. Gallaudet Univ.*, 344 F. Supp. 2d 29, 35 (D.D.C. 2004) ("[S]tating a possibility of inconsistencies in rulings on the same issue, without any explanation on how her claim will suffer any harm, does not establish, in itself, a 'clear case of hardship.'"). Plaintiffs are cognizant of the burdens being placed on this Court and others as a result of cases filed related to Defendants' actions, as well as other nationwide litigation related to recent executive-branch actions. Such burdens, however, routinely accompany major government decisions that spawn litigation.

Because in support of their argument that the Court should exercise its discretion to stay this action Defendants have pointed to nothing more than the realities of litigation to support their motion for a stay, this Court should reject Defendants' argument.

> **B.   Even If the First-Filed Rule Applied, This Action Still Should Go Forward Because of Equitable Considerations.**

Even where the parties and causes of actions were the same, courts in this Circuit have refused to apply this first-filed rule in cases where the second-filed action deserves priority. *Holland*, 815 F. Supp. 2d at 55 (citing *Columbia Plaza Corp. v. Sec. Nat'l Bank*, 525 F.2d 620, 627-28 (D.C. Cir. 1975)). Here, multiple factors demonstrate that the interests of fairness and judicial efficiency are best served if this Court proceeds with the matter.

*First*, this Court is uniquely familiar with the underlying facts and legal issues presented here because it is currently presiding over *RFE/RL v. Lake*. *See* Complaint, No. 1:25-cv-00799 (Mar. 18, 2025 D.D.C.) (Lamberth, J.). While the plaintiffs differ, the two cases share significant overlap. RFE/RL and VOA are entities under USAGM's purview, and the core disputes in both cases concern the ability of these entities to fulfill their statutory missions under a similar overarching administrative framework. Given this Court's familiarity with the unique regulatory structure and Defendants' actions, proceeding in this forum promotes judicial efficiency and consistency in decision-making.

*Second*, the period between the filing of the two suits further militates against applying the first-filed rule. This case was filed only three business days after *Widakuswara*. Both cases are headed towards the preliminary injunction stage. And Plaintiffs' motions for immediate injunctive relief in this case were filed less than two days after the *Widakuswara* plaintiffs filed their motion. Courts have recognized that when related cases are filed within a close timeframe, the first-filed rule should not be applied rigidly. *See Ledyard v. United States,* No. 95–0880, 1995 WL 908244,

6

at *3 (D.D.C. 1995); *D.I.C. v. Bank of New York*, 479 F. Supp. 2d 1, 13 (D.D.C. 2007), *aff'd*, 508 F.3d 1 (D.C. Cir. 2007). The minor difference in timing does not warrant staying a case that is otherwise properly before the court.

*Third*, considerations of convenience and expertise strongly support not staying this case. The actions that Plaintiffs challenge took place in Washington, D.C., and all parties involved, including Director Abramowitz, Defendants Kari Lake, Victor Morales, and USAGM, are based in this district. Moreover, the D.C. Circuit's extensive experience with administrative law is relevant here. This case fundamentally concerns administrative law, statutory authority, and the application of congressional mandates: areas in which this Court and the D.C. Circuit possess specialized expertise. *See Holland*, 815 F. Supp. 2d at 57 (D.C. Circuit favored due to the court's experience with the specific statute).

*Finally*, it bears emphasizing once more that Director Abramowitz is uniquely situated to bring this lawsuit. Director Abramowitz, as the head of VOA, possesses a unique statutory mandate and authority that no other plaintiff in *Widakuswara* holds. His claims arise from his congressionally granted responsibilities to manage and guide VOA, which include preserving its mission, ensuring its effective operation, ensuring the safety of its employees, and maintaining its global credibility. His position as Director provides him with exclusive insight into VOA's history, operational needs, and congressional intent. This lawsuit, specifically with Director Abramowitz as Plaintiff, is thus a proper vehicle to address the dismantling of VOA.

Director Abramowitz's duty to effectively manage VOA's specialized workforce is being compromised. As the programming remains halted, Defendant Lake's statements that VOA is unsalvageable have prompted key staff members and journalists to seek employment elsewhere. *See* Declaration of Michael Abramowitz ¶ 6. These personnel all have specialized skills and unique

7

contacts across the globe which would be irretrievably lost if they are not allowed to continue working for VOA soon. This rapid exodus threatens Director Abramowitz's ability to maintain the institutional knowledge, expertise, and global contacts necessary to fulfill VOA's mission. Without the ability to retain critical personnel, Director Abramowitz is unable to ensure the effective management and operation of VOA's far-reaching journalistic efforts.

The longer Director Abramowitz and virtually the entire staff of VOA is on administrative leave, the more difficult it will be to maintain critical contractual relationships even if a preliminary injunction is issued ending leave. *See id.* ¶¶ 5-14. Overseas freelance journalists, essential for covering news globally, are compelled to secure other contracts due to terminated agreements. *Id.* ¶ 7. As a result, Director Abramowitz is losing the capacity to establish or renew these contractual agreements. Without these relationships, Director Abramowitz cannot fulfill his mandate of providing reliable and timely news coverage.

Audience engagement is also rapidly deteriorating, further impairing the Director's ability to execute VOA's mission. For the first time in 83 years, VOA programming has gone dark. *Id.* ¶ 11. Affiliates will soon have no choice but to seek alternative contractual agreements to substitute their programming. *Id.* For years, VOA has invested in worldclass digital media experts, tools, and training to build some of the largest and most loyal online audiences. Yet digital audience engagement has already plummeted across all platforms including Instagram, Facebook, YouTube, and X. *Id.* ¶ 11-12 These numbers have dropped from millions of engagements per day down to thousands or less. *Id.* These sharp declines threaten the Director's ability to maintain VOA's global reach and credibility.

Director Abramowitz's obligation to ensure cost-effective operations is also compromised. Reinstating or replacing essential contracts will incur substantial costs due to negotiations, new

public competitions, and potential contractor changes, resulting in worsened services and higher prices. *Id.* ¶¶ 7, 10.

Director Abramowitz's mandate to provide objective reporting is critically undermined. As VOA remains off air, harmful state propaganda and disinformation fill the void, obstructing his ability to deliver credible and accurate news. *Id.* ¶¶ 13-14.

Taken together, these equitable considerations of judicial efficiency, convenience of parties, this Court's expertise in administrative law, and Director Abramowitz's unique position all demonstrate that the motion for a stay should be denied and that an expeditious consideration of plaintiffs' motion for a preliminary injunction is necessary.

### C. The Increasing Harm to VOA Further Supports Plaintiffs' Motion Preliminary Injunction Briefing Schedule.

In addition to denying Defendants' motion to stay, Plaintiffs urge the Court to enter a briefing schedule for preliminary injunction that allows for expeditious resolution of Plaintiffs' motion for preliminary injunction. While the temporary restraining order in *Widakuswara* temporarily grants a portion of the relief Plaintiffs have requested, VOA remains shuttered because Plaintiffs and all other VOA employees are on indefinite administrative leave.

As explained above, Director Abramowitz is increasingly unable to carry out his statutory duties and fulfill VOA's mandated mission. And the longer this disruption continues, the more difficult it will be for Director Abramowitz to undertake his statutory duties even if he ultimately prevails. This urgency is what justifies as a preliminary injunction and what makes immediate judicial intervention necessary to preserve Plaintiffs' rights.

Director Abramowitz's ability to manage staff, maintain vital contractual relationships, retain audience engagement, control operational costs, and preserve VOA's narrative integrity is

being severely undermined. Without its staff to do its critical work, VOA cannot fulfill its statutory mandate.

## **CONCLUSION**

For these reasons, Plaintiffs request that the Court deny Defendants' Motion to Stay Proceedings and Defendants' Proposed Schedule, and grant Plaintiffs' Motion to Set a Preliminary Injunction Briefing Schedule, along with an expedited schedule for briefing and, if necessary, a hearing.

April 2, 2025                                            Respectfully submitted,

*/s/ William B. Schultz*
William B. Schultz (D.C. Bar No. 218990)
Margaret M. Dotzel (D.C. Bar No. 425431)
Brian J. Beaton, Jr. (D.C. Bar No. 90020963)*

ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
Fax: (202) 822-8136
wschultz@zuckerman.com
mdotzel@zuckerman.com
bbeaton@zuckerman.com

*Attorneys for Plaintiffs*
*\*Pro hac vice pending*