UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PATSY WIDAKUSWARA, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>KARI LAKE,<br>Senior Advisor to the Acting CEO of the U.S.<br>Agency for Global Media, et al.,<br><br>          Defendants. | Civil Action No. 25-1015 (RCL) |
| MICHAEL ABRAMOWITZ, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>KARI LAKE,<br>Senior Advisor to the Acting CEO of the U.S.<br>Agency for Global Media, et al.,<br><br>          Defendants. | Civil Action No. 25-0887 (RCL) |

## <u>DEFENDANTS' MOTION FOR A PARTIAL STAY PENDING APPEAL</u>

Defendants Kari Lake, in her official capacity as a Senior Advisor to the Chief Executive Officer ("CEO") of United States Agency for Global Media ("Global Media"), Victor Morales, in his official capacity as Acting CEO of Global Media, and Global Media, by and through counsel, respectfully move to partially stay the Court's April 22, 2025, preliminary injunction as set forth in the Memorandum Opinion (ECF No. 98) and Orders (ECF Nos. 29, 99) pending resolution of Defendants' appeal.  Pursuant to Local Civil Rule 7(m), the Government conferred with counsel for Plaintiffs in both actions, and Plaintiffs oppose the requested relief.  The grounds for this motion are as follows.

**INTRODUCTION**

On April 22, 2025, this Court granted Plaintiffs' motion for extraordinary relief and issued a preliminary injunction as set forth in the Memorandum Opinion (ECF No. 98) and Orders (ECF Nos. 29, 99). The extraordinary injunction that the Court entered sweeps far beyond any mandatory statutory duty that it identified. The Court has imposed sweeping restrictions and affirmative requirements affecting the administration of routine Global Media operations, personnel decisions, and contract management. The Court purported to treat Global Media as it existed before March 14, 2025, as the benchmark for minimum statutory compliance, and has ordered Global Media to rehire every employee and contractor, reinstate contracts, restore Fiscal Year ("FY") 2025 contracts, and otherwise refrain from reducing its workforce or stopping work that Global Media leadership may believe is inconsistent with their priorities. *See* Mem. Op. (ECF No. 98) at 36. The broad injunction constrains Global Media's ability to set its priorities as an agency of the Executive Branch, manage its day-to-day affairs, and interferes with Global Media's ability to comply with Executive Order 14238. The broad relief also requires Defendants to disburse monetary funds pursuant to grant contracts with Global Media grantees, funds that Plaintiffs have given no assurance they will return if the Government ultimately prevails in demonstrating that it is likely to succeed on the merits of its jurisdictional arguments. Such relief would cause the Government significant harm. Because the Government is likely to succeed in challenging the preliminary injunction and to ensure compliance with Federal Rule of Appellate Procedure 8(a) ("A party must ordinarily move first in the district court for . . . a stay of the judgment or order of a district court pending appeal."), Defendants respectfully request a partial

stay pending their appeal of this Court's preliminary injunction.[1]  Specifically, Defendants seek to stay the following provisions of the Court's injunction: "1) take all necessary steps to return USAGM employees and contractors to their status prior to the March 14, 2025 Executive Order 14238, "Continuing the Reduction of the Federal Bureaucracy," including by restoring all USAGM employees and personal service contractors, who were placed on leave or terminated, to their status prior to March 14, 2025," and "2) restore the FY 2025 grants with USAGM Networks Radio Free Asia and Middle East Broadcasting Networks such that international USAGM outlets can "provide news which is consistently reliable and authoritative, accurate, objective, and comprehensive," 22 U.S.C. § 6202(a), (b), and to that end, provide monthly status reports on the first day of each month apprising the Court of the status of the Defendants' compliance with this Order, including documentation sufficient to show the disbursement to RFA and MBN of the funds Congress appropriated[.]" *See Widakuswara*, Mem. Op. at 36.[2] As noted in the attached declaration of Roman Napoli ("Napoli Decl."), while Global Media represents that it will take all steps leading up to disbursement of funds to Radio Free Asia and Middle East Broadcasting Networks, it seeks through this motion for the Court to stay the actual disbursement of funds pending further order from the D.C. Circuit. Napoli Decl. ¶ 8. The Government is unlikely to recover these funds once

---

[1]    In their opposition to Plaintiffs' motion for a preliminary injunction, Defendants stated that should the Court decide to issue any preliminary relief, the Government respectfully requests that the Court stay its order for a short period to permit the Government an opportunity to consider whether to seek reconsideration or appellate review.

Defs.' Opp'n Prelim. Inj. (ECF No. 88) at 45; *see also id.* at 1 n.1.  The Court did not address Defendants' request when it issued the preliminary injunction and thus, Defendants hereby renew the request.

[2]    As noted herein, the Government objects to the Court's micromanagement of Global Media and Voice of America's day to day affairs and the constraints this overbroad relief puts on an Executive agency.

disbursed, which is likely to cause the Government significant harm. *See e.g., Dep't of Ed. v. California*, 604 U.S. ----, 145 S.Ct. 966, 968 (2025) (per curiam) ("[R]espondents have not refuted the Government's representation that it is unlikely to recover the grant funds once they are disbursed.").

Absent such relief, the Court's sweeping relief requires the immediate release of funds which would necessarily moot out a central issue in the Government's appeal and leaves Global Media with little to no recourse to recover the funds if the Court later finds that Defendants were wrongfully enjoined. The requirement to return employees to their status before March 14 similarly creates irreparable harm by hamstringing the agency's personnel operations and thus making it more difficult, rather than easier, to carry out the agency's statutory mandate.

Defendants request a stay pending appeal of these aspects of the Court's order, and an immediate administrative stay to avoid short-term irreparable harm. At a minimum, even if the Court is not prepared to issue a stay that lasts throughout appellate proceedings, Defendants respectfully request that the Court issue a temporary stay of these aspects of the injunction until the D.C. Circuit resolves a motion for a partial stay that Defendants intend to file in that Court tomorrow unless Defendants receive the full relief requested from this Court before then.

## ARGUMENT

In considering a stay pending appeal, the Court must examine "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest

lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). Each of the factors strongly counsels in favor of a prompt stay.

**I.      The Government is Likely to Succeed on Appeal Because the Preliminary Injunction Sweeps Far Beyond What is Necessary.**

A preliminary injunction is "an 'extraordinary and drastic remedy.'" *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted). Constitutional and equitable principles require that such extraordinary relief be no broader than necessary. *Cf. Gill v. Whitford*, 585 U.S. 48, 73 (2018); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994). Defendants assert that the relief awarded in this case is extremely broad and this Court lacks jurisdiction to control Global Media's personnel actions and to enforce Global Media grants. And the injunction appears to reflect a deeply problematic premise: that Global Media as it existed prior to March 14, 2025, should be the benchmark for minimum statutory compliance, and that any departure from that model carries a taint of illegality. Neither Global Media's organic statute nor precedent supports such a conclusion.

The injunction is overly broad and impinges on Global Media's day-to-day operations. The Court predicated its award of preliminary relief on it and Plaintiffs' beliefs that Global Media and Voice of America were on the brink of irreversible closure and such immediate relief was necessary to ensure Defendants perform mandatory statutory duties. But instead of entering an injunction tailored to only the mandatory statutory functions articulated in Global Media's organic statute, or tailoring relief to the named Plaintiffs rather than a broader group, the Court imposed sweeping and intrusive requirements that have no plausible basis in Global Media's operating statute or any other identified statute. This Court's injunction instead blocks standard workforce decision-making discretion, resource allocation decision-making discretion, and discretion to issue administrative directives that agencies that are not closing retain.

Indeed, the injunction is built on this fundamental contradiction: to ensure that the Global Media remains open and functional, this Court enjoined Global Media's leadership from using ordinary management tools that are available to all open and functioning agencies. Agencies that remain open possess broad discretion to allocate resources and make personnel decisions, under the control of politically appointed leadership. The impermissible effect of this Court's injunction is to require Global Media to operate as it stood before the presidential transition—an order that necessarily intrudes on the Executive's ability to set the policies and priorities for Executive agencies.

For instance, the injunction requires that Global Media to "take all necessary steps to return [Global Media] employees and contractors to their status prior to the March 14, 2025 Executive Order 14238…including by restoring all [Global Media] employees and personal service contractors, who were placed on leave or terminated, to their prior status prior March 14, 2025." *See Widakuswara*, Order (ECF No. 99) at 1. This mandate is impermissibly broad. The Court failed to distinguish between employees or contractors who may have been removed or terminated as a result the Executive Order 14238 and those removed for other causes and failed to provide any basis for superintending the agency's management of its personnel through a preliminary injunction, *see Sampson v. Murray*, 415 U.S. 61, 84 (1974) (emphasizing "the general unavailability of preliminary injunctions in Government personnel cases"). Rather than narrowing it to those employees or contractors who may have been removed or terminated as a result of Executive Order 14238, the Court includes every single "employee and contractor, who were placed on leave or terminated," which includes those who may have been placed on administrative leave or terminated for other causes, including, but not limited to, misconduct, performance issues, or security violations. As explained in the attached Declaration of Crystal Thomas, Global Media

Director of Human Resources, the Office of Human Resources has received a series of threatening emails from unknown email addresses, including an uptick in such threats following the U.S. District Court for the Southern District of New York issuing a temporary restraining order and this Court's entry of the preliminary injunction. Thomas Decl. ¶ 10. Indeed, as Ms. Thomas explains, Global Media will need to take numerous steps to re-integrate Global Media employees and contractors. *See id*. ¶¶ 3-9 (explaining the various steps Global Media will need to take to bring employees back, including restoring access to technological systems, explaining that Global Media may need to institute a phased reintegration approach, and to consider the agency's current physical space constraints). In the same vein, the Court has prohibited the Agency from making use of any reductions in force regardless of reason. Nowhere does the Court explain why keeping Global Media open or returning *all* workforce back to their status prior to March 14, 2025 complies with statutory requirements. Nor does the Court explain its constraints on Global Media's categorical prohibition on all workforce adjustments.

Moreover, the injunction severely impedes Global Media's discretion in negotiating, entering into, or terminating contracts. At bottom, these claims arise under the Tucker Act, over which the Court of Federal Claims maintains exclusive jurisdiction. *See* Defs.' Opp'n Prelim. Inj. (ECF No. 88) at 17, 25, 43. At present, the injunction requires Global Media to exist as it was prior to March 14, 2025 and restore grants with Global Media grantees. The injunction prohibits Global Media from engaging in contract negotiations, oversteps Global Media's broad discretion in setting terms of the grant agreements, and prevents Global Media from finalizing any subsequent contract termination even if Global Media determines that the contracts are unnecessary for the agency to fulfill its statutory functions. Indeed, agencies routinely enter and terminate contracts based on their needs and priorities, and this Court has provided no reasoned basis for curtailing

the agency's discretion to do so.

While the Court concluded that *California* does not change the governing law and that it did not preclude jurisdiction over Plaintiffs' claims regarding the withholding of congressional appropriations from networks, *see Widakuswara*, Mem. Op. (ECF No. 98) at 18, Defendants respectfully disagree with that conclusion. As Defendants explained, Plaintiffs challenged the termination of their grant agreements and sought relief requiring disbursement of the funds. Such relief inevitably arises of the grantee agreements (rather than statutory provisions, as the Court reasoned) because any obligation for the Government to disburse funds is governed by the express contract entered into between the grantee and the United States. *See* Defs.' Opp'n Prelim. Inj. (ECF No. 88) at 43–44. Plaintiffs and the Court attempt to avoid the jurisdictional bar of the Tucker Act by focusing on Congressional appropriations and Global Media's organic statute. Congress, however, has made clear that any funds disbursed to grantees like Plaintiffs are paid solely pursuant to grant agreements, i.e. contracts, between Global Media and the grantees. In analogous circumstances, the Supreme Court held that "the Government [was] likely to succeed in showing that the District Court lacked jurisdiction to order the payment of money under the [Administrative Procedure Act]" because the Tucker Act vested exclusive jurisdiction over such actions in the Court of Federal Claims. *California*, 145 S. Ct. at 968. This guidance is dispositive of Plaintiffs' claims, which at bottom involves a challenge to the Government's termination of federal grants.

In addition, consistent with the Supreme Court's ruling in *California*, another Judge of this Court held that the Court had no jurisdiction to grant such relief, citing Circuit precedent holding that "jurisdiction could not lie in the district court because the suit was inherently contractual." *U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*, Civ. A. No. 25-00465 (TNM), 2025 WL

763738, at *8 (D.D.C. Mar. 11, 2025), appeal docketed USCA Case No. 25-5066 (D.C. Cir. 2025), (citing *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 77 (D.C. Cir. 1985)).  Guided by D.C. Circuit precedent, Judge McFadden held there was no jurisdiction to hear a claim by a federal grantee seeking specific performance on a federal grant agreement.  As to the D.C. Circuit precedent, *Ingersoll-Rand Co*, the Court wrote: "[t]he Court squints in vain to see any daylight. Like those plaintiffs, the [plaintiff] asks the Court to order the Government to cancel the termination, pay money due, and reinstate the contracts.  That is something this Court lacks the power to do." *Id.* at *6.  The same is true here.  And since *California*, courts have been reacting by withholding or staying orders that would have required the types of remedies sought here.  *See, e.g.*, *Am. Ass'n of Colleges for Teacher Ed., et al. v. McMahon*, No. 25-1281 (4th Cir. Apr. 10, 2025) (granting the Government's motion to stay a preliminary injunction in light of *California*); Order, *New York v. Trump*, Civ. A. No. 25-0039 (D.R.I. April 7, 2025) (temporarily staying enforcement of an order pending a ruling on defendants' *California*-based motion for reconsideration).

## II.    The Remaining Factors Favor a Stay.

The equitable factors likewise weigh decisively in the Government's favor, and "the public interest and balance of equities factors merge" where, as here, "the government is the party" against whom an injunction is sought.  *MediNatura, Inc. v. FDA*, 998 F.3d 931, 945 (D.C. Cir. 2021); *see also Nken v. Holder*, 556 U.S. 418, 435 (2009) (noting that these factors merge in cases involving the government).  As the Government explained, the preliminary injunction disrupts Global Media's oversight of its grantees and impinges on Global Media flexibility to make staffing decisions—tools essential to the management of any agency.  The injunction prevents Global Media from ensuring taxpayer money is stewarded well, as intended by the statutory scheme that

Congress provided, and without such a protective measure, there may be no way to recover the funds lost to United States taxpayers if the Court were later to find that Defendants were "wrongfully enjoined." Also, the overly broad injunction prevents Global Media from executing any employment action, including placing any employee on administrative leave for any reason whatsoever. The injunction therefore interferes with the day-to-day operations of the agency, which should have available to it a full array of leave options. The injunction undermines Executive Branch governance and irreparably burdens the President's authority to "take Care that the Laws be faithfully executed." U.S. Const. Art. II, § 3. Thus, the Government and the public will suffer irreparable harm absent a stay. This is even more salient with respect to the Government's obligations to disburse funds which it is unlikely to recover. While Global Media will take all steps up to the actual disbursement of the funds (*see* Napoli Decl. ¶ 8), Defendants request that the Court stay the Government's obligations to disburse funds pending review on appeal. *California*, 145 S.Ct. at 968-69.

On the other hand, although the Court concluded that Plaintiffs were likely to suffer irreparable harm absent entry of a preliminary injunction, the harms that Plaintiffs purport to suffer are neither certain nor irreparable, such that a stay pending appeal will not irreparably injure Plaintiffs. Based on the preliminary injunction, the Court has awarded preliminary relief for the purpose of preserving Global Media's and Voice of America's existence and ensuring that they will continue to fulfill their statutory responsibilities. The Executive Order directs Global Media to operate at its statutory minimum, and Defendants are not seeking a stay of part three of the Court's injunction, which requires that Global Media "restore" Voice of America "programming such that [Global Media] fulfills its statutory mandate that [Voice of America] 'serve as a consistently reliable and authoritative source of news.'" *Widakuswara*, Order at 2; *see also*

*Abramowitz*, Order at 3-4.  In addition, the employees placed on administrative leave will still receive their full pay and benefits, *id.*, and Global Media has retained the ability to recall employees from administrative leave to work status as it seeks to implement the Executive Order.

## CONCLUSION

For these reasons, the Court should grant a partial stay of its preliminary injunction order pending resolution of Defendants' appeal.  In the alternative, the Court should grant a temporary partial stay pending resolution of Defendants' motion for a partial stay pending appeal to be filed in the D.C. Circuit tomorrow.

Dated:  April 24, 2025
           Washington, DC

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

By:  /s/ *Brenda González Horowitz*
        BRENDA GONZÁLEZ HOROWITZ,
           D.C. Bar # 1017243
        STEPHANIE R. JOHNSON,
           D.C. Bar # 1632338
        Assistant United States Attorneys
        Civil Division
        601 D Street, NW
        Washington, DC 20530
        Main: (202) 252-2500

        *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PATSY WIDAKUSWARA, et al., Plaintiffs, v. KARI LAKE, Senior Advisor to the Acting CEO of the U.S. Agency for Global Media, et al., Defendants. | Civil Action No. 25-1015 (RCL) |
| MICHAEL ABRAMOWITZ, et al., Plaintiffs, v. KARI LAKE, Senior Advisor to the Acting CEO of the U.S. Agency for Global Media, et al., Defendants. | Civil Action No. 25-0887 (RCL) |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendants' motion for a partial stay pending appeal, and the entire record herein, it is hereby

ORDERED that Defendants' motion is GRANTED, and it is further

ORDERED that that the Court's April 22, 2025, Memorandum Opinion and Order, which entered a preliminary injunction against Defendants, is partially STAYED as to the Government's obligations under provisions (1) and (2) of the Court's April 22, 2025 Orders (*Widakuswara*, ECF No. 99 at 1-2); (*Abramowitz*, ECF No. 29), pending the disposition of Defendants' appeal to the

United States Court of Appeals for the District of Columbia Circuit and the disposition of any petition for a writ of certiorari to the Supreme Court that Defendants may seek thereof.

SO ORDERED:

_____                    _____
Date                                        ROYCE C. LAMBERTH
                                            United States District Judge