## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL ABRAMOWITZ *et al.*, | |
| *Plaintiffs,* | |
| –v.– | |
| KARI LAKE, in her official capacity as Senior Advisor to the Acting CEO of the United States Agency for Global Media; | Case No. 25-cv-00887 |
| VICTOR MORALES, in his official capacity as Acting CEO of the United States Agency for Global Media; | |
| and | |
| UNITED STATES AGENCY FOR GLOBAL MEDIA, | |
| *Defendants.* | |

## PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE

On April 22, 2025, this Court granted Plaintiffs' motion for a preliminary injunction. In so doing, this Court ordered the Defendants to, among other things, "restore VOA programming such that USAGM fulfills its statutory mandate that VOA serve as a consistently reliable and authoritative source of news." Apr. 22, 2025 Order, ECF No. 29, at 3. Defendants sought and obtained an emergency stay of one provision of the Court's preliminary injunction relevant to this case, *see* No. 25-5144, Doc. #2114139 (D.C. Cir.) (staying provision (1) of the preliminary injunction), but did not seek a stay on and have never challenged provision (3), which requires the restoration of VOA's programming in line with its statutory mandate. Despite this provision of the preliminary injunction remaining in full effect, however, Defendants have willfully failed to comply with it since the Court issued its order more than a month ago. Defendants have failed entirely to restore VOA programming in line with what Congress required and at most have returned VOA's operations to *de minimis* levels, in clear contravention of VOA's statutory mandate.

Defendants' actions (or lack of action) plainly violate the preliminary injunction. As explained below, the en banc statement that the D.C. Circuit (Chief Judge Srinivasan, joined by six other judges) entered in this case today emphasizes that this Court has full authority to ensure compliance with provision (3) of the preliminary injunction. Accordingly, Plaintiffs' respectfully request that this Court order Defendants to show cause in line with this motion and proposed order. Further, Plaintiffs request that any briefing related to this motion be expedited, such that Defendants respond by Monday, June 2, 2025, and Plaintiffs file any reply by Thursday, June 5.[1]

---

[1] Consistent with the local rules, Plaintiffs' counsel met and conferred with Defendants' counsel prior to filing this motion. Defendants' counsel intends to oppose this motion and does not agree to Plaintiffs' proposed schedule.

As Plaintiffs explained in their memorandum in support of their motion for a preliminary injunction, VOA is *required by law* to carry out a variety of statutory functions. Such functions include that

> (1) VOA will serve as a consistently reliable and authoritative source of news. VOA news will be accurate, objective, and comprehensive.
>
> (2) VOA will represent America, not any single segment of American society, and will therefore present a balanced and comprehensive projections of significant American thought and institutions.
>
> (3) VOA will present the policies of the United States clearly and effectively, and will also present responsible discussion and opinion on these policies.

22 U.S.C. § 6202(c); *see also* ECF No. 4-2, Pls.' Mem. at 8–9. Likewise, VOA is required under other international broadcasting statutes to, *inter alia*, provide "news which is consistently reliable and authoritative, accurate, objective, and comprehensive." 22 U.S.C. § 6202(b)(1). Toward these ends, USAGM must have "reliable research capacity to meet the criteria under this section" and "adequate transmitter and relay capacity to support the activities described in this section," among other requirements. *Id.* § 6202(b)(4), (8), (9). *See also* Pls.' Mem. at 9–10.

These statutory mandates affirmatively require that VOA truthfully and impartially broadcast the news and that it have the operational capacity to do so. In other words, the operations of VOA must "be designed so as to effectively reach a significant audience." 22 U.S.C. § 6202(a)(7). Congress imposed these requirements on VOA. And only Congress can alter, dilute, or otherwise eliminate them. As further evidence of Congress's intent that VOA reach significant global audiences and maintain the operational capacity to do so, Congress appropriated $260,032,000 specifically to VOA for fiscal year 2024, and has renewed that appropriation three

times, including most recently in March 2025 upon President Trump's signature for the remainder of fiscal year 2025. Pls.' Mem. at 13–14.

With Congress's knowledge, *see, e.g.*, U.S. Agency for Global Media, *FY 2025 Congressional Budget Justification* at 65–67, https://www.usagm.gov/wp-content/uploads/2024/03/USAGMBudget_FY25_CBJ_03-08-24-1.pdf (detailing VOA's spending of its congressional appropriation), VOA previously spent this appropriation in a manner that allowed it to fulfill its statutory mandate. Prior to March 15, 2025, VOA spent approximately $170 million on full-time equivalent salaries, $60 million on private services contractors' salaries, and $30 million on maintaining general operational capacity, including paying for stringers, travel, equipment, and wire services, among other things. May 28, 2025 Declaration of Michael Abramowitz (Decl.) ¶ 3. VOA employed approximately 850 full-time equivalent employees and 550 personal services contractors. *Id.* ¶ 2. And VOA broadcast in 49 languages to nearly 100 countries, broadcasting more than 2,000 hours per week. *Id.* ¶ 6. VOA's 8 language services in East Asia and Pacific broadcasted to an approximately 80 million weekly audience, most of that (64.5 million) from Indonesia. *Id.* The VOA African Division connected with 93 million weekly users through content in 16 languages and distribution via 1,000+ affiliate partners across radio, TV, and digital platforms. *Id.* VOA's Latin American service reached 17 countries including Venezuela and Nicaragua for a total weekly audience of approximately 101 million. *Id.* The Mandarin service maintained a 24/7 real-time news website and produced a total of 17 hours of original TV and digital programming each week. *Id.* In fiscal year 2024, its TV and digital video reports garnered 198 million views on X and 189 million views on YouTube and its website attracted 77.3 million article views. *Id.*

In its preliminary-injunction opinion, this Court took stock of the situation following Defendants' likely illegal actions to shutter VOA. The Court recognized that (1) "VOA is not reporting the news for the first time in its 80-year existence"; (2) VOA's "website has not been updated since March 15, 2025, and radio stations abroad that rely on VOA's programming have either gone dark or air only music"; and all staff were placed on administrative leave, sidelined and otherwise prevented from doing their jobs. 25-cv-1015, ECF No. 98, Op. at 6–7. Defendants have never argued that they did not act unlawfully and never contested Plaintiffs' claims that their actions were arbitrary and capricious. *Id.* at 26 ("In their briefing before this Court, [Defendants] do not even use the words 'arbitrary' or 'capricious' anywhere, even though the central holding of the TRO was that the defendants' actions were arbitrary and capricious."). Importantly, they explicitly did not appeal the Court's preliminary injunction that requires that they "restore VOA programming such that USAGM fulfills its statutory mandate that VOA 'serve as a consistently reliable and authoritative source of news,'" *id.* at 36 (quoting 22 U.S.C. § 6202(c)). Based on the likely illegality of Defendants' actions to shutter VOA and Plaintiffs' showing of irreparable harm, this Court ordered, *inter alia*, that Defendants restore VOA programming in line with its statutory mandate during the pendency of this litigation.

And yet, the situation today remains the same—if not worse—than when the Court issued its preliminary-injunction order. Perhaps most telling is that VOA is operating with a single PSC and fewer than 35 full-time equivalent employees—2.5 percent of its prior workforce. Decl. ¶ 4. Between March 15, 2025, and yesterday, VOA broadcasted no programming over short or medium-wave radio or television. *Id.* ¶ 8. USAGM has announced that approximately 500 personal-services contractor employees will be terminated on May 31. VOA has transmitted *nothing* for two months. Just yesterday, USAGM turned on the Kuwait short-wave transmitter

which was used to broadcast 5 minutes of live radio to Afghanistan (2.5 minutes in Pashto and 2.5 minutes in Dari.). *Id.* The only other content VOA is putting out is limited social media postings and website updates in four languages. *Id.*

This Court found that VOA had been reduced to a shell of its former self, from a revered network that broadcast in nearly 50 languages to hundreds of millions of people a week to an essentially defunct entity. 25-cv-1015, ECF No. 98, Op. at 6–7. Despite the Court's preliminary-injunction order that is designed to restore VOA programming and functioning in line with the requirements Congress enacted, nothing has changed. In fact, rather than focus on complying with the preliminary injunction, Defendants have taken further actions to permanently shutter VOA, firing hundreds of employees, putting VOA's building up for expedited sale, and terminating the lease for its intended future location. Decl. ¶¶ 5, 11.

Stories from inside VOA underscore the dire situation. According to news reports, a "bare-bones" crew returned to VOA in early May and has been "barely publishing [news programming] in four" languages. Liam Scott, *'I am angry most of the time': Inside a small VOA cohort's return to work*, Poynter, https://www.poynter.org/business-work/2025/voice-of-america-staff-back-office-skeleton-crew/. The small number of staff working at VOA believe that "the return to work is just for show." *Id.* Despite this Court's order and Congress's manifest intent, "a 24/7 news operation" has been reduced to "a five-minutes-a-day, five-days-a-week operation." *Id.*

Simply put, this is legally insufficient, and Defendants have failed to comply with the preliminary injunction. As discussed, VOA *must by law* broadcast truthful, impartial news and reach significant audiences. These requirements are reflected in explicit statutory provisions in the international broadcasting statutes, just as they are reaffirmed by the statutory firewall that protects VOA's editorial independence and global credibility and the leadership structure that insulates

VOA's director from arbitrary removal. *See, e.g.*, Pls.' Mem. at 9 (discussing the "'firewall' between journalists and executive branch officials who must not interfere with the reporting at [USAGM] entities"), 13 (explaining that the structure of USAGM "protects the directors of United States international broadcasting entities from arbitrary removal, and forges consensus around who should lead these entities' non-partisan work"). Indeed, Plaintiffs described in their opening memorandum in support of their motion for a preliminary injunction how "[D]efendants are directly contravening clear statutory mandates that VOA maintain its independence from undue executive branch interference" and that "VOA obviously cannot deliver independent, impartial journalism if its journalists are prohibited from doing their job." *Id.* at 20–21.

On May 28, 2025, the en banc D.C. Circuit clarified that provision (3) of this Court's preliminary injunction, "which remains unstayed, requires the government to restore Voice of America (VOA) programming so as to fulfill VOA's statutory mandate." No. 25-5145, Doc. #2117869 (D.C. Cir) (Srinivasan, J., joined by six members of the court). The en banc court further explained that "the court's denial of en banc reconsideration of course should not be understood to accept … the government's assertion" that "the district court lacks any authority under [provision (3) of its preliminary injunction] 'to order personnel actions beyond those that the [government itself] determines are necessary or appropriate to carry out its statutory mandate.'" *Id.* (quoting Defendants' Opp. to Rehearing En Banc). "Rather, insofar as the issue may arise in further proceedings in the district court, that court presumably would consider it in the first instance." *Id.* Plaintiffs seek to initiate through this motion precisely those "further proceedings" related to compliance with the preliminary injunction that the en banc D.C. Circuit contemplated.

By all accounts, Defendants have taken effectively no action to comply with the Court's order that they restore VOA programming such that VOA can fulfill its statutory mandate. What

few actions Defendants have taken appear aimed to feign compliance, when in reality, other than 5 minutes of radio per day to one country, VOA is not broadcasting and is producing very little content for the internet in less than one tenth of the languages it did just months ago. Accordingly, Plaintiffs respectfully request that this Court order Defendants to show cause why they have failed to comply with the Court's preliminary injunction that requires Defendants to restore VOA's programming such that VOA serves as a consistently reliable and authoritative source of news. Plaintiffs specifically request that the Court order that Defendants explain:

1. How Defendants have restored VOA's programming such that VOA is producing and broadcasting news consistent with its various statutory requirements;

2. How Defendants can comply with VOA's statutory mandates with a staff of under 35 employees, approximately 2.5 percent of the staff prior to March 15 and without the 500 personal-services contractor employees it will have fired effective May 31;

3. How many employees they intend to restore to full-time status and how many personal-services contractor employees they intend to reinstate so that VOA can meet its statutory mandate;

4. How Defendants' actions are consistent with VOA's congressional appropriation and how VOA previously spent that appropriation, including a legal justification for the dramatic reduction in journalistic content since March 15 and following the preliminary injunction; and

5. How Defendants are complying with the statutory firewall.

Should Defendants' response to the Court's order to show cause be insufficient, Plaintiffs respectfully request an order compelling Defendants' compliance with the preliminary injunction,

including requiring Defendants to submit a report to the Court on the steps they will take to comply

and regular reports on compliance.

Respectfully submitted,

*/s/ William B. Schultz*

William B. Schultz (D.C. Bar No. 218990)
Margaret M. Dotzel (D.C. Bar No. 425431)
Brian J. Beaton, Jr. (D.C. Bar No. 90020963)*
ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
Fax: (202) 822-8136
wschultz@zuckerman.com
mdotzel@zuckerman.com
bbeaton@zuckerman.com

*Attorneys for Plaintiffs*

*\*Pro hac vice pending*