UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL ABRAMOWITZ, et al.,<br><br>      Plaintiffs,<br><br>  v.<br><br>KARI LAKE,<br>Senior Advisor to the Acting CEO of the U.S. Agency for Global Media, et al.,<br><br>      Defendants. | Civil Action No. 25-0887 (RCL) |

**OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE**

Defendants—Kari Lake, in her official capacity as Senior Advisor to the Acting Chief Executive Officer ("CEO") of the U.S. Agency for Global Media, Victor Morales, in his official capacity as Acting CEO, and Global Media—through undersigned counsel, file this opposition to Plaintiffs' motion ("Pls.' Mot.," ECF No. 37) for an order to show cause as to Defendants' compliance with the third prong of the Court's April 22, 2025, preliminary injunction regarding Voice of America. *See* April 22, 2025, Order at 3 (ECF No. 29). Simply put, Voice of America is meeting its statutory obligations under the International Broadcasting Act (hereinafter the "Act") and is complying with the Court's requirement that it serve, pursuant to its statutory mandate, as a "consistently reliable and authoritative source of news." *Id*.; *see* 22 U.S.C. § 6202(c). Plaintiffs motion does not—because it cannot—identity a single statutory provision with which they claim that Voice of America has failed to comply. Instead, they point to generalized disagreements with the direction in which Voice of America is headed. That Plaintiffs disagree with the management and priorities of Voice of America does not change this outcome; the President has wide latitude in setting administration priorities, and the Act affords Voice of America and the U.S. Agency for

Global Media wide discretion in determining how and what news to broadcast. The Court should swiftly decline Plaintiffs' invitation to further micromanage the affairs of an executive agency.

## STANDARD OF REVIEW

A court asked to enforce a prior order should only grant the motion when a "prevailing plaintiff demonstrates that a defendant has not complied with a [prior order] entered against it." *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004). At all times, the Court should demand an appropriate showing before granting any relief and wield its powers with care and due recognition for enforcing its command without any gloss. *See Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C. 2014) (cleaned up); *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984). That is especially so when matters of interbranch comity are at issue. The central question is whether the plaintiff has "received all relief required" by the Court's prior order. *Heartland Hosp.*, 328 F. Supp. 2d at 11.

## ARGUMENT

The gravamen of Plaintiffs' complaint is that Voice of America is not operating at the level that it did during the last administration. *See generally* Pls.' Mot. But that cannot—and is not—the measure of statutory compliance. The "policies" (*see* 22 U.S.C. § 6202(c)) of the United States are set by the President. The President, pursuant to his authority, has determined that Voice of America—while continuing to operate—will do so at its statutory minimum. Importantly, the March 14, 2025, Executive Order does not prevent Voice of America from fulfilling these statutory principles, but rather has changed the way in which that mission is accomplished. At bottom, although Plaintiffs may be unhappy with that decision, they are not entitled to dictate how Voice of America is run and the news it chooses to broadcast.

As explained in the attached declarations of Leili Soltani ("Soltani Decl.") and Jeffrey Reber ("Reber Decl."), Voice of America has determined that to comply with the March 14, 2025, Executive Order, Voice of America will broadcast in short wave radio transmissions, produce daily web stories, and produce content (both written and digital) in four languages in addition to the existing broadcasting occurring through the Office of Cuba Broadcasting. *See* Soltani Decl. ¶¶ 3-8 (explaining the responsibilities of the Persian, Mandarin, Pashto, and Dari Language Services); *see also* 2d Declaration of Crystal Thomas ¶¶ 6-7 ("Thomas Decl.," ECF No. 24-4) (explaining the Office of Cuba Broadcasting). Contrary to any suggestion by Plaintiffs, Voice of America staff solely decides the substance of all content put out by Voice of America. Soltani Decl. ¶ 3.

Plaintiffs assert that the situation "today" remains the same, if not "worse" from when the Court entered its injunction on April 22 with respect to operations at Voice of America. Pls.' Mot. at 5. This is incorrect. Since entry of the Court's injunction, Voice of America has resumed broadcasting in four language services as identified by the Act: Dari, Pashto, Farsi, and Mandarin. *See* Soltani Decl. ¶ 3; *see also* 22 U.S.C. §§ 6208 (establishing Radio Free Asia); 6215 (identifying Dari and Pashto broadcasting services as part of Radio Free Afghanistan); *see also* Pub. L. 111–84 (2009) (expanding Farsi language programming); *see also* Pls.' Mot. at 8 (requesting that the Court order Defendants to explain how Defendants have restored Voice of America programming such that it is consistent with its statutory requirements). As explained in the attached declarations, Voice of America is utilizing thirty journalists to produce their programming and content. Soltani Decl. ¶ 3. These journalists work with Central News, the arm of Voice of America that streamlines

and coordinates the four language services. *Id*. Notably, and consistent with the Act's statutory firewall,[1] these journalists are responsible for range of content, production, and support services.

Although Plaintiffs attempt to paint a picture that Voice of America remains dark, that is inaccurate. In Central News, Voice of America is producing five web stories of 300 to 500 words in length per day, five days each week. Soltani Decl. ¶ 4. These stories focus on the main news of the day and stories of interest to all language services. Each story is translated and posted on language service websites and updated as needed. *Id*. Central News additionally finds or creates images used on all web stories and daily editorials. Central News also produces four to five short broadcast scripts of forty-five seconds of copy, five days per week, for use by language service radio shows. *Id*. In addition, as needed, Central News assists with video production. *Id*.

The attached Soltani Declaration also details what each of the language services are producing with respect to their content. *See* Soltani Decl. ¶¶ 5-8. For example, the Persian Language Service, which produces news content for the Voice of America in the Persian language, produces two daily TV news reports in Persian and English each day, five days a week. *Id*. ¶ 5. The Persian Language Service also writes or translates five to seven daily text news items, and content is posted on the language service website or distributed through social media (Instagram, X, Facebook, Telegram, and YouTube). *Id*. For the week of May 26 through 30, 2025, the internet managing editor for the Persian Language Service reported that the website recorded 743.6k visits, with 949.1k article views and 27.8k video views. *Id*. During the same period, the internet managing editor for the Persian Language Service reported that the Persian Language Service recorded 10.8k

---

[1] Plaintiffs request that the Court order Defendants to explain how they are complying with the statutory firewall (Pls.' Mot. at 8) but they present no evidence that Defendants are violating the statutory firewall, and the supporting declarations attached herein establish otherwise.

engagements (defined as likes, shares, saves, clicks, mentions and comments) on Facebook, 392.7k engagements on Instagram, 3.6k engagements on X, and 18.2k engagements on YouTube. *Id.*

The Mandarin Language Service, which produces news content for Voice of America in the Mandarin language, publishes five to nine news stories five days each week, and produces one video news package, adapted from the video packages produced by the Persian Language Service. Soltani Decl. ¶ 6. It also translates and publishes one or two Global Media-produced editorials, depending on the number of editorials provided by the Office of Editorials at Global Media, on the days that they are published. *Id*. Content is posted on the language service website, or distributed through social media (Instagram, X, Facebook, Telegram, YouTube, Threads, and WhatsApp). For the week of May 26 through 30, 2025, the internet managing editor for the Mandarin Language Service reported that the website recorded 426.6k visits, with 566.5k article views and 31.8k video views. *Id*. During the same period, the internet managing editor for the Mandarin Language Service reported that the Mandarin Language Service recorded 1.9k engagements on Facebook, 0.3k engagements on Instagram, 25.8k engagements on X, and 20k engagements on YouTube. *Id.*

The Dari Language Service, which produces news content for Voice of America in the Dari language, produces a 2.5-minute radio show every day, five days per week. Soltani Decl. ¶ 7. It also produces at least seven web articles and one TV package—adapted from the video packages produced by the Persian Language Service —every day, five days per week. *Id*. For the week of May 26 through 30, 2025, the internet managing editor for the Dari Language Service reported that the website recorded 9.9k visits, with 7.5k article views and 0.5k video views. *Id*. During the same period, the internet managing editor for the Dari Language Service reported that

the Dari Language Service recorded 26.2k engagements on Facebook, 2.1k engagements on Instagram, 0.6k engagements on X, and 4k engagements on YouTube. *Id.*

Finally, the Pashto Language Service, which produces news content for Voice of America in the Pashto language, produces a two-and-a-half-minute radio show five days per week. Soltani Decl. ¶ 8. It additionally produces two original stories for web, translates five articles for web provided by Central News, and produces one TV package —adapted from the video packages produced by the Persian Language Service—five days per week. *Id*. In addition to radio, which is similarly distributed to four FM Afghan radio affiliates, content is distributed via the language service website and on social media (Instagram, X, Facebook, and YouTube). *Id*. For the week of May 26 through 30, 2025, the internet managing editor for the Pashto Language Service reported that the website recorded 13.4k visits, with 9.5k article views and 1.3k video views. *Id* During the same period, the internet managing editor for the Pashto Language Service reported that the Pashto Language Service recorded 53.5k engagements on Facebook, 0.3k engagements on Instagram, and 2k engagements on YouTube. *Id.*

In addition to the digital and written content described above, Voice of America has also resumed radio transmission services, including short wave and FM transmission services to Afghanistan. *See* Reber Decl. ¶¶ 3, 4. This show currently airs on four FM Afghan radio stations: FM Radio Raihan (estimated audience of 120,000 in the center of the Takhar province and sixteen of its districts, including Khan Abad district in the Kunduz province); FM Pamir Radio (estimated audience of 400,000 in Badakhshan provice, including Fayzabad city, Argo, Khash, Yaftal-e Bala, Yaftal-e Payin, and Arghanjkhwah); FM Radio Sar E Pul (estimated audience of 150,000 in Sarepul City, District of Sayed, District Soz Ma Gala, District Sayed Abad); and FM Mehran Radio (estimated audience of 65,000 in Jawzjan province, including Aqcha, Khwaja Dukoh, Mardian,

and Khanqah, Northern Afghanistan). *Id*. ¶ 4. It is also broadcast on shortwave radio that reaches all of Afghanistan, though large amounts of electricity and electronics interfere with shortwave signal, making it difficult for any audience in urban areas to receive. *Id*. As the Reber Declaration also explains, Voice of America is in the process of resuming TV broadcasting, and current staff in the building consists of three TV Techs and one Automation Director/Supervisor, who are system testing and preparing the Agency's TV studios for a return to programming. *Id*. ¶ 3.

Plaintiffs suggest that Voice of America is no longer reaching a significant audience because it is not broadcasting at the levels it once did, but their perspective is misguided. The numbers identified in the Soltani Declaration amply establish that Voice of America is consistently operating within its statutory mandate to "reach a significant audience." 22 U.S.C. § 6202(a)(7).

Although it may be true that Voice of America is not broadcasting on the same scale it previously was, there is no dispute that the Act leaves broad discretion to the agency to determine the measure of compliance with its statutory commands. Critically, the Court's injunction does not curtail Voice of America's exercise of discretion. *See* Order (ECF No. 29) at 3. And there is further no dispute that this Court, rightfully so, declined to instruct Voice of America as to how it should restore its programming to "serve as a consistently reliable and authoritative source of news." *Id.* It should once again decline to do so. Plaintiffs fail to quantify what is required by statute, other than voicing their disagreement that under any standard, Voice of America apparently fails to meet it. Their position cannot be squared with the discretion the Act affords Global Media and Voice of America, or the agency's mandate to comply with the Executive Order. Rather than accepting Defendants' good faith representations and efforts at compliance, Plaintiffs' cry foul without reason.

Merriam Webster defines "significant," as (among others), "of a noticeably or measurably large amount." *Significant*, Merriam Webster, https://www.merriam-webster.com/dictionary/significant#:~:text=:%20having%20or%20likely%20to%20have,a%20significant%20number%20of%20layoffs (last visited June 3, 2025). Undoubtedly, the entity best suited to determine what a "significant audience" entails, and how to effectuate that mission, rests with Voice of America and Global Media—not the Plaintiffs. Voice of America, though on a smaller scale, continues to serve and reach a significant audience with reliable, authoritative news. "Significant" is not defined within the statute. It is certainly a reasonable reading of the Act to measure "significant" not only as the size of the audience, but also the status of the audience—i.e., to whom the news is being broadcast. For example, if individuals of significance—be it government leadership, for example—receive the news, that is also a measure of "significant" reach. Plaintiffs, for their part, do not argue to the contrary. They do not assert that any of the news coverage produced by Voice of America is either unreliable or lacks authority. Instead, they state that Voice of America by law, must "broadcast truthful, impartial news and reach significant audiences." Pls.' Mot. at 6. Yet their motion is stunningly silent in pointing to any concrete examples of news they believe violates these statutory mandates.

Plaintiffs demand that the Court order Defendants to explain how it can perform its statutory functions with a small percentage of its previous overall workforce, but Plaintiffs cannot point to any statutory mandate that requires Voice of America to employ a certain number of journalists or even personal services contractors. And though this Court previously ordered that Defendants re-instate all employees as the agency existed before the March 14, 2025, Executive Order, that portion of the Court's injunction has been stayed pending appeal by the D.C. Circuit. *See Widakuswara v. Lake*, No. 25-5144 (D.C. Cir.), Per Curiam Order (Dkt No. 2114139). At

bottom, Plaintiffs cannot and should not be able to dictate how Voice of America makes personnel decisions regarding hiring, firing, and reassigning its work force.

Along the same vein, Plaintiffs also demand insight into Voice of America's spending and appropriations. Although it may be true that Congress has appropriated certain funds to Voice of America, Voice of America has resumed its operations, has a lean staff of employees, and is operating in accordance with the President's Executive Order. Here, Plaintiffs, have failed to show that the funds appropriated are not being used as authorized by any statute. Merely reducing the size of Global Media, including the Voice of America, does not equate to a violation of the Appropriations and Spending Clause, or a violation of the Court's injunction.

Considering Defendants' resumption of programming and its compliance with this Court's injunction, the Court should deny Plaintiffs motion for an order to show cause. The Court's injunction did not dictate the contours of compliance with the Act's statutory mandates, and the Court should continue to allow the agency to manage its own affairs without undue intrusion.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion.

| | |
|---|---|
| Dated: June 4, 2025<br>Washington, D.C. | Respectfully submitted,<br><br>JEANINE FERRIS PIRRO<br>United States Attorney<br><br>By: */s/ Brenda González Horowitz*<br>BRENDA GONZÁLEZ HOROWITZ<br>D.C. Bar No. 1017243<br>STEPHANIE R. JOHNSON<br>Assistant United States Attorneys<br>601 D Street, NW<br>Washington, DC 20530<br>Main: (202) 252-2500<br><br>*Attorneys for the United States of America* |