**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MICHAEL ABRAMOWITZ *et al.*,

*Plaintiffs*,

–v.–

KARI LAKE *et al.*,

*Defendants.*

Case No. 25-cv-00887

# PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR AN ORDER TO SHOW CAUSE

The thrust of Defendants' response to Plaintiffs' motion is simple: the executive has full, unbridled discretion to run Voice of America (VOA) and to curtail its operations as it sees fit, regardless of this Court's order, VOA's statutory mandates, and Congress's appropriation. *See, e.g.*, Defs.' Opp. (ECF No. 44) at 2. That premise is incorrect. No one doubts that executive branch officials maintain certain discretion to manage VOA. But, as recognized by this Court, that discretion is cabined by Congress which is why this Court's order requires VOA to operate consistent with what Congress required. Black-letter law requires that outcome. *See, e.g., In re Aiken County*, 725 F.3d 255, 259 (D.C. Cir. 2013) (Kavanaugh, J.) ("Under Article II of the Constitution and relevant Supreme Court precedents, the President must follow statutory *mandates* so long as there is appropriated money available and the President has no constitutional objection to the statute."). That is why the en banc D.C. Circuit's statement, which Defendants fail to mention in their opposition, declares that this Court may enforce the unstayed provision of its preliminary injunction. *See* No. 25-5145, Doc. #2117869 (D.C. Cir.) (Srinivasan, C.J., joined by six members of the court) ("[T]he court's denial of en banc reconsideration of course should not be understood to accept … the government's assertion" that "the district court lacks any authority under [provision (3) of its preliminary injunction] 'to order personnel actions beyond those that the [government itself] determines are necessary or appropriate to carry out its statutory mandate.'").

Defendants have not and cannot justify their non-compliance with this Court's preliminary injunction, particularly in light of the $262 million that Congress appropriated for FY 2025 for VOA and VOA's detailed budget justification for that appropriation, both of which Defendants decline to address. VOA's statutory requirements and the Congressional appropriation demonstrate that Defendants' actions to return VOA to *de minimis* functioning clearly do not

comply with this Court's order. Specifically, Defendants have not explained (1) how bringing back minimal programming in only four of its prior 49 languages comports with VOA's statutory mandates and the Congressional appropriation; (2) how bringing back to work only 30 of its prior approximately 1,000 journalists comports with the same; or (3) how VOA has adequate operational capacity to meet its statutory requirements.[1] That is because they cannot do so.

Accordingly, this Court should grant the motion for an order to show cause and require that Defendants promptly develop a plan to operate VOA in a manner compliant with this Court's preliminary-injunction order.

## ARGUMENT

### I. Defendants are not complying with this Court's preliminary injunction.

Defendants' response to Plaintiffs' motion reveals just how little they have done to restore VOA such that it may operate consistent with its statutory mandate and this Court's order. To review:

- VOA is producing only 25 web stories of 300 to 500 words per week, Defs.' Opp. at 3–4;
- those web stories come from one division within VOA—Central News—and are then translated, *id.*;
- VOA is producing this minimal content in only four languages, *id.*; and
- only 30 journalists have remained working at VOA since this Court's preliminary injunction went into effect, *id.*

[1] Recently, certain VOA Persian Service employees were brought back to work to cover the conflict between Israel and Iran. Nothing indicates that this move will be permanent; indeed, Defendants recently made a submission to Congress outlining their plan to dismantle VOA, leaving fewer than 20 positions at VOA to perform VOA functions and thus essentially firing the entire workforce. *See* Exhibit A (outlining plan to leave only 81 employees across all of USAGM). Defendants' submission to Congress, which differs from representations they made in their opposition to Plaintiffs' motion, reflects how irrational and unjustifiable Defendants' conduct has been and that, absent a new order by this Court, Defendants intend to never comply with VOA's statutory mandates or this Court's preliminary injunction.

As Plaintiffs explained in their opening submission, this pales in comparison to VOA's pre-March 15, 2025 status, when it (1) employed approximately 850 full-time equivalent employees and 550 personal services contractors (including 1,000 journalists); (2) broadcast in 49 languages to nearly 100 countries; (3) and broadcast more than 2,000 hours of content per week. Pls.' Mot. (ECF No. 37) at 4. Defendants' representations do not even mention their complete abandonment of various regions VOA previously served, such as Africa, East Asia and the Pacific, and Latin America. *Id.*

Defendants' affidavits drive home that Defendants have failed to return VOA to the functioning required by the statutory provisions discussed in Plaintiffs' opening submission and contemplated by this Court's preliminary injunction. Most basically, Defendants' submission reveals that VOA is *broadcasting* virtually nothing and has broadcast essentially nothing for the last three months, a blatant violation of this Court's April 22 order. As Defendants' own Reber Affidavit, ECF No. 44-2, explains, TV operations have not resumed since Defendants began dismantling VOA three months ago, *id.* ¶ 3, and the only radio broadcasting consists of one show, Monday through Friday, which broadcasts just five minutes of news per day into Afghanistan, *id.* ¶ 4. The affidavit further reveals that Defendants have gutted VOA's operational capacity to return to broadcasting at meaningful levels. Only three TV techs and one automation director are present in the building for TV broadcasting, and only one broadcast maintenance technician, one digital support technician, one radio/TV traffic scheduler, and one digital management supervisor are present to support both radio and television broadcasting. *Id.* ¶ 3, 5.

Defendants never explain how such a lack of broadcasting and operational capacity complies with the international broadcasting statutes, the Congressional appropriation, and this Court's preliminary injunction. By law, "United States international broadcasting shall include," among other things, "information about developments in *each significant region of the world*"; "a

variety of opinions and voices *from within particular nations and regions prevented by censorship or repression from speaking to their fellow countrymen*"; and "adequate transmitter and relay capacity to support the activities described in this section." 22 U.S.C. § 6202(b)(6), (7), (9) (emphases added). *De minimis* broadcasting in one language and reposting translated articles in four languages cannot possibly meet these requirements. By law, VOA must "serve as a consistently reliable and authoritative source of news" and "be designed so as to effectively reach a significant audience." *Id.* §6202(c), (a)(7). While these mandates may afford Defendants discretion, they are not empty words as Defendants appear to believe. Congress's appropriation—$260 million on an annualized basis—informs what Congress believes is the magnitude of the programming and operations necessary to reach the audience described in the statute. A handful of translated stories produced by 30 journalists posted on the web only does not fit Congress's directive. Neither does putting virtually the entire staff on administrative leave for more than three months, paying the staff to do no work. Indeed, as it stands, VOA's appropriation divided by its number of working journalists yields over $8.6 million per journalist. [2]

Rather than attempt to justify how this meager return to *de minimis* functioning satisfies VOA's statutory mandate or complies with this Court's preliminary injunction, Defendants appeal to the executive's discretion in managing its affairs. But Defendants fail to acknowledge that Congress created the statutory scheme at issue in this case and funded VOA so that it could carry out the functions Congress envisioned. They cite the dictionary definition of "significant" to argue that VOA continues reaching a significant audience, while evidently believing that VOA could

---

[2] Defendants have terminated almost all of the 550 personal service contractor employees. Defendants have not demonstrated that they can comply with provision (3) of this Court's injunction without bringing at least some of these employees back to work. And Defendants inten d to fire virtually all of VOA's (and USAGM's) workforce. *See* Exhibit A.

deliver news to only certain "important" individuals to satisfy the preliminary injunction. Defs.' Opp. at 8. And of course, Defendants accuse Plaintiffs of "demand[ing] insight into Voice of America's spending and appropriations," *id.* at 9, while failing to acknowledge that those appropriations evidence Congress's intent and the functions that VOA is required to carry out consistent with its mandate. *See In re Aiken County*, 725 F.3d at 259.

That VOA "has resumed its operations, has a lean staff of employees, and is operating in accordance with the President's Executive Order" is no answer to how VOA is operating consistent with this Court's preliminary injunction, which gives effect to VOA's statutory requirements and the will of Congress. Indeed, Defendants never answer how VOA is fulfilling its mandate consistent with its more than $260 million annualized appropriation because they cannot. This abject failure indicates that Defendants are engaged in an illegal *de facto* impoundment of Congressionally appropriated funds. *See* Pls.' Mem. in Support of Mot. for a Prelim. Injunction (ECF 4-2) at 22–23. In the face of Defendants' total failure to return VOA to operating in a manner that complies with its statutory mandates and is consistent with the $260 million that Congress appropriated, there is no meaningful argument that Defendants have complied with this Court's preliminary injunction. This Court is "not required to exhibit a naiveté from which ordinary citizens are free." *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019) (quoting *United States v. Stanchich*, 550 F. 2d 1294, 1300 (2d Cir. 1977) (Friendly, J.). The Court should find that Defendants have violated paragraph (3) its preliminary injunction. Preliminary Injunction Order, ECF No. 29 at 3; *Widakuswara v. Lake,* No. 25-cv-1015, Preliminary Injunction Order, ECF No. 99 at 2.

## II. The international broadcasting statutes, together with Congress's appropriation, define VOA's required level of functioning.

To review, Congress obligates VOA to carry out a variety of statutory functions. Those functions are necessarily the starting point for determining the level at which VOA must operate, even though Defendants have certain discretion in managing VOA's affairs. VOA's charter, which Congress codified into law, requires that:

> (1) VOA will serve as a consistently reliable and authoritative source of news. VOA news will be accurate, objective, and comprehensive.
>
> (2) VOA will represent America, not any single segment of American society, and will therefore present a balanced and comprehensive projections of significant American thought and institutions.
>
> (3) VOA will present the policies of the United States clearly and effectively, and will also present responsible discussion and opinion on these policies.

22 U.S.C. § 6202(c); *see also* ECF No. 4-2, Pls.' Mem. at 8–9.

Similarly, Congress mandated that "United States international broadcasting shall include,"

> (1) news which is consistently reliable and authoritative, accurate, objective, and comprehensive;
>
> (2) a balanced and comprehensive projection of United States thought and institutions, reflecting the diversity of United States culture and society;
>
> (3) clear and effective presentation of the policies of the United States Government and responsible discussion and opinion on those policies, including editorials, broadcast by the Voice of America, which present the views of the United States Government;
>
> (4) the capability to provide a surge capacity to support United States foreign policy objectives during crises abroad;

(5) programming to meet needs which remain unserved by the totality of media voices available to the people of certain nations;

(6) information about developments in each significant region of the world;

(7) a variety of opinions and voices from within particular nations and regions prevented by censorship or repression from speaking to their fellow countrymen;

(8) reliable research capacity to meet the criteria under this section;

(9) adequate transmitter and relay capacity to support the activities described in this section; and

(10) training and technical support for independent indigenous media through government agencies or private United States entities.

22 U.S.C. § 6202(b)(1)–(10). None of these statutory provisions is new or foreign to Defendants; Plaintiffs have repeatedly pointed out that VOA is required to operate in a manner consistent with these requirements.

Further, as Plaintiffs explained in their opening submission, "[w]ith Congress's knowledge, VOA previously spent [its] appropriation in a manner that allowed it to fulfill its statutory mandate." Pls.' Mot. at 4 (citing U.S. Agency for Global Media, *FY 2025 Congressional Budget Justification* at 65–67, https://www.usagm.gov/wp-content/uploads/2024/03/USAGMBudget_FY25_CBJ_03-08-24-1.pdf ("2025 CBJ")). It is well-accepted that Congress legislates (and appropriates) against the backdrop of what the executive is doing and blesses those actions through its legislating activities. *See, e.g.*, *Nat'l Lead Co. v. United States*, 252 U.S. 140, 146–47 (1920) ("The re-enacting of the drawback provision four times, without substantial change, while this method of determining what should be paid under it was being constantly employed, amounts to an implied legislative recognition and approval of the executive construction of the statute for Congress is presumed to have legislated with knowledge

of such an established usage of an executive department of the government." (internal citations omitted)); *Marouf v. Azar*, 391 F. Supp. 3d 23, 33 (D.D.C. 2019) ("Congress presumably knows how the Executive Branch is spending taxpayer money before reauthorizing it, even if through a general appropriation."); *cf, Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 176 (1988); *I.A.M. Nat. Pension Fund Ben. Plan C. v. Stockton TRI Indus.*, 727 F.2d 1204, 1208 n.11 (D.C. Cir. 1984).

Accordingly, this Court may properly order Defendants to operate VOA in a manner consistent with its statutory mandate and its congressional appropriation—the baseline for compliance with the preliminary injunction—and gauge whether they have done so against the backdrop of how VOA previously operated. Again, Plaintiffs recognize that Defendants have discretion in their operating of VOA and they do not claim prior operations must be the ossified baseline moving forward. But in the absence of any meaningful plan to comply with this Court's preliminary injunction or to operate VOA in a manner consistent with its statutory mandate and appropriation, VOA's pre-March 15 level of activity provides a relevant benchmark about what is required.

The budget submissions which USAGM and VOA made yearly to Congress in support of their appropriations request lay out how they intended to meet their statutory requirements. Such budget justifications, as well as analyses of prior years' spending, provide a compelling case for the statutory benchmark of VOA's operations, because Congress appropriated money to VOA after being informed of how VOA (and USAGM) intended to and in fact did spend the appropriation. Put differently, when Congress appropriates money to VOA in line with its budget justifications and consistent with VOA's historical spending, it reflects how Congress envisions VOA will continue to run. *See* U.S. Agency for Global Media, *Budget and Financial Reports*, https://www.usagm.gov/our-work/strategy-and-results/strategic-priorities/budget-and-financial-

reports/ ("USAGM's FY 2025 Congressional Budget Justification provides greater detail about initiatives USAGM will undertake in the next fiscal year."); 2025 CBJ at 65–67 (detailing fiscal year 2023 spending, fiscal year 2024 annualized continuing resolution spending, and the 2025 requested appropriation), attached as Exhibit B.

With respect to the annualized 2024 continuing resolution, VOA had an appropriated budget of $267,476,000, which is in line with the VOA appropriation for the last several years. *See* U.S Agency for Global Media, *FY 2024 Congressional Budget Justification*, at 177–79, https://www.usagm.gov/wp-content/uploads/2023/03/FY2024_CBJ_Final_3-14-23.pdf (2024 CBJ); U.S Agency for Global Media, *FY 2023 Congressional Budget Justification*, at 143–45, https://www.usagm.gov/wp-content/uploads/2022/03/USAGMBudget_FY23_CBJ_03-25-22-FINAL.pdf (2023 CBJ); U.S Agency for Global Media, *FY 2022 Congressional Budget Justification*, at 131–33, https://www.usagm.gov/wp-content/uploads/2021/06/USAGM-FY-2022-CBJ-Final-05.26.2021.pdf (2022 CBJ); *FY 2020 Congressional Budget Justification*, at 147–49, https://www.usagm.gov/wp-content/uploads/2019/03/USAGMBudget_FY20_CBJ_3-15-19.pdf (2020 CBJ). That budget was allocated, with Congress's knowledge, to the following segments of VOA, *see* 2025 CBJ at 65–67:

- Director's Office: $7.1 million (~2.7%);
- Associate Director/Programming Directorate: $8.4 million (~3.1%);
- Studio and Production Operations: $55.5 million (~21%);
- Africa Division: $34.55 million (~13%);
- East Asia and Pacific Division: $46.7 million (~17%);
- Eurasia Division: $22.25 million (~8.3%);
- Latin America: $11 million (~4.1%);

- South Asia: $30.65 million (~11.5%);
- Persian: $25.534 million (~9.5%);
- Central News: $24.534 million (~9.2%);
- Domestic Bureaus: $600,000 (~0.2%);
- Overseas Bureaus: $3.442 million (~1.3%).

In addition to these amounts, VOA utilized technology, broadcasting, and administrative services from USAGM that included $238,359,000 for Mission Support (including contracting and procurement and human resources) and $178,473,000 allocated to Technology, Services, and Innovation (including operating transmitting stations and disseminating radio and satellite services). *Id.* at 70–71. Similarly, VOA provided detailed information about its broadcast hours across numerous countries, languages, and regions. *See id.* at 82–86. This justification is similar to the one presented to Congress in prior years. *See* 2020–2025 CBJs. VOA's historic spending, and Congress's approval of that spending through continued appropriations at reliable levels, reveals what Congress believes and reflects how VOA must operate consistent with its mandate.

Congress's support for and requiring of a regional presence and programming for VOA is likewise evidenced by statements and reports from the appropriators themselves. Indeed, congressional appropriations committees routinely highlight the need for VOA to have meaningful presence in a variety of global regions, consistent with the international broadcasting statutes. *See, e.g.*, H.R. Rep. No. 118-146, at 31 (2023) ("The Committee supports the programming and activities of the Latin America Division of VOA."); *id.* ("The Committee supports the role of VOA and [Radio Free Asia] in providing uncensored news and information that is unavailable to the people of North Korea through state-controlled North Korean media"); *id.* ("The Committee supports coverage of VOA on digital and conventional media to the Pacific Islands, including through the pursuit of regional affiliates."); *id.* ("The Committee supports VOA's continued effort

to provide Sindhi language services in Pakistan."); *id.* ("The Committee supports the role of VOA and RFA in countering propaganda from the [People's Republic of China] and providing essential news and information through the Mandarin, Tibetan, Uyghur, and Cantonese language services."); *id.* at 32 ("The Committee directs USAGM to submit a report, not later than 90 days after the date of enactment of this Act, to the Committees on Appropriations on steps taken to establish a Mongolian language service at VOA to reach Mongolian speakers in Mongolia and the PRC, including resource requirements."); *see also, e.g.*, H.R. Rep. No. 118-554, at 29–31 (2024) (reiterating support for expanding regional programming).

**III. In light of the indicia of VOA's required levels of operation, this Court should order that Defendants devise a plan to comply with its preliminary injunction.**

In their proposed order accompanying the motion for an order to show cause, Plaintiffs proposed that this Court direct Defendants to answer five questions concerning their compliance with the preliminary injunction. ECF No. 37-1 at 8. In their opposition to Plaintiffs' motion, Defendants answered those questions, but their answers clearly demonstrate that they are not complying with the preliminary injunction and have no plans to take any steps to do so. As to Plaintiffs' question about how Defendants are complying with Congressional appropriations, Defendants' apparent answer is that they are not required to spend appropriated funds.

In light of this evidence of Congressional intent and what Congress believes reflects the statutory functioning of VOA, and in the absence of any intent or interest in complying with this Court's April 22 preliminary injunction, Plaintiffs submit that this Court should order that Defendants promptly devise a plan to bring USAGM and VOA into compliance with the preliminary injunction, VOA's statutory mandate, and the applicable appropriations. In line with the above, Plaintiffs request that the Court order Defendants to submit a plan which reflects (1) how Defendants will operate VOA such that it delivers, through all communication means

including radio and television, meaningful programming to the regions identified in VOA's 2025 Budget Justification; (2) how Defendants will spend VOA's Congressional appropriation, including the appropriation for VOA and the USAGM Mission Support and Office of Technology and Innovation Services necessary for VOA to function, consistent with the prohibition on unlawful impoundment of Congressional appropriations; (3) that Defendants have brought back and/or hired sufficient personnel to create and disseminate programming; and (4) that Defendants have restored VOA's operational capacity such that it can meet its mandate and spend its appropriation.

Such a plan continues to afford Defendants substantial discretion while nonetheless providing a sound benchmark for compliance with the preliminary injunction, the international broadcasting statutes, and the appropriation. It does not require micromanagement from this Court, which can gauge compliance through broad categories. And it reflects Congress's will, which necessarily must be the lodestar here. Since Defendants have been in violation of this Court's April 22 injunction for two months, Plaintiffs request that Defendants be ordered to submit this plan within 10 days.

Respectfully submitted,

*/s/ Willam B. Schultz*
William B. Schultz (D.C. Bar No. 218990)
Margaret M. Dotzel (D.C. Bar No. 425431)
Brian J. Beaton, Jr. (D.C. Bar No. 90020963)
ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
Fax: (202) 822-8136
wschultz@zuckerman.com
mdotzel@zuckerman.com
bbeaton@zuckerman.com

*Attorneys for Plaintiffs*