## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL ABRAMOWITZ *et al.*,

          *Plaintiffs,*

      –v.–

KARI LAKE *et al.*,

          *Defendants.*

Case No. 25-cv-00887

### PLAINTIFFS' REPLY TO DEFENDANTS' SUPPLEMENTAL RESPONSE TO PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE

On June 23, 2025, following the hearing on Plaintiffs' motion for an order to show cause, this Court ordered Defendants to file a supplemental memorandum with "*additional information regarding USAGM's recent activities, including any relevant information about USAGM funding decisions, personnel updates, and submissions to Congress.*" ECF No. 50 (emphasis added). Since the hearing, Defendants have offered little new information. Defendants' plan is to (1) slightly increase daily broadcasting to Afghanistan to thirty minutes per day; (2) resume publishing some editorial content; and (3) increase shortwave radio service to Afghanistan. ECF No. 54 at 2-3. Of course, at this juncture most of these are just plans. Defendants' additional gestures, which include retaining a skeletal staff of 30 journalists, brief web stories, and programming in just four languages, make clear that Defendants remain and intend to remain in ongoing violation of this Court's preliminary injunction. *See* ECF No. 44 at 3-7. While this Court asked for more information, presumably to give Defendants an opportunity to demonstrate that they are complying

in good faith with its preliminary injunction, it instead got more of the same. Nothing of substance has changed since the hearing.

Defendants' window-dressing does not move the needle or begin to satisfy this Court's unambiguous instruction that Defendants "restore VOA programming" so that VOA may again serve as a "consistently reliable and authoritative source of news," in line with VOA's statutory mandate. ECF No. 29 at 3. Defendants do not, and cannot, justify how this continued drastically reduced level of activity satisfies VOA's statutory obligations, especially in light of the $262 million that Congress appropriated for FY 2025: an appropriation preceded by a detailed budget justification, both which Defendants ignore. Nor have Defendants explained how reinstating a mere fraction of prior programming—limited to four languages out of the prior 49—and retaining only 30 of approximately 1,000 journalists can possibly be squared with VOA's statutory mandate or with Congress's appropriation.

Defendants' supplemental filing confirms what has become increasingly evident: they have made no serious effort to comply with this Court's order, and absent further action by the Court, they intend to let VOA languish. Accordingly, this Court should grant the motion for an order to show cause and require that Defendants submit a concrete plan to bring VOA into full compliance with the preliminary injunction, including bringing back to work an adequate number of personnel currently on administrative leave and rehiring an adequate number of personnel service contractors so the level of VOA activity is consistent with the Congressional appropriation for FY 2025, as supported by VOA's budget submission to Congress and VOA's statutory mandates.

## ARGUMENT

**I.      Defendants Still Have Failed to Comply with the Court's Preliminary Injunction.**

The Court's preliminary injunction requires Defendants to "restore VOA programming" so that it can "serve as a consistently reliable and authoritative source of news." ECF No. 29 at 3.

This provision of the injunction was never stayed or even challenged and has not been appealed by Defendants: yet Defendants' response has been to offer only token, minimal efforts to restore VOA programming. In their recent supplemental filing, Defendants point to measly increases: for example, expanding one VOA Afghan radio program from 10 to 30 minutes per day, publishing a few editorial pieces, and expanding shortwave radio transmission to Afghanistan. ECF No. 54 at 2-3. Even taken at face value, these gestures are woefully inadequate, and Defendants' submission is a distraction more than anything else. It reveals fully that Defendants have done precious little to assuage the Court's concerns at the hearing. In other words, nothing has meaningfully changed.

Defendants' own filings confirm how little they have done. By July 2025, more than two months after this Court's injunction, VOA is producing only 25 short web stories per week, all originating from a single division and translated into a few languages. ECF No. 44 at 3-4. Television operations have not resumed at all, and radio broadcasting exists in only Afghanistan. ECF No. 44 at 6-7. Aside from a limited Persian Service surge during the recent Iran crisis, VOA's news gathering and broadcasting capabilities remain shuttered.[1] Only 30 or so journalists remain actively working to produce news, a skeleton crew consisting of 3% of VOA's previous journalist workforce. ECF No. 44 at 3-4.

The stark contrast between VOA's current operations and its pre-shut down capacity underscores Defendants' non-compliance. Prior to Defendants' dismantling of the agency, VOA was a far-reaching, influential news organization: it employed roughly 850 full-time staff and 550 contractors (including around 1,000 journalists) and broadcast content in 49 languages to nearly

---

[1] Defendants repeatedly refer to the Office Cuba Broadcasting's (OCB) operations, ECF No. 54 at 2, 5-6, 9, 12, but OCB has its own appropriations distinct from VOA, and Plaintiffs have never challenged OCB's activity levels.

100 countries, totaling more than 2,000 hours of programming per week. ECF No. 37-2. It reached

more than 360 million people across the globe on a weekly basis. ECF No. 1.

This extensive output was what VOA proposed to Congress, what Congress funded, and

what VOA's mandate envisions. Congress appropriated approximately $262 million specifically

for VOA in FY 2025 to support this level of journalism and global reach. Prior to Defendants'

cuts, VOA expended its appropriation on the staff and infrastructure needed to fulfill its mission

– about $170 million on full-time equivalent salaries, $60 million on private services contractors'

salaries, and $30 million on operations. ECF No. 37-2. Now most of VOA's staff is on

administrative leave – in other words, being paid to do no work, and approximately 500 of

VOA's 550 personal service contractors have been terminated. On July 1, 2025, USAGM also

announced that it will be conducting a further Reduction in Force in the upcoming weeks. This

cannot be what Congress envisioned when it enacted VOA's appropriation law, and it is the

reason that VOA no longer is able to serve as a consistently reliable and authoritative source of

news, as required by the preliminary injunction.

To date, Defendants have failed to adequately explain how their minimal efforts meet the

injunction, and they have never even addressed how their actions are in line with Congress's

FY 2025 appropriation or budget justifications or the plethora of statutory mandates that

necessarily pertain to restoring VOA programming in line with this Court's preliminary injunction.

Moreover, Defendants have articulated no concrete plan or timeline to restore VOA to compliance.

Defendants vaguely allude to having acted "as quickly as practicable" to restore some

programming, and cite logistical hurdles in recalling staff, ECF No. 54 at 12, but never address

why they have not brought the more than seven hundred employees on administrative leave back

to service, why restoring programing should take so long in light of the speed with which they dismantled the agency, or why they have announced a Reduction in Force.

After more than two months, the fundamental question of when and how VOA will resume operations consistent with the Court's preliminary injunction remains unanswered. In fact, all evidence suggests Defendants have no intention of complying with this Court's preliminary injunction. In its recent submission to Congress, Defendants outlined a plan that would permanently dismantle VOA, leaving fewer than 20 positions at VOA, essentially firing the entire workforce and gutting the agency. *See* ECF No. 49-2 Ex. A. This plan (which directly contradicts Defendants' assurances to the Court) makes clear that absent further judicial intervention, Defendants intend *never* to restore VOA to an agency that is a "consistently reliable and authoritative source of news." Such an approach flouts not only this Court's order but the will of Congress, and it underscores the need for immediate action.

In recent testimony to Congress, Defendant Kari Lake, Senior Advisor to the U.S. Agency on Global Media, testified in response to a question from a Member about broadcasting in Farsi: "We were in the process of effectuating President Trump's executive order. And in the process of doing that, several malicious lawsuits were started up and the judge froze us from being able to get news on. We literally were frozen in place because of all of these lawsuits." Kari Lake Testimony Before the House Committee on Foreign Affairs (June 25, 2025), https://www.youtube.com/watch?v=sSAWcUdDTzU at 13:27.    This statement reflects Defendants' determination to use any excuse, even one that is patently false, to avoid restoring VOA to an agency that operates in a manner that is consistent with this Court's preliminary injunction.

Finally, in a last-ditch effort to bless their non-compliance, Defendants suggest that this Court's preliminary injunction is effectively meaningless. ECF No. 54 at 5 ("In the absence of any clear directive, it begs the question as to how Defendants have purportedly failed to comply with the terms of the Court's order."). But Plaintiffs have repeatedly stressed that Defendants' shuttering of VOA means that they are failing to comply with myriad statutory obligations concerning USAGM and VOA broadcasting as well as federal appropriations law. And they have repeatedly explained that this Court's preliminary injunction must be understood in the context of the same. This Court explicitly found that "[t]he defendants are likely in direct violation of numerous federal laws," including the International Broadcasting Act and the Congressional Appropriations Acts. *Widakuswara v. Lake*, No. 1:25-CV-1015-RCL, 2025 WL 1166400, at *14 (D.D.C. Apr. 22, 2025). "Restor[ing] VOA programming" so that VOA may again serve as a "consistently reliable and authoritative source of news," *id.* at *18, as this Court ordered, carries with it the full force of these statutory mandates and compliance with appropriations law. This Court may appropriately enforce these statutory obligations through its preliminary injunction.

## II.    The Court Should Order Defendants to Devise a Plan to Comply with its Preliminary Injunction.

Given Defendants' ongoing non-compliance, Plaintiffs respectfully request that the Court enforce its preliminary injunction by ordering Defendants to submit a plan to the Court that restores VOA programming consistent with the preliminary injunction. The Court has full authority to do so. Indeed, the *en banc* D.C. Circuit explicitly noted that this Court may ensure compliance with the unstayed provision of its injunction. No. 25-5145, Doc. #2117869 (D.C. Cir. May 28, 2025) (Srinivasan, J., joined by six members of the court).

Given Defendants' demonstration that they are not complying with the preliminary injunction and have no plans to do so, Plaintiffs reiterate their request that the Court order

Defendants to submit within 10 days a plan that *adequately* explains how they plan to bring

USAGM and VOA into compliance with the preliminary injunction consistent with VOA's

statutory mandate and the applicable appropriations. As requested in Plaintiffs' Reply to the

Motion for Order to Show Cause, Plaintiffs urge that the Court order Defendants to develop a  plan

that reflects (1) how Defendants will operate VOA such that it delivers, through all communication

means including digital, radio, and television, meaningful programming to the regions identified

in VOA's 2025 Budget Justification; (2) how Defendants will spend VOA's Congressional

appropriation, including the appropriation for VOA, and the USAGM Mission Support and Office

of Technology and Innovation Services necessary for VOA to function, consistent with the

prohibition on unlawful impoundment of Congressional appropriations; (3) that Defendants have

brought back and/or hired sufficient personnel to create and disseminate programming; and (4)

that Defendants have restored VOA's operational capacity, including USAGM mission support,

such that it can meet its mandate and spend its appropriation. ECF No. 49 at 12-13.[2]

Respectfully submitted,

*/s/ William B. Schultz*

William B. Schultz (D.C. Bar No. 218990)
Margaret M. Dotzel (D.C. Bar No. 425431)
Brian J. Beaton, Jr. (D.C. Bar No. 90020963)
ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800

---

[2] Although Defendants devote an entire section of their brief to arguing that they are not in contempt, ECF No. 54 at 9-13, at this stage Plaintiffs have not raised this issue, although the contempt sanction may be appropriate if Defendants continue to refuse to comply with paragraph (3) of this Court's preliminary injunction or with other orders issued by this Court.

Fax: (202) 822-8136
wschultz@zuckerman.com
mdotzel@zuckerman.com
bbeaton@zuckerman.com

*Attorneys for Plaintiffs*