UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL ABRAMOWITZ, et al.,

        Plaintiffs,

    v.

KARI LAKE,
Senior Advisor to the Acting CEO of the
United States Agency for Global Media, et al.,

        Defendants.

Civil Action No. 25-0887 (RCL)

**MOTION TO DISMISS AND MOTION FOR RELIEF FROM LOCAL RULE 7(N)(1)'S**
**REQUIREMENTS AND MEMORANDUM IN SUPPORT THEREOF**

# TABLE OF CONTENTS

Table of Contents .................................................................................................... i
Table of Authorities ............................................................................................... ii
introduction ............................................................................................................ 1
Background .............................................................................................................. 2
    I.     Statutory Background .................................................................... 2
    II.    Executive Order 14,238 ................................................................ 3
    III.   Procedural Background.................................................................. 4

Legal Standards....................................................................................................... 7
Argument ................................................................................................................. 8
    I.     This Court Lacks Jurisdiction Over Plaintiffs' Claims.................. 8
         A.   Abramowitz Must Pursue His Claims Through the Statutory Scheme Congress Established. ................................................. 10
         B.   This Court Lacks Jurisdiction Over the Claims of Plaintiffs LaBruto and J. Doe II, for they Arise in a Contract and Must Be Brought in the Court of Federal Claims. ...................................... 16

    II.    Plaintiffs Fail to Sufficiently Allege Claims Under the APA (Count I). .............. 21
         A.   Plaintiffs Do Not Seek Judicial Review of a Discrete Final Agency Action. ............................................................................ 22
         B.   There are Other Adequate Alternative Remedies Available.................... 23
         C.   Global Media's Action are Committed to Agency Discretion by Law. ... 24
         D.   Plaintiffs Can Not Challenge the Executive Order. ................................. 25

    III.   Plaintiffs' Fail to State Viable Constitutional Claims. ........................................ 26
         A.   Plaintiffs' Constitutional Claims are Barred.............................................. 26
         B.   Separation of Powers Claim (Count II) Fails............................................ 27
         C.   Take Care Clause Violation (Count III) Fails Because the Take Care Clause Cannot be Used to Obtain Affirmative Relief. ............................. 29

    IV.   Plaintiffs Fail to Sufficiently Plead an *Ultra Vires* Claim (Count IV). ............... 31
    V.    Defendants Should Be Relieved of Their Obligation to Comply with Local Civil Rule 7(n)(1)..................................................................................................... 33

Conclusion ............................................................................................................. 36

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*AFGE v. Ezell*,
   Civ. A. No. 25-10276, 2025 WL 470459 (D. Mass. Feb. 12, 2025) ..................................... 15

*AFGE v. OPM*,
   Civ. A.No. 25-1780, 2025 WL 900057 (N.D. Cal. Mar. 24, 2025) ..................................... 16

*Alabama- Coushatta Tribe of Tex. v. United States*,
   757 F.3d 484 (5th Cir. 2014) ........................................................................................... 22

*Albrecht v. Comm. on Employee Benefits of the Federal Reserve Employee Benefits Sys.*,
   357 F.3d 62 (D.C. Cir. 2004) ........................................................................................... 16

*\*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*
   929 F.3d 748 (D.C. Cir. 2019) ................................................. 10, 11, 12, 13, 14, 15

*\*Am. Foreign Serv. Ass'n v. Trump*,
   768 F. Supp. 3d 6 (D.D.C. 2025) ..................................................................................... 14

*Am. Nat'l Ins. Co. v. FDIC*,
   642 F.3d 1137 (D.C. Cir. 2011) ......................................................................................... 7

*American Foreign Serv. Ass'n v. Trump*,
   Civ. A. No. 25-0352, 2025 WL 573762 (D.D.C. Feb. 21, 2025) ......................................... 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................................... 7

*Ass'n for Educ. Fin. & Pol'y, Inc. v. McMahon*,
   Civ. A. No. 250999 (TNM), 2025 WL 1568301 (D.D.C. June 3, 2025) ........................ 23, 29

*Ass'n of Battery Recyclers, Inc. v. EPA*,
   716 F.3d 667 (D.C. Cir. 2013) ......................................................................................... 34

*Baker v. Carr*,
   369 U.S. 186 (1962) ....................................................................................................... 30

*Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*,
   502 U.S. 32 (1991) ......................................................................................................... 32

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................................... 7

*Boire v. Greyhound Corp.*,
   376 U.S. 473 (1964) ....................................................................................................... 32

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988) ......................................................................... 21, 24

*Bowles v. Russell*,
  551 U.S. 205 (2007) ............................................................................... 10

*Carroll v. Office of Fed. Contract Compliance Programs, U.S. Dep't of Labor*,
  235 F. Supp. 3d 79 (D.D.C. 2017) ......................................................... 35

*Cecile Indus., Inc. v. Cheney*,
  995 F.2d 1052 (Fed. Cir. 1993) ............................................................. 20

*Chi. & S. Air Lines v. Waterman S. S. Corp.*,
  333 U.S. 103 (1948) ............................................................................... 31

*City of New York v. Dep't of Def.*,
  913 F.3d 423 (4th Cir. 2019) ................................................................ 29

*Clinton v. City of N.Y.*,
  524 U.S. 417 (1998) ............................................................................... 28

*Clinton v. Jones*,
  520 U.S. 681 (1997) ............................................................................... 31

*Cobell v. Kempthorne*,
  455 F.3d 301 (D.C. Cir. 2006) .......................................................... 22, 23

*\*Conf. of Catholic Bishops v. Dep't of State*,
  770 F. Supp. 3d 155 (D.D.C. Mar. 11, 2025) .............................. 16-17, 21

*Connecticut v. U.S. Dep't of Interior*,
  344 F. Supp. 3d 279 (D.D.C. 2018) ....................................................... 35

*Crowley Gov't Servs., Inc. v. GSA*,
  38 F.4th 1099 (D.C. Cir. 2022) ............................................................. 16

*Ctr. for Biological Diversity v. Trump*,
  453 F. Supp. 3d 11 (D.D.C. 2020) ......................................................... 27

*Dalton v. Sherwood Van Lines, Inc.*,
  50 F.3d 1014 (Fed. Cir. 1995) .......................................................... 20, 21

*Dalton v. Specter*,
  511 U.S. 462 (1994) .......................................................................... 26, 30

*DCH Reg'l Med. Ctr. v. Azar*,
  925 F.3d 503 (D.C. Cir. 2019) .............................................................. 32

*\* Dep't of Education v. California*,
  No. 24A910, 2025 WL 1008354 (Apr. 4, 2025) ................................... 9, 13

*Diakanua v. Rubio*,
  Civ. A. No. 24-1027 (TJK), 2025 WL 958271 (D.D.C. Mar. 31, 2025) ........................ 34, 35

*Elgin v. Dep't of Treasury*,
  567 U.S. 1 (2012) ................................................................................................. 12

*Elm 3DS Innovations LLC v. Lee*,
  Civ. A. No. 16-1036, 2016 WL 8732315 (E.D. Va. Dec. 2, 2016) ........................................ 24

*FedEx v. Dep't of Comm.*,
  39 F.4th 756 (D.C. Cir. 2022) ........................................................................... 32, 33

*Fornaro v. James*,
  416 F.3d 63 (D.C. Cir. 2005) ............................................................................ 12, 15

*Free Enter. Fund v. Pub. Co. Acct. Bd.*,
  561 U.S. 477 (2010) .............................................................................................. 31

*Garcia v. Vilsack*,
  563 F.3d 519 (D.C. Cir. 2009) .................................................................................. 24

*Graham v. Ashcroft*,
  358 F.3d 931 (D.C. Cir. 2004) ............................................................................ 10, 15

*Griffith v. FLRA*,
  842 F.2d 487 (D.C. Cir. 1988) ............................................................................ 32, 33

*Harrington v. Schlesinger*,
  528 F.2d 455 (4th Cir. 1975) ..................................................................................... 28

*Heckler v. Chaney*,
  470 U.S. 821, 830 (1985) ..................................................................................... 24-25

*Herbert v. Nat'l Acad. of Scis.*,
  974 F.2d 192 (D.C. Cir. 1992) ..................................................................................... 7

*I.N.S. v. Chadha*,
  462 U.S. 919 (1983) .............................................................................................. 28

*Ingersoll-Rand Co. v. United States*
  780 F.2d 74 (D.C. Cir. 1985) ..................................................................................... 21

*Leedom v. Kyne*
  358 U.S. 184 (1958) ......................................................................................... 31, 32

*Louisiana v. Biden*,
  622 F. Supp. 3d 267 (W.D. La. 2022) .......................................................................... 25

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .......................................................................................... 7, 30

*Lujan v. Nat'l Wildlife Fed'n.*,
   497 U.S. 871 (1990) ................................................................................ 22, 23

*Marbury v. Madison*,
   5 U.S. (1 Cranch) 137 (1803) ................................................................... 30

*Maryland v. USDA*,
   No. 25-1338, 2025 WL 1073657 (4th Cir. Apr. 9, 2025) ................................. 15-16

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012) ............................................................................... 16

*McMahon v. New York*,
   No. 24A1203, 2025 WL 1922626 (U.S. July 14, 2025) .................................... 9

*Mdewakanton Sioux Indians of Minn. v. Zinke*,
   264 F. Supp. 3d 116 (D.D.C. 2017) ............................................................ 35

*Megapulse, Inc. v. Lewis*,
   672 F.2d 959 (D.C. Cir. 1982) ............................................................. 17, 21

*Mississippi v. Johnson*,
   71 U.S. (4 Wall) 475 (1866) ................................................................ 30, 31

*Morrison v. Olson*,
   487 U.S. 654 (1988) ............................................................................... 31

*National Treasury Emps. Union v. Trump*,
   Civ. A. No. 25-420, 2025 WL 561080 (D.D.C. Feb. 20, 2025) .......................... 15

*New York v. McMahon*,
   Civ. A. No. 25-10601-MJJ, 2025 WL 1463009 (D. Mass. May 22, 2025) ......... 8, 9

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004) ............................................................................ 22, 23

*Nuclear Regul. Comm'n v. Texas*,
   145 S. Ct. 1762 (2025) ...................................................................... 32, 33

*Nyunt v. Chairman, Broad. Bd. of Governors*,
   589 F.3d 445 (D.C. Cir. 2009) ................................................................. 32

*Office of Personnel Mgmt. v. Richmond*,
   496 U.S. 414 (1990) ............................................................................... 28

*Papasan v. Allain*,
   478 U.S. 265 (1986) ............................................................................ 7, 8

*Perry Cap. LLC v. Mnuchin*,
   864 F.3d 591 (D.C. Cir. 2017) ................................................................. 24

*PETA v. U.S. Fish & Wildlife Serv.,*
  59 F. Supp. 3d 91 (D.D.C. 2014) ....................................................................... 35

*Printz v. United States,*
  521 U.S. 898 (1997) ........................................................................................... 31

*Pub. Citizen v. U.S. Dist. Court for the Dist. of Columbia,*
  486 F.3d 1342 (D.C. Cir. 2007) ......................................................................... 34

*Quality Tooling, Inc. v. United States,*
  47 F.3d 1569 (Fed. Cir. 1995) ........................................................................... 20

*Sharifymoghaddam v. Blinken,*
  Civ. A. No. 23-1472 (RCL), 2023 WL 8047007 (D.D.C. Nov. 17, 2023)(1) ...... 35

*Somerville Pub. Sch. v. McMahon,*
  139 F.4th 63 (1st Cir. 2025) ........................................................................... 8, 9

*Spectrum Leasing Corp. v. United States,*
  764 F.2d 891 (D.C. Cir. 1985) ........................................................................... 21

*Steadman v. Gov., U.S. Soldiers & Airmen's Home,*
  918 F.2d 963 (D.C. Cir. 1990) ........................................................................... 12

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) ............................................................................................. 34

*Steenholdt v. FAA,*
  314 F.3d 633 (D.C. Cir. 2003) ........................................................................... 24

*Talal Al-Zahrani v. Rodriguez,*
  669 F.3d 315 (D.C. Cir. 2012) ........................................................................... 34

*Thomas v. Principi,*
  394 F.3d 970 (D.C. Cir. 2005) ............................................................................. 7

*Thunder Basin Coal Co. v. Reich,*
  510 U.S. 200 (1994) ........................................................................................... 11

*Trump v. Am. Fed'n of Gov't Emps., No. 24A1174,*
  2025 WL 1873449 (U.S. July 8, 2025) ................................................................ 9

*Turner v. U.S. Agency for Global Media,*
  502 F. Supp. 3d 333 (D.D.C. 2020) ............................................................. 12, 33

*U.S. Info. Agency v. Krc,*
  989 F.2d 1211 (D.C. Cir. 1993) ......................................................................... 11

*United States Sugar Corp. v. EPA,*
  830 F.3d 579 (D.C. Cir. 2016) ........................................................................... 25

*United States v. Fausto*,
    484 U.S. 439 (1988) ........................................................................................ 11, 12

*Versata Dev. Corp. v. Rea*,
    959 F. Supp. 2d 912 (E.D. Va. 2013) ....................................................................... 24

*Vill. of Bald Head Island v. U.S. Army Corps. of Eng'rs*,
    714 F.3d 186 (4th Cir. 2013) ...................................................................................... 22

*Weaver v. Info. Agency*,
    87 F.3d 1429 (D.C. Cir. 1996) ............................................................................ 11, 12

*Webster v. Doe*,
    486 U.S. 592 (1988) ................................................................................................... 25

*Widakuswara v. Lake*,
    No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025) ......................................... 6

*Widakuswara v. Lake*,
    No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) ................................. 6, 8, 26-27

**Statutes, Rules, Regulations, and Other Authorities**

5 U.S.C. § 504 ................................................................................................ 17, 18

5 U.S.C. § 701 ........................................................................................................ 24

5 U.S.C. § 704 ........................................................................................................ 24

5 U.S.C. § 2105 ........................................................................................ 9, 17, 18, 19

5 U.S.C. § 2301 ...................................................................................................... 11

5 U.S.C. § 2302 ...................................................................................................... 11

5 U.S.C. § 7703 ...................................................................................................... 11

5 U.S.C. § 2302 ...................................................................................................... 13

22 U.S.C. § 6202 ............................................................................................. 5, 6, 25

22 U.S.C. § 6204 ........................................................................................ 2, 3, 24, 25

22 U.S.C. § 6206 .................................................................................................... 17

22 U.S.C. § 6208 ...................................................................................................... 2

28 U.S.C. § 1331 .................................................................................................... 10

28 U.S.C. § 1491 .................................................................................................... 16

41 U.S.C. § 7102 ................................................................................................. 19-20

41 U.S.C. § 7103 ................................................................................................ 19, 20

41 U.S.C. § 7104 .................................................................................................... 20

Exec. Order No. 14238, 90 Fed. Reg. 13043 (Mar. 14, 2025) ....................................... 3

Fed. R. Civ. P. 12 ................................................................................................. 7, 24

U.S. Const. art. I, § 7, cl. 2 ........................................................................ 27

U.S. Const. art. I, § 8, cl. 1 ........................................................................ 28

U.S. Const. art. I, § 9, cl. 7 ........................................................................ 28

U.S. Const. art. II, § 3 ........................................................................ 29, 30

Defendants, Kari Lake, in her official capacity as Senior Advisor to the Acting Chief Executive Officer ("CEO") of the U.S. Agency for Global Media ("Global Media"), Victor Morales, in his official capacity as Acting CEO, and Global Media (collectively "Defendants") through their undersigned counsel, respectfully move to dismiss the Complaint (ECF No. 1) by Plaintiffs Michael Abramowitz, Anthony LaBruto, and one "J. Doe" journalist (collectively "Plaintiffs"),[1] pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6). Defendants also move for relief under Local Civil Rule ("Local Rule") 7(n)(1)), which Plaintiffs oppose.

## INTRODUCTION

Plaintiffs are Michael Abramowitz, the former Director of Voice of America, Anthony LaBruto, a journalist in the English to Africa Service in the Africa Division of Voice of America, and one "J. Doe" journalist operating under a personal services contract with Voice of America. Plaintiffs chiefly rely on the Administrative Procedure Act ("APA") (Count I), separation of powers principles (Count II), Article II's Take Care Clause (Count III), and an argument that Defendants' actions are *ultra vires* (Count IV). Plaintiffs in this action, however, seek to micromanage Global Media, including controlling day-today operations and personnel decisions. If Plaintiffs' claims were otherwise allowed to proceed, the Court would be engaged in judicial review that would eliminate the discretion entrusted to Global Media to run its day-to-day operations. Instead of the Executive Branch faithfully executing the laws of Congress, substantial aspects of a cabinet-level agency's operations would instead be put under the control of this Court.

---

[1]    On March 28, 2025, Plaintiff J. Doe I filed a notice of voluntary dismissal. *See* Voluntary Dismissal (ECF No. 12).

As discuss further below, this Court should dismiss the Complaint in its entirety. As a threshold matter, this Court lacks jurisdiction over Plaintiffs' claims. Plaintiffs also fail to challenge any discrete agency action under the APA and Plaintiffs have other adequate alternative remedies which forecloses relief under the APA. Also, Plaintiffs' constitutional claims fail because they raise purely statutory arguments. And, finally, with respect to Plaintiffs' *ultra vires* claim, they miss the mark completely because there is alternative review for their claims.

## BACKGROUND

### I.    Statutory Background

The mission of United States Agency for Global Media is to inform, engage, and connect people around the world in support of freedom and democracy. *See* https://www.usagm.gov/whowe-are/mission/. In furtherance of that mission, Global Media oversees multiple entities, including Voice of America. *See id.*; *see also* 22 U.S.C. § 6208a. To effectuate its oversight authority, Congress granted Global Media's CEO the authority to, among other things: "direct and supervise all broadcasting activities conducted" by such entities; "review and evaluate the mission and operation of, and to assess the quality, effectiveness, and professional integrity of, all such [entities'] activities within the context of the broad foreign policy objectives of the United States"; and "[t]o undertake such studies as may be necessary to identify areas in which broadcasting activities under its authority could be made more efficient and economical." 22 U.S.C. §§ 6204(a)1, (a)(2), (a)(8). Among other requirements, Congress directed that all government-funded and operated international broadcasts under the Global Media umbrella "shall" be "consistent with the broad foreign policy objectives of the United States," and "shall include" "a balanced and comprehensive projection of United States thoughts and institutions." *Id.* § 6202(a)(1), (b)(2); *see also id.* § 6202(c)(2) (same for Voice of America broadcasts).

In December 2016, Congress passed, and then-President Obama signed, the 2017 National Defense Authorization Act, which established Global Media's current governing structure. National Defense Authorization Act of 2017, Pub. L. 114-328, 130 Stat. 2000, 2549, § 1288. That law restructured governance of the Global Media broadcast networks by dissolving a governing board structure and centralizing control in a single CEO. 22 U.S.C. §§ 6203, 6204(a)(1), (b). Congress vested the CEO with the many powers previously held by the board, including to "ensure" broadcast activities are consistent with the standards Congress established, including that they be "balanced and comprehensive," *id.* §§ 6204(a)(3), 6202(b)(2), and to "appoint such personnel for the [CEO] as the [CEO] may determine to be necessary." *Id.* § 6204(a)(11). The current Acting CEO of Global Media is Victor Morales, who holds broad supervisory authority accorded to him by statute. 22 U.S.C. § 6204(a).

## II.  Executive Order 14,238

On January 20, 2025, and as amended on March 4, 2025, Charles Ezell, the Acting Director of the U.S. Office of Personnel Management ("OPM"), issued a memorandum (the "OPM Memorandum") titled "Guidance on Probationary Periods, Administrative Leave and Details." *See* https://www.opm.gov/media/yh3bv2fs/guidance-on-probationary-periods-administrative leaveand-details-1-20-2025-final.pdf.  The OPM Memorandum provided that agencies "have the discretion to grant paid administrative leave to employees to help manage their workforces when it is in their best interest to do so."  OPM Mem. at 2.  On March 14, 2025, the President issued Executive Order 14,238, which directed that Global Media's "non-statutory components and functions" be eliminated and that its "performance of [its] statutory functions and associated personnel" be reduced to "the minimum presence and function required by law."  Exec. Order No. 14238, 90 Fed. Reg. 13043 (Mar. 14, 2025).

In furtherance of the OPM Memorandum and the Executive Order, as of June 27, 2025, Global Media has approximately 209 active personnel. Wuco Decl. ¶ 20 (ECF No. 54-1); *see also* Ex. 1 annexed to Wuco Decl. (ECF No. 54-2) (shows a breakdown of the offices where the employees work). The number of active personnel is anticipated to change with anticipated flux, including a reduction in force, and as Global Media responds to current events as needed. Wuco Decl. ¶ 20 (ECF No. 54-1). Also, recognizing that Voice of America may need to staff up as need arises, Global Media has exercised recalls, as appropriate and is initiating internal details and hiring Personal Services Contractors[2] as needed, to maintain required levels of statutorily required activity. *Id.* ¶ 20.

## III.    **Procedural Background**

On March 26, 2025, Plaintiffs filed this action against Defendants for allegedly placing employees and contractors on paid administrative leave, temporarily ceasing broadcasting and programming operations, cancelling personal services contracts, and allegedly preventing Abramowitz from carrying out his statutory functions as Director of Voice of America. *See generally* Compl. (ECF No. 1). Plaintiffs allege violations of the APA (Count I), the separation of powers principles (Count II), and the Take Care Clause (Count III), and bring an *ultra vires* claim (Count IV).

That same day, on March 26, 2025, Plaintiffs moved for a temporary restraining order and preliminary injunction seeking a declaration that "Defendants actions requiring [Voice of America] to cease operations, placing virtually all [Voice of America] employees on administrative leave, and terminating 500 fulltime personal service contract employees" are

---

[2]    Global Media has a contractual relationship with Personal Service Contractors, who are not Global Media employees, but have an employer employee relationship governed by contract.

"unlawful (Pls.' Mot. (ECF No. 4) at 43 ¶ (b)); an order directing Defendants to "cancel their orders putting approximately 1,300 [Voice of America] employees on administrative leave, cancel the termination of personal services contracts with approximately 500 employees, cease dismantling Voice of America, and restore Voice of America's personnel and operating capacities such that the entities may continue their broadcasting activities at the level before the above actions were taken," among others, *id.* ¶ (c); *see also* Compl. (ECF No. 1) at 33.

On March 28, 2025, the Southern District of New York issued an Order in *Widakuswara v. Lake*, Civ. A. No. 25-1015 (RCL) granting the plaintiffs' temporary restraining order and a few days later, the Southern District of New York transferred the *Widakuswara* matter to this District. *See id.* Orders (ECF Nos. 54, 61).

After the *Widakuswara* matter was transferred to this District, Defendants filed their opposition to Plaintiffs' motion for a preliminary injunction, *see* ECF No. 24, and the Court subsequently held oral arguments, *see* Min. Entry for Motion Hearing held on Apr. 17, 2025. On April 22, 2025, the Court entered a preliminary injunction, requiring Defendants to:

> (1) take all necessary steps to return [Global Media] employees and contractors to their status prior to the March 14, 2025 Executive Order 14238, "Continuing the Reduction of the Federal Bureaucracy," including by restoring all [Global Media] employees and personal service contractors, who were placed on leave or terminated, to their status prior to March 14, 2025;
>
> (2) restore the FY 2025 grants with [Global Media] Networks Radio Free Asia and Middle East Broadcasting Networks such that international Global Media outlets can "provide news which is consistently reliable and authoritative, accurate, objective, and comprehensive," 22 U.S.C. § 6202(a), (b), and, to that end, provide monthly status reports on the first day of each month apprising the Court of the status of the defendants' compliance with this Order, including documentation sufficient to show the disbursement to [Radio Free Asia] and [Middle East Broadcasting Networks] of the funds Congress appropriated; and

(3) restore [Voice of America] programming such that [Global Media] fulfills its
statutory mandate that [Voice of America] "serve as a consistently reliable and
authoritative source of news," 22 U.S.C. § 6202(c).

Order (ECF No. 29).

On April 24, 2025, Defendants filed a notice of interlocutory appeal, *see* Notice (ECF No. 30) and moved for an emergency stay in the D.C. Circuit case on April 25, 2025. The D.C. Circuit granted the emergency motion to stay on May 3, 2025. *See Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *6 (D.C. Cir. May 3, 2025). Provision (1) of the Court's April 22, 2025, preliminary injunction remains stayed pending the D.C. Circuit's resolution of the merits of Defendants' appeal. *See Widakuswara v. Lake*, No. 25-5144, 2025 WL 1521355, at *1 (D.C. Cir. May 28, 2025).

On May 28, 2025, Plaintiffs filed an order to show cause as to Defendants' compliance with the third prong of the Court's April 22, 2025, preliminary injunction regarding Voice of America. *See* Pls.' Mot. (ECF No .37). Contrary to Plaintiffs' assertions raised in their motion for an order to show cause, Defendants have demonstrated that Voice of America is meeting its statutory obligations under the International Broadcasting Act and complying with the Court's requirement that it serve, pursuant to its statutory mandate, as a "consistently reliable and authoritative source of news," *see* 22 U.S.C. § 6202(c). *See generally* Defs.' Responses (ECF Nos. 44, 54, 57). As of today, Defendants filed their second supplemental response and Plaintiffs' motion for an order to show cause is fully briefed, *see* ECF No. 57.

Further, Defendants moved to stay all proceeding pending the D.C. Circuit's issuance of a decision in *Widakuswara v. Lake*, No. 25-5144 (D.C. Cir.) and *Abramowitz v. Lake*, No. 25-5145 (D.C. Cir.). Defendants argued, amongst other things, to avoid a waste of judicial resources a stay for the purpose of allowing the D.C. Circuit to determine issues that are potentially dispositive in

this case—whether this Court lacks jurisdiction to provide relief on employment claims and lacks jurisdiction under the Tucker Act—is warranted. *See generally* Defs.' Mot. and Reply (ECF Nos. 43, 48). The Court denied Defendants' motion to stay and eventually ordered Defendants to respond to Plaintiffs' Complaint by July 18, 2025. *See* Orders (ECF Nos. 50, 53)

Defendants now move to dismiss Plaintiffs' Complaint in its entirety.

## LEGAL STANDARDS

Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). A court may examine materials outside the pleadings as it deems appropriate to resolve the question of its jurisdiction. *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Under Rule 12(b)(6), the Court may dismiss a Complaint where a plaintiff fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. *See Iqbal*, 556 U.S. at 678. However, a court is not required to accept conclusory allegations or unwarranted factual deductions as true. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Likewise, a court need not "accept as true a legal

conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, the focus is on the language in the complaint and whether that sets forth sufficient factual allegations to support a plaintiff's claims for relief.

## ARGUMENT

**I.**    **This Court Lacks Jurisdiction Over Plaintiffs' Claims.**

Plaintiffs challenge Defendants' personnel decisions, including placing them and other Voice of America employees on administrative leave. *See generally* Compl. (ECF No.1); *see also id.*, Prayer of Relief ¶ (c). This Court lacks jurisdiction over these claims for two reasons.

First, under the Federal Service Labor–Management Relations Statute ("FSL-MRS") and the Civil Service Reform Act ("CSRA"), Congress has precluded district court jurisdiction over Plaintiffs' challenges to Defendants' decisions to place employees on paid administrative leave. Indeed, in *Widakuswara*, 2025 WL 1288817, at * 2, the D.C. Circuit recently stated, in relevant part,

> We have long held that federal employees may not use the Administrative Procedure Act to challenge agency employment actions… Congress has instead established comprehensive statutory schemes for adjudicating employment disputes with the federal government… Federal employees may not circumvent [the requisite statutes'] requirement and limitations by resorting to the catchall APA to challenge agency employment actions.

The D.C. Circuit stayed Provision (1) of the Court's April 22, 2025, preliminary injunction and noted, "[t]he district court likely lacked jurisdiction over [Global Media's] personnel actions." *Id.* at * 2, 6. Also, in *New York v. McMahon*, Civ. A. No. 25-10601-MJJ, 2025 WL 1463009, at *19 (D. Mass. May 22, 2025) and *Somerville Pub. Sch. v. McMahon*, 139 F.4th 63, 71 (1st Cir. 2025), the government argued the district court was barred from considering plaintiffs' constitutional and APA claims challenging the Department of Education's personnel decisions, including reduction in force, because the CSRA provided exclusive procedure for challenging federal personnel

decisions.  Both rejected the government's arguments that the CSRA deprived the district court of jurisdiction.  *See New York*, 2025 WL 1463009, at *19–20; *Somerville Pub. Sch.*, 139 F.4th at 76. Recently, however, the Supreme Court stayed the preliminary injunction, which amongst other things, enjoined the Department from carrying out the reduction in force and ordered the government to reinstate the Department employees who were fired as part of a reduction in force. *See McMahon v. New York*, No. 24A1203, 2025 WL 1922626, at *1 (U.S. July 14, 2025). Similarly, in *Trump v. Am. Fed'n of Gov't Emps.*, No. 24A1174, 2025 WL 1873449, at *1 (U.S. July 8, 2025), the Supreme Court recently stayed a district court's injunction pausing large-scale reductions in force and reorganizations.  Plaintiffs' employment claims, which are like the plaintiffs in those matters, are subject to dismissal.

Second, Plaintiffs LaBruto and J. Doe II are not civil service employees appointed under 5 U.S.C. § 2105(a)(1).  Instead, they were hired by Voice of America under personal services contracts, which are governed by the Contract Disputes Act; the Court of Federal Claims enjoys exclusive jurisdiction over such claims.  In fact, in *Dep't of Education v. California*, No. 24A910, 2025 WL 1008354, at *1 (Apr. 4, 2025) (per curiam), the Supreme Court stayed a temporary restraining order that had "enjoin[ed] the Government from terminating various education-related grants."  The Supreme Court held that the government was "likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the [Administrative Procedure Act]," *id.* at *1–2, reasoning that "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'"  *Id.* at *2 (quoting 28 U.S.C. §1491(a)(1)).  *California* is instructive and counsels that dismissal is appropriate.

A.    **Abramowitz Must Pursue His Claims Through the Statutory Scheme Congress Established.**

At the outset, this case involves a challenge to policy decisions governing a federal employee (and as discussed below, contractors). The Court lacks jurisdiction over these claims because Congress has established a detailed statutory scheme for adjudicating disputes related to federal employment, and Plaintiffs' claims must follow that process.

"Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007). Although district courts have jurisdiction over civil actions arising under federal law, *see* 28 U.S.C. § 1331, "Congress may preclude district court jurisdiction by establishing an alternative statutory scheme for administrative and judicial review." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump ("AFGE")*, 929 F.3d 748, 754 (D.C. Cir. 2019). Here, as detailed below, Congress has precluded district court jurisdiction for the claims brought by Abramowitz regarding his employment and complaints about Global Media personnel being placed on administrative leave or terminated.

The CSRA and FSL-MRS together provide a comprehensive "scheme of administrative and judicial review" for resolving both disputes between employees and their federal employers and disputes brought by unions representing those employees. *AFGE*, 929 F.3d at 752 (regarding FSL-MRS); *see Graham v. Ashcroft*, 358 F.3d 931, 933 (D.C. Cir. 2004) (regarding CSRA more broadly). In these statutes, Congress provided that most federal labor and employment disputes must first be administratively exhausted before the employing agency and the applicable administrative review board—either the Merit Systems Protection Board for employment disputes, the Federal Labor Relations Authority for labor disputes, or the Office of Special Counsel for certain "prohibited personnel practices." For foreign service officers, the Foreign Service Act of 1980 ("FSA") "provides an analogous system for reviewing allegedly adverse actions taken

against those employees." *U.S. Info. Agency v. Krc*, 989 F.2d 1211, 1217 (D.C. Cir. 1993)). Judicial review, if any, is generally available only following the exhaustion of administrative review. *See AFGE*, 929 F.3d at 752 (citing 5 U.S.C. §§ 7105, 7123(a), (c)); *United States v. Fausto*, 484 U.S. 439, 448–50 (1988)); *see also* 5 U.S.C. § 7703(b) (providing for judicial review in the Federal Circuit or other court of appeals).

"Personnel actions" that fall within the Office of Special Counsel's ("OSC") purview include "any. . . significant change[s] in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(xii). The CSRA enumerates thirteen circumstances under which personnel actions become "prohibited personnel practices," which must be brought before OSC in the first instance. *Id.* § 2302(b). One of those thirteen "prohibited personnel practices" occurs when a "personnel action" violates "any law, rule, or regulation implementing, or directly concerning, the merit system principles" listed in the statute. *Id.* § 2302(b)(12). These principles require, in relevant part, "proper regard for [employees'] constitutional rights." *Id.* § 2301(b)(2). Consequently, personnel actions that implicate violations of constitutional rights, including alleged violations of the First Amendment, are prohibited personnel practices that generally fall within the CSRA's exclusive remedial scheme. *See, e.g., Weaver v. Info. Agency*, 87 F.3d 1429, 1432 (D.C. Cir. 1996).

Statutory schemes like these largely preclude jurisdiction in the district courts, either altogether or prior to the completion of jurisdictional administrative exhaustion requirements. *AFGE*, 929 F.3d at 754. In *AFGE*, the D.C. Circuit applied the "two-step framework set forth in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)," to conclude that the union plaintiffs in that case could not challenge in district court three executive orders related to federal employment. *AFGE*, 929 F.3d at 754. Under that framework, district courts lack jurisdiction over suits like this

one when the intent for exclusive review in the court of appeals is "(i) fairly discernible in the statutory scheme, and (ii) the litigant's claims are of the type Congress intended to be reviewed within [the] statutory structure." *See id.* at 755 (citations omitted).

The Supreme Court repeatedly has held that the CSRA provides the exclusive means of redressing employment disputes involving federal employees. *See Elgin v. Dep't of Treasury*, 567 U.S. 1, 10–15 (2012); *Fausto*, 484 U.S. at 455.  Likewise, the D.C. Circuit repeatedly has recognized that the FSL-MRS and the CSRA readily satisfy the first prong of the *Thunder Basin* framework.  *See AFGE*, 929 F.3d at 755 (concluding that union plaintiffs could not challenge in district court three executive orders related to federal employment); *Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005).  In other words, Congress intended to make the FSL-MRS and CSRA the exclusive scheme, and they satisfy the first step of the two-step *Thunder Basin* framework.

With respect to constitutional claims, even in cases centering on CSRA–covered actions, the Supreme Court has considered the availability of "meaningful review" in an Article III judicial forum when evaluating the scope of the CSRA's exclusive remedial scheme, *Elgin*, 567 U.S. at 10, and the D.C. Circuit has similarly consistently determined that federal employees have "a right to federal court review of their constitutional claims," *Weaver*, 87 F.3d at 1433.  Although there exists a narrow exception to the exhaustion rule for employees covered under the CSRA when the raise "constitutional claim issues totally unrelated to the CSRA procedures," *Steadman v. Gov., U.S. Soldiers & Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990), this exception is a narrow one, and does not excuse exhaustion requirement for claims, that, while framed as constitutional challenges, are in truth a disguised "vehicle" to challenge CSRA–covered personnel actions or practices.  *Elgin*, 567 U.S. at 22; *Turner v. U.S. Agency for Global Media*, 502 F. Supp. 3d 333, 366 (D.D.C. 2020).

Abramowitz's claims are also of the type to be challenged through this statutory structure. In fact, "[c]laims 'will be found to fall outside of the scope of a special statutory scheme in only limited circumstances, when (1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claims are wholly collateral to the statutory review provisions; and (3) the claims are beyond the expertise of the agency.'" *AFGE*, 929 F.3d at 755 (quoting *Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 500 (D.C. Cir. 2018)). For example, changes to Global Media's purported autonomy or the "firewall" are necessarily employment actions, because at bottom they challenge policy decisions regarding how employees at the agency can perform their duties, i.e., what news will be broadcast, the way that the agency and its employees will function, conditions of employment or the way that Plaintiffs perform their job. *See e.g.*, 5 U.S.C. §§ 2302(a)(2)(A)(xii); 2301(b)(2), 2302(b)(12). These claims fall squarely within the CSRA's structure. Because Defendants actions have arguably "changed the way" that Plaintiffs perform their job, they are necessarily changes to Plaintiffs "working conditions," covered by the CSRA and subject to the jurisdictional exhaustion requirement.

Here, all three factors point toward preclusion. First, a finding of preclusion will not thwart meaningful judicial review. In essence, Plaintiff Abramowitz challenges his placement on administrative leave (as do other contractor Plaintiffs), and perceived consequences or incidental effects that will flow from that placement, whether related to financial benefits or repatriation. But an employee's placement on administrative leave can be challenged under the CSRA or FSL-MRS. *See e.g., California*, 2015 WL 1008354, at *1 ("[t]he APA's waiver of sovereign immunity does not apply 'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" (quoting 5 U.S.C. § 702)). Another judge of this district described that statutory scheme when addressing analogous claims by unions of federal employees challenging executive

actions that they asserted would "systematically dismantle" the agency that employed them. *Am. Foreign Serv. Ass'n v. Trump*, 768 F. Supp. 3d 6, 11 (D.D.C. 2025) (quoting the plaintiffs' complaint). For civil servants, the "applicable statutory scheme is set forth in the[] FSL-MRS and the [] CSRA[.]" *Id.* at 20. At bottom, Plaintiffs' complaints are employment claims cloaked as constitutional or APA challenges.

Second, for similar reasons, challenge to the placement on administrative leave is also not "wholly collateral" to the statutory review provisions. Rather, that claim may arise in the context of a specific labor or employment dispute, as set forth above. *See AFGE*, 929 F.3d at 759–60 ("This consideration is 'related' to whether 'meaningful judicial review' is available, and the two considerations are sometimes analyzed together." (quoting *Jarkesy v. SEC*, 803 F.3d 9, 22 (D.C. Cir. 2015))). And AFGE is instructive. The district court characterized the claims there as involving "separation-of-powers issues" and "whether a statute or the Constitution has authorized the President to act in a particular way," 929 F.3d at 760, much as Plaintiffs have framed their claims in this case. But the D.C. Circuit nonetheless concluded that the *AFGE* plaintiffs had to follow the statutory scheme, observing that, like here, the claims at issue could be adjudicated by resorting to the provisions of the relevant congressional legislation. *Id.* at 760–61.

And third, even assuming that the Federal Labor Relations Authority and Merit Systems Protection Board have lesser expertise on questions of constitutional dimension, they may well be able to "offer an interpretation of the Statute[s] in the course of the proceeding that might alleviate or shed light on the constitutional concerns." *Id.* at 761 (cleaned up). Plaintiff Abramowitz's claims are not subject to judicial review unless and until they have been pursued through the comprehensive statutory scheme Congress devised.

Further, to the extent that Plaintiffs are challenging the reduction in force or mass employees being placed on administrative leave or terminated, the CSRA would still foreclose those claims. Indeed, the CSRA contains no statutory exception based on the number of employees affected or the purported effect of terminations. Hence, courts have upheld the CSRA's exclusivity against "collateral, systemwide challenge," explaining that "what you get under the CSRA is what you get." *Fornaro*, 416 F.3d at 67.

In short, Congress has precluded district-court jurisdiction for employment disputes by establishing an alternative, comprehensive statutory scheme for administrative and judicial review to resolve disputes between employees and their federal employers. *See AFGE*, 929 F.3d at 754 (discussing the Federal Service Labor Management Relations Statute); *see Graham*, 358 F.3d at 933 (discussing the Civil Service Reform Act more broadly). Plaintiffs do not allege that they have exhausted their administrative remedies, and their employment claims—which complain about personnel being placed on administrative leave or terminated are plainly subject to the statutory schemes discussed.

Indeed, numerous courts in recent months and years have concluded that similar federal-employment suits are precluded. *See, e.g.*, *AFGE*, 929 F.3d at 761 (challenge to three executive orders governing collective bargaining and grievance processes); *American Foreign Serv. Ass'n v. Trump*, Civ. A. No. 25-0352, 2025 WL 573762, at * 8–11 (D.D.C. Feb. 21, 2025) (challenge to employees' placement on administrative leave); *National Treasury Emps. Union v. Trump*, Civ. A. No. 25-420, 2025 WL 561080, at *5–8 (D.D.C. Feb. 20, 2025) (challenge to terminations of probationary employees, anticipated RIFs, and deferred-resignation program); *AFGE v. Ezell*, Civ. A. No. 25-10276, 2025 WL 470459, at *1–3 (D. Mass. Feb. 12, 2025) (challenge to deferred-resignation program); *see also Maryland v. USDA*, No. 25-1338, 2025 WL 1073657, at *1 (4th

Cir. Apr. 9, 2025) ("The Government is likely to succeed in showing the district court lacked jurisdiction over Plaintiffs' claims" challenging the "terminat[ion] [of] thousands of probationary federal employees"); *but see AFGE* v. *OPM*, Civ. A. No. 25-1780, 2025 WL 900057, at \*1 (N.D. Cal. Mar. 24, 2025) (asserting jurisdiction over challenge to probationary-employee terminations).

Accordingly, Plaintiffs' claims are precluded.

**B.    This Court Lacks Jurisdiction Over the Claims of Plaintiffs LaBruto and J. Doe II, for they Arise in a Contract and Must Be Brought in the Court of Federal Claims.**

Generally, the federal government is "immune from suit in federal court absent a clear and unequivocal waiver of sovereign immunity." *Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099, 1105 (D.C. Cir. 2022). Although the APA provides "a limited waiver of sovereign immunity for claims against the United States" seeking non-monetary relief, *id.*, that waiver does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought," *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012). (cleaned up). That carve-out "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Id.*

When a party seeks to challenge the terms of a contract that it has entered with the United States, the proper remedy is typically suit under the Tucker Act, not the APA. The Tucker Act provides that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract"— including agreements like those that Plaintiffs LaBruto and J. Doe II have—"with the United States." 28 U.S.C. § 1491(a). As the D.C. Circuit has explained, "the Tucker Act impliedly forbids" the bringing of "contract actions" against "the government in a federal district court" under the APA. *Albrecht v. Comm. on Employee Benefits of the Federal Reserve Employee Benefits Sys.*, 357 F.3d 62, 67–68 (D.C. Cir. 2004) (cleaned up); *see also Conf. of Catholic Bishops*

*v. Dep't of State*, 770 F. Supp. 3d 155, 166 (D.D.C. Mar. 11, 2025), *dismissed sub nom. United States Conf. of Cath. Bishops v. United States Dep't of State*, No. 25-5066, 2025 WL 1350103 (D.C. Cir. May 2, 2025).

In determining whether "a particular action" is "at its essence a contract action" subject to the Tucker Act or instead a challenge properly brought under the APA, this Court looks at both "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). In this case, both of those considerations make clear that this Court lacks jurisdiction over Plaintiffs LaBruto's and J. Doe II's claims and any claims challenging the termination of their and other's personnel service contracts.

At the outset, there is no dispute that Global Media has been given express statutory authority for engaging in personal services contracts. In 2002 Congress passed the "Foreign Relations Authorization Act," which gave the Director of the International Broadcasting Bureau the authority to establish a "pilot program [] for the purpose of hiring United States citizens or aliens as personal services contractors." Pub. L. 107-228 § 504(a), 116 Stat. 1350 (2002) (codified at 22 U.S.C. § 6206 note). As directed, these "personal services contractors" were offered "without regard to Civil Service and classification laws, for service in the United States as broadcasters, producers, and writers in the International Broadcasting Bureau to respond to new or emerging broadcast needs or to augment broadcast services." *Id.* Crucially, Congress contemplated that these personal service contractors would be hired "without regard to Civil Service and classification laws." *See id.* For the purposes of Title 5 of the United States Code, an "employee" is defined as "an individual who is . . . appointed in the civil service" by a federal employee acting in an official capacity. 5 U.S.C. § 2105(a)(1). The Foreign Relations Authorization Act also

placed certain conditions on the Director's use of personal services contractors and required that contracts not exceed more than two years.  *Id.* § 504(b).

In this case, Plaintiffs LaBruto and J. Doe II fail to allege that they are "employees" of Global Media or Voice of America.  Nor could they.  The opposite in fact is true, as they repeatedly refer to their status as contractors.  *See, e.g.*, Compl. (ECF No. 1) ¶ 102 ("[LaBruto] [] received notice that his contract, which was set to run through June 2025, would be terminated effective March 31, 2025"); *id.* ¶ 111 ("[J. Doe II] received formal notice that Plaintiff's contract would be terminated effective March 31, 2025: three months early").

A review of Plaintiffs LaBruto's and J. Doe II's contracts clarifies that this Court lacks jurisdiction over their claims.  LaBruto signed his latest personal services contract with Voice of America on March 3, 2023.  *See* Ex. 1, LaBruto Personal Services Contract. J (ECF No. 24-1). Doe II's contract was signed in June 2024.  *See* Ex. 2, J. Doe II Personal Services Contract (ECF No. 24-2).  Both contracts contain the same termination clause (clause four): "Termination of this Contract shall be conducted in accordance with the terms of the attached [Global Media] Personal Services Contractor Handbook."  *See* Exs. 1, 2 (ECF Nos. 24-1, 24-2).  Article 15 of the Personal Services Handbook governs terminations of the contracts.  *See* Ex. 3, USAGM Personal Services Contractor Handbook (ECF No. 24-3).  Article 15(a) provides: "Either party may terminate this Contract with the Agency at any time for any reason by providing the other party with 15 calendar days' written notice. Should the Agency decide to terminate this Contract for Convenience of the Government, the required written notice will be provided by the [Contracting Officer].  The written notice will explain the basis for the termination, and the effective date of the termination.  [Global Media] reserves the right to require the [personal services contractor] to telework while the Agency determines whether to issue a termination notice.  [Global Media] may also place a [Personal

Services Contractor] on administrative leave while determining whether to issue a termination notice." *Id.* On March 15 and 16, 2025, in accordance with the terms of the contracts and the Personal Services Contract Handbook, Global Media notified LaBruto and J. Doe II that their contracts would be terminate effective March 31, 2025 (*see* Compl. (ECF No. 1) ¶¶ 102, 111).

Clause five of both personal services contracts, titled "status as a personal contractor," states that "the [Personal Services Contractor] will be performing services under this contract. The [Personal Services Contractor] understands and acknowledges that [Personal Services Contractor] is not a [Global Media] employee within the competitive or excepted service or for any other purposes under the law. The [Personal Services Contractor] understands and acknowledges that this applies notwithstanding any and all provisions of this contract." *See* Exs. 1, 2 (ECF Nos. 24-1, 24-2) at 1. Clause 10 is titled, "Disputes" states that "[t]his contract is subject to the Contract Disputes Act of 1978. *Id.* at 2. All dispute resolution between the [Personal Services Contractor] and the Government arising out of this Contract shall be conducted in accordance with the procedures included in the Personal Services Contractor Handbook." *Id.* Further, with respect to J. Doe II, that contract explicitly specifies that certain clauses of the Federal Acquisition Regulation ("FAR") are incorporated into the contract. That contract incorporates FAR 212-4, Contract Terms and Conditions, which renders the contract subject to disputes under 41 U.S.C. Chapter 71 (the Contract Disputes Act). *See* https://www.acquisition.gov/far/52.212-4 (last visited July 12, 2025).

Simply put, Plaintiffs' contract claims are barred under the provisions of the Contract Disputes Act, specifically 41 U.S.C. § 7103(a), because they were not first . . . submitted to and denied by a contracting officer. *Id.* The Contract Disputes Act "applies to any express or implied contract . . . made by an executive agency for…the procurement of services." 41 U.S.C.

§ 7102(a)(2).  Under the Act, "[e]ach claim by a contractor against the [f]ederal [g]overnment relating to a contract shall be submitted to the contracting officer for a decision." 41 U.S.C. § 7103(a)(1).  After such a claim has been made, "a contractor may bring an action directly on the claim in the United States Court of Federal Claims."  41 U.S.C. § 7104(b)(1).  That plainly did not occur here.

Moreover, there is no genuine dispute that the Court of Federal Claims enjoys exclusive jurisdiction over claims arising out of the Contracts Disputes Act.  *See Cecile Indus., Inc. v. Cheney*, 995 F.2d 1052, 1055 (Fed. Cir. 1993) ("The [Contract Disputes Act] exclusively governs Government contracts and Government contract disputes.").[3]  Put differently, "[w]hen the Contract Disputes Act applies, it provides the exclusive mechanism for dispute resolution; the Contract Disputes Act was not designed to serve as an alternative administrative remedy, available at the contractor's option."  *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017 (Fed. Cir. 1995).

And as a general matter, Global Media's personal services contracts contain specific reference to the Contract Disputes Act, in addition to termination provisions that allow Global Media to terminate a contract for "convenience" based upon fifteen days' notice, like the notice given to Plaintiffs here.  *See, e.g.,* Compl. (ECF No. 1) ¶¶ 102, 111 (Plaintiffs LaBarto and J. Doe II were notified on March 16 that their contracts would be terminated fifteen days later, on March 31.  Not only would the Court of Federal Claims maintain exclusive jurisdiction over Plaintiffs' contract claims, but Plaintiffs can point to no violation of a provision of their contract

---

[3]    Similarly, the Federal Circuit has acknowledged that "the Tucker Act, in conjunction with the [Contract Disputes Act], purports to make the Court of Federal Claims the exclusive trial court for hearing disputes over government contracts that fall under the [Contract Disputes Act]." *Quality Tooling, Inc. v. United States*, 47 F.3d 1569, 1572–73 (Fed. Cir. 1995).

that would entitle them to relief. Plaintiffs do not allege that Global Media or Voice of America somehow violated the notice provisions to which they are entitled under their contracts. *See generally id.*

In any event, the latter *Megapulse* factor is dispositive here. The nature of relief Plaintiffs LaBruto and Doe II, seek sounds in contract. *See* M*egapulse*, 672 F.2d at 968; *see also Conf. of Catholic Bishops*, 770 F. Supp. 3d at 164–66. It asks the Court to order Defendants to "cancel the termination of personal services contracts with approximately 500 employees," and "restore [Voice of America's] personnel and operating capacities such that the entities may continue their broadcasting activities at the level before the above actions were taken." Compl. (ECF No. 1) Prayer for Relief ¶ (c). Thus Plaintiffs "seek the classic contractual remedy of specific performance." *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985). But this Court cannot order the Government to continue to perform under a contract. *Id.* Such a request for an order that the government "must perform" on its contract is one that "must be resolved by the Claims Court." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 80 (D.C. Cir. 1985); *see also Bowen v. Massachusetts*, 487 U.S. 879, 921 (1988) (Scalia, J., dissenting) ("It is settled that sovereign immunity bars a suit against the United States for specific performance of a contract.").

In short, Plaintiffs' claims sound in contract, appear to arise under the Contract Disputes Act, and should be brought in the Court of Federal Claims. This Court accordingly lacks jurisdiction over them.

## II.   <u>Plaintiffs Fail to Sufficiently Allege Claims Under the APA (Count I).</u>

Plaintiffs fail to sufficiently allege any claims under the APA. First, Plaintiffs fail to seek judicial review of a discrete agency action. Second, there are adequate alternative remedies available thus precluding Plaintiffs' APA challenges. Third, Defendants' actions are committed to agency discretion. Finally, Plaintiffs cannot challenge the Executive Order.

A.       **Plaintiffs Do Not Seek Judicial Review of a Discrete Final Agency Action.**

As a threshold matter, Plaintiffs do not identify a discrete and circumscribed agency action that Global Media has taken and that could specifically be redressed by a federal court.  Plaintiffs must plead "an identifiable action or event" and "direct [their] attack against some particular 'agency action' that causes [them] harm."  *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 891 (1990); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004) (APA limits judicial review to "circumscribed, discrete agency actions").  These final agency actions must be "circumscribed [and] discrete."  *S. Utah*, 542 U.S. at 62.  The APA does not provide for "general judicial review of [an agency's] day-to-day operations," *Lujan*, 497 U.S. at 899, like "constructing a building, operating a program, or performing a contract," *Vill. of Bald Head Island v. U.S. Army Corps. of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013).  The APA thus contains "a prohibition on programmatic challenges," meaning "challenges that seek 'wholesale improvement' of an agency's programs by court decree."  *Alabama- Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 490 (5th Cir. 2014) (cleaned up).  "Because 'an on-going program or policy is not, in itself, a final agency action under the APA,' [a court's] jurisdiction does not extend to reviewing generalized complaints about agency behavior."  *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006) (citation omitted).

Plaintiffs' claims and requested relief in this action present exactly the type of wholesale challenge that the APA forbids.  Plaintiffs' allegations reveal that they do not seek judicial review of a discrete agency action. Rather, they seek wholesale judicial review of Global Media's management of the agency.  Rather than presenting the court with a "narrow question to resolve," *Cobell*, 455 F.3d at 307, Plaintiffs challenge a host of individual actions—some that have occurred and some that have not.  *See, e.g.*, Compl. ¶ 119 (challenging that all Voice of America employees being placed on administrative leave); *id.* (challenging the termination of the contracts of 500 Personal Service Contractors); *id.* (alleging that Defendants caused Voice of America to close

down and Voice of America has ceased functioning, as it is not broadcasting and producing news); ¶ 143 (stating that Defendants actions are "functionally dismantle[ing Voice of America]"); *id.*, Prayer of Relief ¶ (c) (seeking wholesale reinstatement to rehire all employees, cancel the termination of personal service contracts, cease dismantling Voice of America, and restore Voice of America's personnel and operating capacities). Addressing this type of claim would require the Court to supervise all the agency's activities and determine how the agency would accomplish each statutorily-mandated function—an even more extreme kind of supervisory claim than was at issue and rejected in *Lujan*, 497 U.S. at 892–93. Such a claim would completely circumvent the purpose of the APA's discrete agency action requirement, which is to "protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *Norton*, 542 U.S. at 66–67.

As the court recognized in *Ass'n for Educ. Fin. & Pol'y, Inc. v. McMahon*, Civ. A. No. 25-0999 (TNM), 2025 WL 1568301, at *1 (D.D.C. June 3, 2025), "the APA was never meant to be a bureaucratic windbreak insulating agencies from political gales. It cannot comprehensively undo multifaceted agency transformations wrought by political decisions." The Court further observed "[i]t is not this Court's place to breathe life back into wide swathes of the [the Agency's] cancelled programs and then monitor the agency's day-to-day statutory compliance" which is essentially what Plaintiffs seek here. *Id.* As a result, because Plaintiffs seek wholesale judicial review the Court should dismiss Plaintiffs' APA claims for failure to identify discrete agency actions.

**B.    There are Other Adequate Alternative Remedies Available.**

There are adequate alternative remedies available to foreclose Plaintiffs' APA challenges. Review under the APA is available only where "there is no other adequate remedy in a court."

5 U.S.C. § 704.  The requirement that a plaintiff have "no other adequate remedy in court," *id.*, reflects that "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action," *Bowen*, 487 U.S. at 903.  As the D.C. Circuit has observed, "the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'"  *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (citation omitted).  Further, a remedy may be adequate even if "the arguments that can be raised [in the alternative proceeding] are not identical to those available in an APA suit."  *Elm 3DS Innovations LLC v. Lee*, Civ. A. No. 16-1036, 2016 WL 8732315, at *6 (E.D. Va. Dec. 2, 2016).  If there exists an alternative adequate judicial remedy, a plaintiff lacks a cause of action under the APA.  *See Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 621 (D.C. Cir. 2017); *see also Versata Dev. Corp. v. Rea*, 959 F. Supp. 2d 912, 927 (E.D. Va. 2013) (dismissing putative APA claim under Rule 12(b)(6) because decision at issue was not a final agency action and an alternative adequate remedy existed by way of appeal to the Federal Circuit).  As already described above in § II, this is, in essence, an employment action, and there are CSRA or FSL-MRS remedies, as well as contract claims potentially available to Plaintiffs in the Court of Federal Claims and thus, there are adequate alternatives.

## C.    Global Media's Action are Committed to Agency Discretion by Law.

The International Broadcasting Act provides no meaningful standard by which a court might adjudicate Plaintiffs' claims; satisfaction of § 6204(b) is "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  Agency action is "committed to agency discretion by law" when a "statute is drawn to that a court would have no meaningful standard against which to judge the agency's exercise of discretion," which renders "meaningful judicial review impossible." *Steenholdt v. FAA*, 314 F.3d 633, 638 (D.C. Cir. 2003) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)).  This is true "even where Congress has not affirmatively precluded review." *Heckler*,

470 U.S. at 830. Hallmarks of a decision committed to agency discretion include a statute that puts the onus on the agency, not the courts, to apply a standard, *see Webster v. Doe*, 486 U.S. 592, 600 (1988), and general criteria that make it difficult for courts to meaningfully second-guess an agency's determination, *see id.* ("advisable in the interests of the United States" is unreviewable).

Section 6204(b) is just such a law. It calls on Global Media's CEO to "respect" the "professional independence" of (among others) the broadcast networks. When read in conjunction with the broad supervisory authority that Congress bestowed on the CEO, neither statutory term in § 6204(b) is capable of judicial application. Congress required the CEO to "supervise" the networks, to "assess the professional integrity" of the networks, and to "ensure" that coverage is "balanced and comprehensive."  22 U.S.C. § 6204(a); *id.* § 6202(b).  The statutory scheme, considered as a whole, requires the CEO to determine the appropriate balance between competing factors—his supervisory demands and the networks' independence. But how to strike that balance is left to the CEO's discretion.  *Cf. United States Sugar Corp. v. EPA*, 830 F.3d 579, 640 (D.C. Cir. 2016).

### D.    Plaintiffs Can Not Challenge the Executive Order.

Lastly, although Plaintiffs attempt to cloak this action as an "administrative" challenge or a Constitutional challenge, at bottom, this appears to be an end-run challenge to the underlying Executive Order issued by the President on March 14, 2025.  Because an executive order is a presidential action, and not an agency action, any challenges to EO 14,238 under the APA are not reviewable.  *See Louisiana v. Biden*, 622 F. Supp. 3d 267, 288 (W.D. La. 2022) (cleaned up) (holding that a challenge to EO 14008 "cannot be reviewed under the APA because the President is not an agency").

**III.    Plaintiffs' Fail to State Viable Constitutional Claims.**

Plaintiffs allege that the Defendants have violated the principle of separation of powers and numerous provisions of the Constitution by allegedly placing employees on administrative leave or terminating their contracts, impeding of the Voice of America's statutory obligations, the de facto impoundment of congressionally appropriated funds meant to support the Voice of America, and the dismantling and abolishing Voice of America as an entity.  *See* Compl. ¶¶ 132–48. Plaintiffs' constitutional claims fail to state a claim for relief.

**A.    Plaintiffs' Constitutional Claims are Barred.**

As an initial matter, Plaintiffs' constitutional claims are barred at the outset because they are purely statutory.  Plaintiffs cannot succeed by simply repackaging their statutory claims as alleged constitutional violations.  Plaintiffs claim that the challenged actions run afoul of various statutory provisions, but those are statutory claims, not constitutional claims.  As the Supreme Court has made clear "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims, subject to judicial review . . ." *Dalton v. Specter*, 511 U.S. 462, 473 (1994).  This keeps with the long tradition of "distinguish[ing] between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* at 472.  The Constitution is implicated only if executive officers rely on it as "[t]he only basis of authority" or if the executive officers rely on an unconstitutional statute. *Id.* at 473, n.5.  Neither of those situations applies here nor does the allegations in Plaintiffs' Complaint suggest otherwise.

Also, as the D.C. Circuit stated Plaintiffs' "constitutional claims simply flow from allegations that the Executive Branch has failed to abide by governing congressional statutes, which does not suffice to trigger the distinctively strong presumptions favoring judicial review of constitutional claims." *Widakuswara*, 2025 WL 1288817, at *5 (citing *Dalton*, 511 U.S. at 472–74 and *Ingersoll-Rand*, 780 F.2d at 78 (Tucker Act governs challenge to contract termination, "despite

plaintiff's allegations of statutory and constitutional violations" (cleaned up))).  Thus, Plaintiffs cannot bring independent constitutional claims and therefore the Court should dismiss Counts II and III.  *See e.g., Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 51–54 (D.D.C. 2020) (dismissing constitutional claims challenging border wall construction based on *Dalton*).

### B.      Separation of Powers Claim (Count II) Fails.

Plaintiffs claim that Defendants have violated the principles of the separation of powers because Defendants have violated the Presentment Clause and the Appropriations and Spending Clauses.  *See* Compl. (ECF No. 1) ¶¶ 132–44.  Plaintiffs' separation of powers claim fails.

First, in terms of the Presentment Clause, Plaintiffs allege that the Defendants have violated the principles of the separation of powers by "placing all of VOA's employees on administrative leave, noticing the terminations of approximately forty percent of its workforce, including key journalists, and shuttering VOA's broadcasting and reporting functions, defendants have effectively repealed duly enacted legislation that requires [Global Media] to respect [Voice of America] newsroom activities and requires that VOA continue broadcasting and producing news" and "Defendants' actions also functionally dismantle VOA because, as of today, it exists in name only and cannot carry out any of its statutorily required duties to produce and broadcast the news."  Compl. (ECF No. 1) ¶¶ 142–43.  The Presentment Clause dictates that every bill passed by both the House of Representatives and the Senate must be presented to the President before it can become law.  *See* U.S. Const. art. I, § 7, cl. 2.  Plaintiff merely alleges "defendants have effectively repealed duly enacted legislation that requires [Global Media] to respect [Voice of America]."  *Id.* ¶ 142.  This is insufficient to state a Presentment Clause violation.  And the Complaint is devoid of sufficiently pled facts that Defendants modified or repealed any statute contrary to the Constitution's bicameralism and presentment requirements of Article I, § 7.  Let alone have Plaintiffs even identified any such "bill" that violates Presentment Clause.  *See generally id.*  This

case bears no resemblance to the legislative or line-item veto authorities that the Supreme Court struck down in *I.N.S. v. Chadha*, 462 U.S. 919 (1983) and *Clinton v. City of N.Y.*, 524 U.S. 417 (1998). Thus, Plaintiffs fail to state a viable Presentment Clause claim.

Next, Plaintiffs claim that Defendants have violated the Appropriations and Spending Clauses. *See* Compl. (ECF No. 1) ¶ 144. Specifically, Plaintiffs allege "Congress appropriated funds to [Voice of America] commensurate with [Voice of America] meeting these statutory obligations to broadcast and produce the news to significant audiences across the world. The likely result of defendants' actions will be the shuttering of [Voice of America], which will constitute an unlawful impoundment of VOA's congressionally appropriated funds, in violation of Congress's exclusive control over the federal purse and duly enacted appropriations legislation." *Id.* The Appropriations Clause states that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9, cl. 7. "[I]n other words, [a] payment of money from the Treasury must be authorized by a statute." *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990). But the statutory funding disputes, turn solely on "the interpretation and application of congressional statutes under which the challenged expenditures either were or were not authorized," not on a "controversy about the reach or application of" the Appropriations Clause. *Harrington v. Schlesinger*, 528 F.2d 455, 457-58 (4th Cir. 1975). And the Spending Clause provides that Congress has the power to "lay and collect Taxes, Duties, Imports, and Excises, to pay the Debts and provide for the common Defense and general Welfare of the United States." U.S. Const. art. I, § 8, cl. 1. Here, Plaintiffs have failed to plead facts that the funds appropriated are not being used as authorized by any statute. Merely reducing the size of Global Media, including the Voice of America, does not equate to a violation of the Appropriations and Spending Clauses. Accordingly, because Plaintiffs have failed to specify

how Defendants have not acted in accordance with their statutory obligations Plaintiffs' claims

fail.

*    *    *

At bottom, Plaintiffs challenge the Executive Order initiated by the President—and

implemented by his subordinates—to bring Global Media to its statutory minimum. But

Defendants' actions fit comfortably within the Executive Branch's expertise and constitutional

role and the federal court should be loath to disrupt this exercise of discretion.  Plaintiffs create

their own constitutional problem: They ask a court to superintend an agency by declaring the sum

of agency actions unconstitutional, which would itself create separation of powers concerns by

effectively authorizing a "broad programmatic attack" and the kind of "day-to-day oversight of the

executive's administrative practices" for which courts are "ill-suited."  *City of New York v. Dep't*

*of Def.*, 913 F.3d 423, 431 (4th Cir. 2019).  Indeed, judges were never meant to be czars overseeing

the day-to-day affairs of agencies.  *Ass'n for Educ. Fin. & Pol'y, Inc. v. McMahon*, Civ. A.

No. 25-0999 (TNM), 2025 WL 1568301, at *7 (D.D.C. June 3, 2025).

### C.    Take Care Clause Violation (Count III) Fails Because the Take Care Clause Cannot be Used to Obtain Affirmative Relief.

Plaintiffs attempt to circumvent the limitations of the APA by asserting what can only be

characterized as a broad programmatic attack against the President as well as the agency

Defendants under the Take Care Clause, U.S. Const. art. II, § 3.  *See* Compl. (ECF No. 1) ¶¶

145–48 (Count III).

It should be noted at the outset that the Government is not aware of any case that ever has

held that the Take Care Clause can be used as a mechanism to obtain affirmative relief. Plaintiffs

cannot prevail on their Take Care Clause claim because the Take Care Clause does not provide a

cause of action against any Defendant, and this Court, in any event, has no jurisdiction to issue

- 29 -

declaratory or injunctive relief against the President in his official capacity based on constitutional claims. *See Dalton*, 511 U.S. at 473. Moreover, even if the Clause could furnish a basis for affirmative relief, Plaintiffs seek to rely on violations of purported duties that are not found in the statutes regarding operation of Global Media itself, but rather, are based on Plaintiffs' subjective views about how best to implement and administer Voice of America.

Through the Take Care Clause, the Constitution vests broad, discretionary authority to "take Care that the Laws be faithfully executed" by the President. U.S. Const. art. II, § 3. Inevitably, the Laws that the President executes are those enacted by Congress. But no court has read the Take Care Clause as opening the door to any plaintiff seeking to challenge the way the President executes Congress's laws. Rather, as the Supreme Court has recognized, the duty of the President when exercising his power to see that the laws are faithfully executed is "purely executive and political," and not subject to judicial direction. *Mississippi v. Johnson*, 71 U.S. (4 Wall) 475, 499 (1866); *see Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) ("[T]he President is invested with certain important political powers, in the exercise of which he is to use his own discretion, and is accountable only to his country in his political character."). To hold otherwise would upset our constitutional scheme of separation of powers and allow judicial superintendence over the exercise of Executive power that the Clause commits to the President alone. *Baker v. Carr*, 369 U.S. 186, 217 (1962) (courts lack jurisdiction over a claim where there is "a textually demonstrable constitutional commitment of the issue to a coordinate political department."); *see also Dalton*, 511 U.S. at 474–75 (judicial review of discretionary Presidential decisions "is not available"); *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 577 (1992) (holding that it would be improper for the courts to take over the President's duty to "take Care that the Laws be faithfully executed" (quoting U.S. Const. art. II, § 3)); *Marbury*, 5 U.S. (1 Cranch) at 170 ("The province of the court

is, solely, to decide on the rights of individuals, not to enquire how the executive, or executive officers, perform duties in which they have a discretion.  Questions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court."); *Chi. & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 114 (1948) (refusing to review President's decision that "embod[ied] Presidential discretion as to political matters beyond the competence of the courts to adjudicate"); *Mississippi*, 71 U.S. at 499.

Nor does the Take Care Clause provide a basis to review the actions of subordinate Executive Branch officials.  The Clause speaks only to the President, not to his subordinates, and ensures that the President is principally responsible for the actions of the Executive Branch and directly accountable to the people through the political process.  *See Free Enter. Fund v. Pub. Co. Acct. Bd.*, 561 U.S. 477, 492–93 (2010) ("It is [the President's] responsibility to take care that the laws be faithfully executed."); *id.* at 495–97; *see also Printz v. United States*, 521 U.S. 898, 922 (1997); *Morrison v. Olson*, 487 U.S. 654, 689–90 (1988); *Clinton v. Jones*, 520 U.S. 681, 712–13 (1997) (Breyer, J., concurring).  A subordinate Executive officer cannot violate the President's duty to faithfully execute the laws.  To the extent Plaintiffs seek to challenge the other Federal Defendants' alleged attempts to undermine the statutes involving Global Media, they cannot do so through the Take Care Clause, but must do so, if at all, through the APA, which in this case presents separate insurmountable obstacles for Plaintiffs as shown above.

## IV.    Plaintiffs Fail to Sufficiently Plead an *Ultra Vires* Claim (Count IV).

Plaintiffs fails to state an *ultra vires* claim. The leading Supreme Court decision on *ultra vires* review is *Leedom v. Kyne*, 358 U.S. 184 (1958). That case arose from an improper certification of a collective-bargaining unit—an interlocutory order excluded from the judicial-review provision of the National Labor Relations Act.  *See id.* at 185, 187.  Nonetheless, the Supreme Court held that district-court review was available because the order was "made in excess

of [the agency's] delegated powers and contrary to a specific prohibition" in the National Labor Relations Act. *Id.* at 188–89. Time and again, courts have stressed that *ultra vires* review has "extremely limited scope." *Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988); *see Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991) (*Kyne* does not "authoriz[e] judicial review of any agency action that is alleged to have exceeded the agency's statutory authority"); *Boire v. Greyhound Corp.*, 376 U.S. 473, 479–80 (1964) (*Kyne* was "characterized by extraordinary circumstances"). And the *Kyne* exception does not apply simply because an agency has arguably reached "a conclusion which does not comport with the law." *Nuclear Regul. Comm'n v. Texas*, 145 S. Ct. 1762, 1776 (2025) (citation omitted). Rather, "it applies only when an agency has taken action entirely in excess of its delegated powers and contrary to a *specific prohibition* in a statute" *Id.* (emphasis in original). The D.C. Circuit has described a *Kyne* exception as "essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009).

To sufficiently allege an *ultra vires* claim, the plaintiff must aver: "(i) the statutory preclusion of review is implied rather than express; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019) (cleaned up). The third requirement is especially demanding. *FedEx v. Dep't of Comm.*, 39 F.4th 756, 764 (D.C. Cir. 2022) ("Only error that is patently a misconstruction of the" pertinent statute, "that disregards a specific and unambiguous statutory directive, or that violates some specific command of a statute will support relief." (cleaned up)). In other words, an agency violates a "clear and mandatory" statutory command

only when the error is "so extreme that one may view it as jurisdictional or nearly so." *Griffith*, 842 F.2d at 493.  Plaintiffs fails to meet that demanding standard.

To begin, there is no dispute that Plaintiffs have possible remedies via the CSRA or for their contract claims in the Court of Federal Claims.    Therefore, *ultra vires* review is inappropriate—no federal statute has precluded all judicial review of the agency's conduct. *See e.g., FedEx*, 39 F.4th at 764.   Thus, Plaintiffs have "an alternative review" for their claims, rendering them unable to prevail on either the first or second prongs of the *ultra vires* test.  *Id.*; *Nuclear Regul. Comm'n*, 145 S. Ct. at 1776.  Although the availability of a statutory remedy is alone sufficient to defeat Count IV on the first two prongs of the *ultra vires* test, Plaintiffs' claim also fails on the third prong, because Defendants have not violated any "clear and mandatory" statutory command.

Accordingly, Plaintiffs' *ultra vires* claim fails.  *See, e.g., Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 366–67 (D.D.C. 2020) (declining to grant relief with respect to the Voice of America's director's *ultra vires* claim because "the CSRA plainly precludes judicial review of statutory claims by covered employees related to their employment, whether (or not) the allegations amount to a 'personnel action,' or 'prohibited personnel practice' explicitly enumerated in the CSRA or whether the CSRA provides a remedy for such claims").

## V.    Defendants Should Be Relieved of Their Obligation to Comply with Local Civil Rule 7(n)(1).

Defendants respectfully request that the Court relieve them of any obligation to comply with Local Civil Rule 7(n)(1).  Namely, the Court should excuse Defendants from filing a certified list of the contents of an administrative record and serving an administrative record simultaneously with this dispositive motion. An administrative record is not necessary to resolve Defendants' motion, which argues, amongst other things, that this Court lacks jurisdiction and judicial review

is not available in this case—which are threshold legal issues that do not require review of the administrative record.

First, this Court should determine whether it has jurisdiction over this case before requiring Defendants to compile and certify the administrative record. The Court must determine that it has jurisdiction before proceeding to the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause.") (citation omitted); *see also Talal Al-Zahrani v. Rodriguez*, 669 F.3d 315, 318 (D.C. Cir. 2012) ("Because a federal court without jurisdiction cannot perform a law-declaring function in a controversy, 'the Supreme Court [has] held "that Article III jurisdiction is always an antecedent question" to be answered prior to any merits inquiry.'") (quoting *Pub. Citizen v. U.S. Dist. Court for the Dist. of Columbia*, 486 F.3d 1342, 1346 (D.C. Cir. 2007)); *Ass'n of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 674 (D.C. Cir. 2013) ("this Circuit treats prudential standing as a jurisdictional issue which cannot be waived or conceded" (citations and quotations omitted)). Thus, the Court must first determine whether it has jurisdiction given that Defendants have argued in the first instance that no judicial review is available here.

Moreover, even if this Court has jurisdiction and judicial review were available, the production of an administrative record at this stage is unnecessary—Defendants seek dismissal not based on an administrative record, but instead based on the facts alleged in the Complaint and the arguments described above. *See Diakanua v. Rubio*, Civ. A. No. 24-1027 (TJK), 2025 WL 958271, at *11 n.10 (D.D.C. Mar. 31, 2025) ("[T]he Court will 'follow the general practice' and deny that motion because 'the administrative record is not necessary for the Court's decision.'" (citation modified; quoting *Arab v. Blinken*, 600 F. Supp. 3d 59, 65 n.2 (D.D.C. 2022))). In all events, Defendants respectfully request that the Court relieve them of any purported obligation to

comply with this rule. *See, e.g.*, *id.*; *Sharifymoghaddam v. Blinken*, Civ. A. No. 23-1472 (RCL), 2023 WL 8047007, at *3 (D.D.C. Nov. 17, 2023) ("In any case, courts in this District routinely allow agencies to waive compliance with Rule 7(n)(1) if 'the administrative record is not necessary for the court's decision.'" (quoting *Eljalabi v. Blinken*, Civ. A. No. 21-1730 (RC), 2022 WL 2752613, at *3 n.3 (D.D.C. July 14, 2022))).

Indeed, courts in this district routinely grant the government's requests to defer the filing of a certified list of the contents of the administrative record when it is unnecessary in deciding a dispositive motion. *See, e.g.*, *Connecticut v. U.S. Dep't of Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018) (Court granted Federal Defendants' motion to waive compliance with Local Civil Rule 7(n) because the Court did not need to consider the administrative record in evaluating the motions before it); *Mdewakanton Sioux Indians of Minn. v. Zinke*, 264 F. Supp. 3d 116, 123 n.12 (D.D.C. 2017) (same); *Carroll v. Office of Fed. Contract Compliance Programs, U.S. Dep't of Labor*, 235 F. Supp. 3d 79, 81 n.1 (D.D.C. 2017); *PETA v. U.S. Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 94 n.2 (D.D.C. 2014) (waiving compliance with Local Civil Rule 7(n) and dismissing complaint).

As a result, waiving the requirement to file a certified list of the administrative record and serve the administrative record at this juncture would promote judicial economy and conserve resources.

\*    \*    \*

**CONCLUSION**

For these reasons, the Court should dismiss Plaintiffs' Complaint and relieve Defendants of their obligation to file a certified list of the administrative record and serve the administrative record simultaneously with their Motion to Dismiss.

Dated: July 18, 2025                    Respectfully submitted,

                                        JEANINE FERRIS PIRRO
                                        United States Attorney

                                        By: _____/s/ Stephanie R. Johnson_____
                                        STEPHANIE R. JOHNSON,
                                            D.C. Bar # 1632338
                                        BRENDA GONZÁLEZ HOROWITZ
                                            D.C. Bar # 017243
                                        Assistant United States Attorneys
                                        Civil Division
                                        601 D Street, NW
                                        Washington, DC 20530
                                        Main: (202) 252-2500

                                        *Attorneys for the United States of America*