## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL ABRAMOWITZ, *et al.*,

       *Plaintiffs,*

      –v.–

KARI LAKE, in her official capacity as
Senior Adviser at the United States
Agency for Global Media;

VICTOR MORALES, in his official
capacity as Acting CEO of the United
States Agency for Global Media;

      and

UNITED STATES AGENCY FOR
GLOBAL MEDIA,

      *Defendants.*

**Civil Action No. 1:25-cv-00887-RCL**

## <u>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

Under 22 U.S.C. § 6205(e)(1), the head of Voice of America may only be removed "if such

action has been approved by a majority vote of the [International Broadcasting] Advisory Board."

Defendants have notified Plaintiff Michael Abramowitz that they have decided to remove him

from his position as head of Voice of America without seeking a vote of approval by the Advisory

Board.

There are no facts in dispute. Plaintiff Abramowitz thus moves for partial summary

judgment, under Federal Rule of Civil Procedure 56(a), on one aspect of two counts in his

complaint: That he is entitled to relief from Defendants' unlawful attempt to remove him from his

position as director of Voice of America under either Count I (Violation of the Administrative

Procedure Act) or Count IV (*Ultra Vires*).  Plaintiff asks for permanent injunctive relief barring

Defendants from removing him from his position without complying with the requirements of 22

U.S.C. § 6205(e)(1) or (e)(2).

   In support of this motion, Plaintiff is submitting a Memorandum of Law, the Declaration

of Michael Abramowitz, a Statement of Undisputed Material Facts, and a proposed order.


Dated: July 23, 2025                    Respectfully submitted,

                                        */s/* William B. Schultz
                                        William B. Schultz (D.C. Bar No. 218990)
                                        Margaret M. Dotzel (D.C. Bar No. 425431)
                                        Brian J. Beaton, Jr. (D.C. Bar No. 90020963)
                                        Jacobus P. van der Ven (D.C. Bar No. 1644774)
                                        ZUCKERMAN SPAEDER LLP
                                        2100 L Street NW, Suite 400
                                        Washington, DC 20037
                                        Tel: (202) 778-1800
                                        Fax: (202) 822-8136
                                        wschultz@zuckerman.com
                                        mdotzel@zuckerman.com
                                        bbeaton@zuckerman.com
                                        cvanderven@zuckerman.com

                                        *Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL ABRAMOWITZ, *et al.*,<br><br>     *Plaintiffs*,<br><br>     –v.–<br><br>KARI LAKE, in her official capacity as Senior Adviser at the United States Agency for Global Media;<br><br>VICTOR MORALES, in his official capacity as Acting CEO of the United States Agency for Global Media;<br><br>     and<br><br>UNITED STATES AGENCY FOR GLOBAL MEDIA,<br><br>     *Defendants*. | **Civil Action No. 1:25-cv-00887-RCL** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION .......................................................................................................... 1

BACKGROUND ............................................................................................................ 2

ARGUMENT ................................................................................................................ 5

I.    BECAUSE DEFENDANTS CANNOT LAWFULLY REMOVE DIRECTOR
      ABRAMOWITZ FROM HIS POSITION, HE IS ENTITLED TO PARTIAL
      SUMMARY JUDGMENT........................................................................................ 6

      A.    The Removal of Director Abramowitz Without the Approval of the Advisory
            Board is Ultra Vires Action by a Federal Official and an Unlawful Agency
            Action Under the APA ............................................................................... 6

      B.    Defendants Have No Defense for Their Defiance of the Law ....................... 8

II.   DIRECTOR ABRAMOWITZ IS ENTITLED TO INJUNCTIVE RELIEF ....................... 12

CONCLUSION............................................................................................................. 14

i

**TABLE OF AUTHORITIES**

**CASES**

*Alabama Ass'n of Realtors v. United States Dep't of Health & Hum. Servs.*,
   557 F. Supp. 3d 1 (D.D.C. 2021) ........................................................ 10

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
   929 F.3d 748 (D.C. Cir. 2019) .................................................... 9, 10

*Am. Meat Inst. v. U.S. Dep't of Agric.*,
   968 F. Supp. 2d 38 (D.D.C. 2013), *judgment reinstated*, 760 F.3d 18 (D.C. Cir. 2014) ......... 14

*Armstrong v. Exceptional Child Ctr., Inc.*,
   575 U.S. 320 (2015).......................................................................... 6

*Aviel v. Gor*,
   No. 25-5105, 2025 WL 1600446 (D.C. Cir. June 5, 2025) ................... 11

*Bennett v. Spear*,
   520 U.S. 154 (1997)........................................................................... 8

*Boyle v. Trump*,
   No. CV MJM-25-1628, 2025 WL 1677099 (D. Md. June 13, 2025) ..................... 11

*Fed. Express Corp. v. United States Dep't of Com.*,
   39 F.4th 756 (D.C. Cir. 2022)............................................................. 7

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
   561 U.S. 477 (2010).......................................................................... 12

*Grundmann v. Trump*,
   No. CV 25-425 (SLS), 2025 WL 1671173 (D.D.C. June 13, 2025) ................. 11

*Jarkesy v. S.E.C.*,
   803 F.3d 9 (D.C. Cir. 2015)................................................................ 9

*League of Women Voters of the U.S. v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016)............................................................... 13

*LeBlanc v. United States Priv. & C.L. Oversight Bd.*,
   No. CV 25-542 (RBW), 2025 WL 1454010 (D.D.C. May 21, 2025) ................. 11

*Leedom v. Kyne*,
   358 U.S. 184 (1958)........................................................................... 7

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010).......................................................................... 12

*Morrison v. Olson*,
    487 U.S. 654 (1988) ................................................................................................ 12

*Nat'l Ass'n of Immigr. Judges v. Owen*,
    139 F.4th 293 (4th Cir. 2025) ................................................................................... 9

*Nat'l Ass'n of Postal Supervisors v. United States Postal Serv.*,
    26 F.4th 960 (D.C. Cir. 2022) ................................................................................... 7

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................................................ 14

*Nuclear Regul. Comm'n v. Texas*,
    145 S. Ct. 1762 (2025) ........................................................................................ 6-7

*Oestereich v. Selective Serv. Sys. Loc. Board No. 11*,
    393 U.S. 233 (1968) .................................................................................................. 7

*Ramirez v. U.S. Immigration & Customs Enf't*,
    310 F. Supp. 3d 7 (D.D.C. 2018) ............................................................................. 14

*Seila L. LLC v. Consumer Fin. Prot. Bureau*,
    591 U.S. 197 (2020) ................................................................................................ 11

*Sherley v. Sebelius*,
    689 F.3d 776 (D.C. Cir. 2012) ................................................................................. 10

*Slaughter v. Trump*,
    No. CV 25-909 (LLA), 2025 WL 1984396 (D.D.C. July 17, 2025) ........................ 11

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994) ............................................................................................ 9, 10

*Trump v. Wilcox*,
    145 S. Ct. 1415 (2025) ............................................................................................ 11

*United States v. Arthrex, Inc.*,
    594 U.S. 1 (2021) .................................................................................................... 11

*United States v. Perkins*,
    116 U.S. 483 (1886) ................................................................................................ 12

*United States Inst. of Peace v. Jackson*,
    No. 25-CV-804 (BAH), 2025 WL 1428641 (D.D.C. May 19, 2025) ...................... 11

*Widakuswara v. Lake*,
    No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) ..................................... 10

iii

**STATUTES**

5 U.S.C. § 704 ............................................................................................................. 8

5 U.S.C. § 706 ............................................................................................................. 8

22 U.S.C. § 6202 .................................................................................................... 2, 12

22 U.S.C. § 6203 ........................................................................................................ 12

22 U.S.C. § 6205 ..................................................................................... 1, 3, 6, 12, 14

## OTHER AUTHORITIES

Letter from Sens. Rubio, Graham, Moran, Collins, Durbin, Leahy, and Van Hollen to
    Michael (July 1, 2020) ........................................................................................... 1

Letter from Victor Morales to Michael Abramowitz (July 8, 2025) ............................. 2

United States Information and Educational Exchange Act of 1948,
    Pub. L. 94-350, 90 Stat. 823, tit. II, § 503 (1976) .................................................. 2

## RULES

Fed. R. Civ. P. 56(a) ..................................................................................................... 5

## INTRODUCTION

Voice of America (VOA) serves on the front lines in the fight against disinformation. Its power lies in its impartial, independent journalism, free of political influence. After Defendants abruptly shut it down, Michael Abramowitz, VOA's director, sued to restore VOA's statutorily defined role. This Court entered an injunction, which remains operative today, requiring Defendants to "restore VOA programming" consistent with VOA's "statutory mandate." Now, in the middle of this litigation, Defendants are poised to take an extraordinary action. They have informed Director Abramowitz that they have decided to unilaterally remove him from his post, without cause or even an explanation. He can only guess at the reason.

This may seem familiar. In 2020, a new CEO of the U.S. Agency for Global Media came into power and indiscriminately fired the agency's network heads. Congress was not happy. It worried that this political interference could impede the networks' "ability to implement their statutory missions"[1] to deliver impartial and independent journalism. So Congress stepped up and, by an overwhelmingly bipartisan vote, it curtailed the authority of the USAGM CEO. Now, the head of Voice of America "may only be . . . removed if such action has been approved by a majority vote of the Advisory Board," an expert, multi-member, and bipartisan body. 22 U.S.C. § 6205(e)(1). The CEO of USAGM may not take this action unilaterally.

So, in removing Director Abramowitz, what has the new Acting CEO done to respect the role of a co-equal branch and, consistent with Congress's recent amendment, to seek the approval of the Advisory Board? Nothing. He has simply ignored it. By unilaterally removing Director

---

[1] Letter from Sens. Rubio, Graham, Moran, Collins, Durbin, Leahy, and Van Hollen to Michael Pack (July 1, 2020), at 1 (available at https://fm.cnbc.com/applications/cnbc.com/resources/editorialfiles/2020/07/01/July1_LTR_to_Michael_Pack.pdf).

Abramowitz from his post, he and the other Defendants are poised to take the very action Congress expressly prohibited.  Their hope, it seems, is that they can get away with it.

They should not.  This Executive Branch's disrespect for the law and a co-equal branch of government cannot stand.

There are no facts in dispute.  Defendants cannot contest that they decided to remove Director Abramowitz.  Their decision is memorialized in a letter sent to Director Abramowitz and attached to his declaration.  *See* Exhibit 1, Declaration of Michael Abramowitz (7-23 Abramowitz Decl.) ¶ 13 & Attach. A (Letter from Victor Morales to Michael Abramowitz (July 8, 2025)).  They cannot contest that they failed to seek the approval of the Advisory Board.  Because all its members were fired soon after the new presidential administration came into power, it sits vacant.

Defendants simply decided to defy the law.  Their actions thus fall outside their statutory authority and the clear and mandatory directives of Congress.  On this undisputed record, we ask that the Court grant partial summary judgment and order that, unless Defendants agree to follow the law, Director Abramowitz must be allowed to continue serving in his statutorily protected role.  And we respectfully ask that the Court act expeditiously, since Defendants have made Director Abramowitz's firing imminent.

## **BACKGROUND**

The cornerstone of VOA is its impartiality.  Under its charter, VOA must be "accurate, objective, and comprehensive."  United States Information and Educational Exchange Act of 1948, Pub. L. 94-350, 90 Stat. 823, 831, tit. II, § 503 (1976).  It must represent all voices in America, not just those in power.  Because it "represent[s] America, not any single segment of American society," it is required to "present a balanced and comprehensive projection of significant American thought and institutions."  *Id.*  As Congress mandated, it must "reflect[] the diversity of United States culture and society."  22 U.S.C. § 6202(b)(2).

To protect this impartiality, and its mandate to represent all "segment[s] of American Society," Congress made sure that its management had some insulation from political interference of the party in power. It established an Advisory Board for VOA's parent agency. This Board is balanced. Of its six appointed members, only three can be of the same political party. 22 U.S.C. § 6205(b)(3). It is expert. Its members must be "distinguished in the fields of public diplomacy, mass communications, print, broadcast or digital media, or foreign affairs." *Id.* § 6205(c)(2). And, critically, it has an oversight role. The political head of USAGM cannot "appoint[] or remove[]" the "head[] of Voice of America" without a "majority vote of the Advisory Board." *Id.* § 6205(e)(1).

This was not always the case. In the June 2020 "Wednesday Night Massacre," Michael Pack, a newly appointed CEO of USAGM, fired the heads of several networks, and replaced them with loyalists. That is not what Congress envisioned. A bipartisan letter signed by seven Senators, including then-Senator Marco Rubio, explained that the networks' foundation was their "independence," a necessary trait to create "credible journalism" that could "act as a bulwark against disinformation." *Supra* at 1 n.1. The CEO's interference threatened the networks to their core: their very "ability to implement their statutory missions" was in jeopardy. *Id.* And so Congress firmed up that statutory mission, by limiting the damage shifting political winds could do in the future. It was against this backdrop that Congress, by a vote of 81 to 13 in the Senate and 322 to 87 in the House, required that a multi-member, bipartisan, and expert Advisory Board approve appointments and removals of network heads.

In April 2024, the Advisory Board did just that. It unanimously approved the appointment of Michael Abramowitz to serve as the director of VOA. 7-23 Abramowitz Decl. ¶¶ 1-2. Director Abramowitz has a long career in journalism. He has been the president of Freedom House, the

director of the United States Holocaust Memorial Museum's Levine Institute for Holocaust Education, and a national editor and White House correspondent at *The Washington Post*. ECF 4-5, March 26, 2025 Declaration of Michael Abramowitz (3-26 Abramowitz Decl.) ¶ 4.

But then things changed when the new presidential administration took over. In March 2025, USAGM's political leadership took steps to dismantle VOA. It placed its employees on administrative leave, shut down its stations, and cancelled its contractors. *Id.* ¶¶ 23-26. For the first time in history, VOA went dark. *Id.* ¶ 33.

Director Abramowitz, in his official capacity, sued to restore both those functions and "his statutory right to continue directing VOA." Compl. ¶ 131. The Court granted a preliminary injunction. Although a panel of the D.C. Circuit stayed parts of that injunction, it left in place a key provision on which Defendants did not seek a stay and which they have not appealed: A requirement that Defendants "restore VOA programming such that USAGM fulfills its statutory mandate that VOA 'serve as a consistently reliable and authoritative source of news,' 22 U.S.C. § 6202(c)." ECF 29, Order at 3 (April 22, 2025). Briefing is underway on Defendants' appeal of the remaining portions of this Court's preliminary injunction.

In the middle of this litigation, the Acting CEO of USAGM informed Director Abramowitz that he would be removed from his post. Late on July 7, 2025, a Human Resources representative emailed Director Abramowitz to ask that he be available for a call the next morning "regarding future plans for USAGM." 7-23 Abramowitz Decl. ¶ 7. When Director Abramowitz joined the call at 10:00 a.m. the next day, he was told that he was being reassigned to another role at a transmitting station in Greenville, North Carolina. *Id.* ¶ 10. He was not told why—only that he would receive more information later in the day. *Id.* ¶¶ 10-11.

That afternoon, Director Abramowitz received a letter from the Acting CEO of USAGM, Victor Morales. *Id.* ¶ 13. The letter informed Director Abramowitz that, effective September 6, 2025, he would be removed from his "current position of Director, Voice of America" and reassigned to a different role as Chief Management Officer in Greenville, North Carolina. *Id.* Attach. A. The letter said that Director Abramowitz had until July 29, 2025 to "accept this reassignment" or decline it and be "subject to removal under adverse action procedures pursuant to 5 U.S.C. § 7543." *Id.* ¶¶ 14, 17

The same day he received the letter, Director Abramowitz, through counsel, reached out to the VOA Acting General Counsel to receive an explanation for his removal. *Id.* ¶ 22. He received no response. After emailing again, he was told to contact attorneys from the Department Justice. *Id.* ¶ 23. Counsel called one of the attorneys. *Id.* ¶ 25. After more emails, and a formal letter, DOJ counsel have acknowledged receipt, but have yet to offer a substantive response. *Id.* ¶¶ 26-29.

Absent from the letter and the call was one thing: Any mention of the Advisory Board. It had not voted. Its members had been fired. *Id.* ¶¶ 19-20; 3-26 Abramowitz Decl. ¶ 21. It sits vacant. It had played no role in Director Abramowitz's removal decision. 7-23 Abramowitz Decl. ¶ 20.

## ARGUMENT

Congress required that Defendants seek the approval of the Advisory Board before removing Director Abramowitz. They did not. Given the clarity of Defendants' legal defiance, "there is no genuine dispute as to any material fact" and Director Abramowitz is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

I.    **Because Defendants Cannot Lawfully Remove Director Abramowitz From His Position, He is Entitled to Partial Summary Judgment**

While Defendants are sure to dispute Director Abramowitz' entitlement to relief, one thing will be lacking from their response:  Any demonstration or even a suggestion that USAGM, Acting CEO Victor Morales, or Senior Advisor Kari Lake followed the statutory scheme Congress established.  Defendants' action is *ultra vires* and violates the Administrative Procedure Act. They are disobeying the law and have no defense or explanation.

A.    **The Removal of Director Abramowitz Without the Approval of the Advisory Board is Ultra Vires Action by a Federal Official and an Unlawful Agency Action Under the APA**

Defendants gave Director Abramowitz an ultimatum:  Accede to being removed and reassigned to a different role hundreds of miles away, or face being "subject to removal under adverse action procedures."  7-23 Abramowitz Decl. Attach. A.  No matter which fork he takes, the result is the same:  He is removed from his position.  On this count, Defendants' minds are made up.  But removing Director Abramowitz unilaterally is not something they can decide to do. Congress's directive is unequivocal: "The head[] of Voice of America . . . may only be . . . removed if such action has been approved by a majority vote of the Advisory Board."  22 U.S.C. § 6205(e)(1).  There is no ambiguity and no qualification in its command.  And Defendants have violated it.  They have not sought the Advisory Board's approval—its members were fired in January—and have no statutory authority to remove Director Abramowitz.  These facts are not in dispute.

This blatant disregard for a statute has consequences.  This Court may enjoin "violations of federal law by federal officials."  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326– 27 (2015).  That is because courts have "recognized a right to equitable relief where an agency's action was *ultra vires*—that is, 'unauthorized by any law.'"  *Nuclear Regul. Comm'n v. Texas*, 145

S. Ct. 1762, 1775 (2025). In the Supreme Court's "leading case on post-APA *ultra vires* actions, *id.*", it held that relief was available when the agency sought to "exercise . . . power that had been specifically withheld" and violated a "specific prohibition" of the statute, *Leedom v. Kyne*, 358 U.S. 184, 188–89 (1958). "In other words, *ultra vires* claimants must demonstrate that the agency has plainly and openly crossed a congressionally drawn line in the sand." *Fed. Express Corp. v. United States Dep't of Com.*, 39 F.4th 756, 765 (D.C. Cir. 2022). Agencies cannot get away with a blatant violation of a "clear and mandatory" statute. *Nat'l Ass'n of Postal Supervisors v. United States Postal Serv.*, 26 F.4th 960, 971 (D.C. Cir. 2022).

That is exactly what Defendants are planning to do here. Defendants cannot contest the core facts or the law. Congress "specifically withheld" from the USAGM CEO the power to unilaterally fire Voice of America's director. *Kyne*, 358 U.S. at 189. And rather than respect this "congressionally drawn line in the sand," Defendants openly crossed it. *Fed. Express Corp.*, 39 F.4th at 765. They are unilaterally removing the head of Voice of America without any approval of the Advisory Board—the exact action Congress prohibited.

There is no excuse. The law is not ambiguous. This is not a reasonable disagreement about the meaning "vague statutory provisions." *Nat'l Ass'n of Postal Supervisors*, 26 F.4th at 971. This is "blatant[] lawless[ness]." *Oestereich v. Selective Serv. Sys. Loc. Board No. 11*, 393 U.S. 233, 238 (1968).

The Court should therefore grant partial summary judgment on Count IV of the Complaint (*Ultra Vires*) as it pertains to Director Abramowitz's removal from his post. *See* Compl. ¶ 131 (stating that "Plaintiff Michael Abramowitz" is being deprived "of his statutory right to continue directing VOA").

In the alternative, the Court should grant Director Abramowitz's relief under the Administrative Procedure Act. Under that authority, a reviewing court shall "hold unlawful and set aside agency action" that is "not in accordance with law," "in excess of statutory . . . authority," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C), (D). That is the case here. Congress curtailed the statutory authority of the USAGM CEO. The Acting CEO, by exercising the power Congress withheld, is acting beyond his statutory authority. And he is refusing to follow the procedures required by law to remove Director Abramowitz from his position as VOA director.

While it is not clear exactly when Director Abramowitz will be taken off the payroll, that is of no moment. Under the APA, an action is final when "[i]t marks the consummation of the agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 156 (1997). No matter what happens, Defendants have stated with finality that they have made up their mind that Director Abramowitz will not stay in his position. Their decision to remove him as Director is final. 5 U.S.C. § 704.

For this reason, if it does not enjoin Defendants' action as *ultra vires*, the Court should grant partial summary judgment as to Count I (Violation of the Administrative Procedure Act) and enjoin Director Abramowitz's removal under that provision.

## B.    Defendants Have No Defense for Their Defiance of the Law

Because Defendants cannot show that they followed Congress's statutory command, they will likely resort to arguing that this Court may not decide the issue or that they did not need to follow this law. But the Court should not accept those arguments.

1.    Defendants may suggest that this Court does not have jurisdiction, arguing that Director Abramowitz's claim is subject to the exclusive procedures of the Civil Service Reform Act. This argument should be rejected. As the D.C. Circuit has made clear, determining whether

Congress limited courts' jurisdiction requires following the analytical structure set out in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). *See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 754 (D.C. Cir. 2019) ("AFGE"). The core question in that analysis is straightforward: Whether Congress has made its intention clear "that a litigant proceed exclusively through a statutory scheme" that precludes district court jurisdiction. *Id.* (quoting, in turn, *Thunder Basin*, 510 U.S. at 207). Congress has done no such thing here—it has done exactly the opposite. Handicapping the head of VOA, and the heads of other networks, in their ability to vindicate their statutory right would undo the very purpose of its amendment.

The specific factors courts consider under *Thunder Basin* to determine whether a claim is "of the type" Congress intended to be "reviewed within" an exclusive statutory scheme confirm that conclusion. *Id.* at 212–13. These factors are "guideposts for a holistic analysis" about congressional intent. *Jarkesy v. S.E.C.*, 803 F.3d 9, 22 (D.C. Cir. 2015).

First, channeling would "foreclose all meaningful judicial review." *AFGE,* 929 F.3d at 755. All three CSRA-administrating agencies currently lack a quorum; their members, too, have been fired. A lack of a quorum can "raise serious questions" about congressional intent to channel. *Nat'l Ass'n of Immigr. Judges v. Owen*, 139 F.4th 293, 305 (4th Cir. 2025). For good reason. If Director Abramowitz's claim had to run through the CSRA's provisions, there would likely be no action on any complaint for a long time, possibly years, and it would be an even longer time before the action would reach an Article III court. In the meantime, Defendants would be allowed to blatantly disregard statutory commands. This cannot be what Congress had in mind when it established the Advisory Board's removal power.

Second, Director Abramowitz's claim is "wholly collateral" to the CSRA's statutory scheme. *AFGE,* 929 F.3d at 759. This factor is "'related' to" the first one, the two "considerations

are sometimes analyzed together," and should fall the same way here for the reasons mentioned already. *Id.* at 759 (citation omitted). In addition, Director Abramowitz's claim for relief has little to do with the civil service laws Congress gave to millions of civil service employees, which serve as the core statutory basis for CSRA review. It is based on a protection Congress gave just a handful of people: To keep their position absent a vote of the Advisory Board. There is no indication that Congress intended to then limit the right by channeling through an administrative review scheme.

Third, there is nothing on which the MSPB (or any other CSRA agency) could bring its "expertise" to bear. *Id.* (quoting *Thunder Basin Coal Co.*, 510 U.S. at 212–13). The agency simply did not follow the statute. Case closed.

2.     Perhaps along similar lines, Defendants may lean on the decision reached by a panel of the D.C. Circuit in an emergency stay posture. That panel concluded that certain "employment disputes with the federal government" are channeled through the CSRA. *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *2 (D.C. Cir. May 3, 2025) (subsequent history omitted).

That decision is wrong, for the reasons this Court articulated in its prior opinion. It is also not binding. "When an appellate court 'predicts' who '*likely* will or will not succeed on the merits,' it does not 'affirmatively decide[ ]' the merits, and so creates no law of the case regarding them." *Alabama Ass'n of Realtors v. United States Dep't of Health & Hum. Servs.*, 557 F. Supp. 3d 1, 8 (D.D.C. 2021) (quoting *Sherley v. Sebelius*, 689 F.3d 776, 782 (D.C. Cir. 2012)).

And even if this Court were persuaded to follow that decision, it would not apply to this separate challenge. The *Thunder Basin* analysis focuses on the "type" of claim. 510 U.S. at 212. The claim here, which is predicated on the violation of a specific mandate Congress extended to

the heads of USAGM's networks, is of fundamentally different "type" than the ones the D.C. Circuit panel previously considered.

3.      Alternatively, Defendants may make a play here that they seem to be making across the federal government.  They may continue to argue that nearly all removal restrictions are unconstitutional, and power should be consolidated in one person—the President.[2]  But that argument should not work here.  The law is clear.  And while the Supreme Court has issued a stay order pertaining to a separate removal protection for multi-member expert agencies, *see Trump v. Wilcox*, 145 S. Ct. 1415 (2025), the Supreme Court has not decided the issue, and more important it and the D.C. Circuit have done nothing to call into question existing law on removal protections for inferior officers, which is the issue here.  *See Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020) (noting "two exceptions" to unrestricted removal power, one for "expert agencies" and another for "*inferior* officers"); *see also Aviel v. Gor*, No. 25-5105, 2025 WL 1600446, at *1 (D.C. Cir. June 5, 2025) (denying motion for emergency stay of an injunction that relied on inferior officer removal protections).

The head of VOA is an inferior officer.  Director Abramowitz "'has a superior' other than the President" and is "directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate."  *United States v. Arthrex, Inc.*, 594 U.S. 1, 13 (2021) (citation omitted).  The VOA director is supervised by the CEO of USAGM, who sits above networks' heads in the organizational hierarchy and is directly answerable to the

---

[2] *See, e.g.*, *Slaughter v. Trump*, No. CV 25-909 (LLA), 2025 WL 1984396 (D.D.C. July 17, 2025); *Boyle v. Trump*, No. CV MJM-25-1628, 2025 WL 1677099 (D. Md. June 13, 2025); *LeBlanc v. United States Priv. & C.L. Oversight Bd.*, No. CV 25-542 (RBW), 2025 WL 1454010 (D.D.C. May 21, 2025); *United States Inst. of Peace v. Jackson*, No. 25-CV-804 (BAH), 2025 WL 1428641 (D.D.C. May 19, 2025); *Grundmann v. Trump*, No. CV 25-425 (SLS), 2025 WL 1671173 (D.D.C. June 13, 2025).

President.  And the VOA director's removal is the joint responsibility of the CEO of USAGM and the Advisory Board.  Both the CEO and members of the Advisory Board are presidentially appointed and, by a majority vote may remove the director.   22 U.S.C. § 6203(b)(1); *id.* § 6205(b)(1), (e)(1).  That is exactly the type of scheme the Supreme Court has repeatedly blessed: "restrictions on the power of principal executive officers—themselves responsible to the President—to remove their own inferiors."  *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 483 (2010) (citing *United States v. Perkins*, 116 U.S. 483 (1886) and *Morrison v. Olson*, 487 U.S. 654 (1988)).   And the removal restrictions themselves are not onerous.  The only restriction is that two entities—the CEO of USAGM and the Advisory Board—who are both answerable to the President, act jointly.  That arrangement poses no risk to the President's Article II power.

## II.        Director Abramowitz is Entitled to Injunctive Relief

The only judicial action that will remedy the harms inflicted on Director Abramowitz is an order mandating that he be allowed to continue in his role as Director.  Director Abramowitz meets all four factors necessary for injunctive relief:  "(1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; 3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010) (citation omitted).

First, Director Abramowitz's irreparable injury cannot be remedied with money damages—thus satisfying the first two factors.  He has a statutory responsibility to lead and perform VOA's vital mission: to provide accurate, objective, and comprehensive news to a global audience, especially in countries that suppress freedom of speech.  *See* 22 U.S.C. § 6202(b)(1)–

(10).  There is no price tag on that role.  Indeed, Director Abramowitz's entire career, including his decades as a journalist and years spent advocating for freedom, put him in the position to be considered for the directorship of VOA.  3-26 Abramowitz Decl. ¶¶ 4, 38-39.  And now, unless enjoined by this Court, Defendants will take away from Director Abramowitz the ability to lead a reputable and revered U.S. international broadcasting network, with no counterpart in the private sector.  *Id.* ¶¶ 32, 38-39.  Serving as the head of VOA, the country's largest and most influential government-funded international broadcast entity, is a unique opportunity and a unique privilege.  *Id.* ¶ 43[3].

Director Abramowitz accepted his appointment to be director of VOA with the knowledge and understanding that VOA would continue producing first-rate news and reporting to be disseminated to global audience and that he could be removed only through the approval by a majority vote of the Advisory Board.  *Id.* ¶ 39.  Each day to which Director Abramowitz is entitled to remain as director and to continue leading the VOA *that Congress envisioned* is invaluable to him.  *Id.*  ¶ 43.

Injunctive relief is the only way to avoid these harms.  Because statutory duties and organizational leadership cannot be retroactively fulfilled, these harms are irreparable.  *See League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) (irreparable harm where action "unquestionably make it more difficult" for the plaintiff to accomplish primary mission).

Second, the balance of the equities and the public interest also favor an injunction—thus satisfying the second two factors.  These inquiries typically "merge into one factor when the

---

[3] Part of the relief requested in this case seeks an order cancelling the Defendants' orders placing VOA employees on administrative leave. *See* Complaint, Prayer for Relief, ¶ c.  If Mr. Abramowitz is removed from his position as Director of VOA or terminated from VOA, then absent the partial relief requested in this motion he will not regain his position as Director even if the Court grants the additional relief requested in the Complaint.

government is the non-movant," as here. *Ramirez v. U.S. Immigration & Customs Enf't*, 310 F. Supp. 3d 7, 32 (D.D.C. 2018) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Defendants' actions have already caused immense harm to Director Abramowitz, VOA, its journalists and other employes, United States interests, and the listening public. When the balance of the equities and the public interest are "essentially derivative of the parties' arguments on the merits of the case," the public interest balancing "should weigh in favor of whoever has the stronger arguments on the merits." *See Am. Meat Inst. v. U.S. Dep't of Agric.*, 968 F. Supp. 2d 38, 83 (D.D.C. 2013), *judgment reinstated*, 760 F.3d 18 (D.C. Cir. 2014). Here, that is undoubtedly Director Abramowitz.

## CONCLUSION

The core facts are not in dispute. Defendants are seeking to remove Director Abramowitz in contravention of Congress's express statutory protections. For that reason, we ask that the Court grant partial summary judgment on Count IV or, in the alternative, on Count I, as they pertain to Director Abramowitz's position as VOA director and enjoin Defendants from removing him from his position as VOA director unless they comply with 22 U.S.C. § 6205(e).

In addition, we respectfully request that, if feasible, the Court rule by July 29, the date Defendants have arbitrarily given Director Abramowitz to respond to their ultimatum. Counsel for Director Abramowitz have asked Defendants to extend this deadline in order to allow time to orderly resolve this dispute, but they have not responded. For that reason, absent action by this Court, Director Abramowitz is still likely to be fired shortly after July 29, increasing the irreparable harm he is facing.

-14-

Dated: July 23, 2025                    Respectfully submitted,

*/s/ William B. Schultz*
William B. Schultz (D.C. Bar No. 218990)
Margaret M. Dotzel (D.C. Bar No. 425431)
Brian J. Beaton, Jr. (D.C. Bar No. 90020963)
Jacobus P. van der Ven (D.C. Bar No. 1644774)
ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
Fax: (202) 822-8136
wschultz@zuckerman.com
mdotzel@zuckerman.com
bbeaton@zuckerman.com
cvanderven@zuckerman.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 23, 2025, I caused the foregoing to be served on counsel of record via the Court's electronic case filing system.

/s/ *William B. Schultz*
William B. Schultz

*Attorney for Plaintiffs*