# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL ABRAMOWITZ, *et al.*, | |
| *Plaintiffs,* | |
| –v.– | |
| KARI LAKE, in her official capacity as Senior Adviser at the United States Agency for Global Media; | Civil Action No. 1:25-cv-00887-RCL |
| VICTOR MORALES, in his official capacity as Acting CEO of the United States Agency for Global Media; | |
| and | |
| UNITED STATES AGENCY FOR GLOBAL MEDIA, | |
| *Defendants.* | |

## DECLARATION OF MICHAEL ABRAMOWITZ

1.      On April 19, 2024, the then-CEO of the U.S. Agency for Global Media appointed me to be the director of Voice of America.

2.      The International Broadcasting Advisory Board ("Advisory Board") unanimously approved my appointment.

3.      Because the VOA director position is currently a senior civil service position, I was also required to apply to the federal government's Senior Executive Service.  My application was approved by the federal Office of Personnel Management on June 11, 2024.

4.      In my last performance review, I received the highest possible rating—"Level 5, Outstanding"—in every evaluation category.

5.      Serving as the director of VOA has been a highlight of my professional career.  I believe strongly in the mission of VOA to deliver impartial, independent journalism, especially for those living under tryanny.

6.      On March 15, 2025, I was placed on administrative leave "until further notice," along with approximately 1,300 other VOA employees.   I remain on administrative leave today.

7.      Late in the evening of July 7, 2025, a VOA human resources representative emailed me to ask that I be available for a call the next morning "regarding future plans for USAGM."

8.      I joined the call at 10:00 a.m. the next day (July 8), which was conducted on Microsoft Teams.  Five other individuals also joined the call, including Senior Advisor Kari Lake, Acting CEO Victor Morales, and Acting General Counsel Matthew Pollack.

9.      I was the only person to turn my video on during the call.  Once I realized no one else planned to show their face during the call, I turned my video off.

10.      On the call, Acting CEO Morales told me that I would be reassigned to another role at a transmitting station in Greenville, North Carolina.   Mr. Morales did not provide detail about the job, nor did he express any reason for removing me from my post as the director of VOA.

11.      I was told that I would receive information about the specific position later in the day.  One official said that there might be a differential in pay, because the new position was in another geographic area.

12.      I asked what would happen if I declined the new role.  Acting General Counsel Pollack said I could be subject to "adverse" consequences.  I understood he meant to convey that I would be terminated.

13.    Later on July 8, 2025, I received a letter from Acting CEO Morales.  That letter is included as Attachment A to this declaration.

14.    The letter informed me that, effective September 6, 2025, I would be removed from my "current position of Director, Voice of America" and reassigned to a different role as Chief Management Officer at the USAGM transmitting station in Greenville, North Carolina.

15.    I have never lived in Greenville, North Carolina.  I have no family in Greenville, North Carolina.  I have no friends in Greenville, North Carolina.

16.    The letter asserted that the "agency fulfilled its statutory obligation to consult with you regarding the reasons for, and your preferences with respect to, the proposed reassignment." This is not true.  I was not told the reason for my reassignment during the July 8 meeting, nor was I asked about my preferences.

17.    The letter said that I had until July 29, 2025 to "accept this reassignment" or decline it and be "subject to removal under adverse action procedures pursuant to 5 U.S.C. § 7543."

18.    None of the USAGM officials at the July 8 meeting, and nothing in the letter, mentioned the International Broadcasting Advisory Board or that Advisory Board's statutory role in removal of the VOA director.

19.    I am aware that, after taking office, President Trump fired all members of the Advisory Board, except the Secretary of State, in January 2025.

20.    From those firings in January through the present day, the Advisory Board has not had a quorum.  For that reason, my removal as director of VOA could not have been approved by a majority vote of the Advisory Board, as required by statute.

21.     My counsel, William Schultz, has informed me that he has repeatedly tried to contact VOA's Acting General Counsel, Michael Pollack, and attorneys at the Department of Justice, to seek an explanation for USAGM's decision to remove me from my position. He has not received a substantive response. I learned the following facts from my counsel.

22.     On July 8, 2025, the same day I received the letter and participated in the phone call with USAGM officials, Mr. Schultz emailed Acting General Counsel Pollack at around 7:00 p.m. EST asking to talk the following day. He received no response.

23.     On July 11, 2025, Mr. Schultz emailed Mr. Pollack once again, renewing his request to speak. Mr. Schultz then spoke with Mr. Pollack and indicated that he wanted to discuss whether USAGM had considered the requirement that the Advisory Board approve the removal of a VOA director. Mr. Schultz also asked about the consequences if I were to refuse to move to Greenville, North Carolina. Mr. Pollack said he had been instructed not to tell Mr. Schultz anything substantive and that Mr. Schultz should reach out to counsel at the Department of Justice.

24.     Later the same day, on July 11, 2025, Mr. Schultz emailed Mr. Pollack asking for the right person at the Department of Justice to contact. He received no response.

25.     On July 16, 2025, Mr. Schultz called counsel for DOJ to provide information, at her request, on a separate issue related to this matter. On the call, Mr. Schultz asked once again about my removal and reassignment, and was told by the counsel that she did not know about it and would find a contact to discuss.

26.     The next day, Mr. Schultz emailed the same counsel to follow up on his request. She responded: "Thank you for the reminder. But I have not identified the person or have any additional information. When I have an update or a POC, I will let you know."

27.     On July 19, 2025, my counsel sent a letter to DOJ counsel asking them to reconsider my removal and reassignment.  Noting the July 29 deadline, the letter asked for a response by 10:00 a.m. on Tuesday, July 22—one week in advance.

28.     Following further prompting from Mr. Schultz, DOJ counsel responded via email on July 21, 2025: "I am providing a courtesy notice that we will not have a substantive response back to your letter by the arbitrary deadline you set for tomorrow at 10:00 AM.  We are discussing this with our clients but need additional time to do so.  I will circle back promptly."

29.     As of the date and time that I am signing this declaration, DOJ counsel has, to my knowledge, not responded to my counsel.

On this 23rd day of July 2025 I declare under penalty of perjury that the foregoing declaration is true and correct.

Michael Abramowitz

ATTACHMENT A



**U.S. AGENCY FOR GLOBAL MEDIA**

330 Independence Avenue SW | Washington, DC 20237 | usagm.gov

July 8, 2025

MEMORANDUM FOR:     Michael Abramowitz

FROM:                          Victor Morales    *V M*
                                     Acting Chief Executive Officer

SUBJECT:                      Notice of Directed Reassignment

This memorandum is to notify you that you will be reassigned from your current position of Director, Voice of America (VOA), ES-1001, (Duty Station Washington, DC) to Chief Management Officer, ES-0301, (Duty Station, Greenville, NC) effective September 6, 2025. This action is taken pursuant to 5 U.S.C. § 3395 and 5 C.F.R. § 317.901.

As required by 5 U.S.C. § 3395(a)(2)(B)(i)(I), the agency fulfilled its statutory obligation to consult with you regarding the reasons for, and your preferences with respect to, the proposed reassignment on July 8, 2025. As discussed during that consultation, this geographic reassignment is integral to not only ensure appropriate front-office supervision of USAGM's primary domestic transmission facility for VOA content during this key transitional period, but also to ensure appropriate front-office evaluation of the possibility of an expanded USAGM staff presence at the Greenville facility.

Please complete the below acknowledgment section and return this memorandum to the Office of Human Resources at HRExecutiveResources@usagm.gov no later than July 29, 2025. Should you decline to accept this reassignment, please be advised you are subject to removal under adverse action procedures pursuant to 5 U.S.C. § 7543.

Because this reassignment is to a different commuting area, you may be entitled to discontinued service retirement (if eligible) or severance pay (if eligible).

Attachment:  ES-25008 Chief Management Officer Position Description

     

_____

Acknowledgment of Reassignment Notification

_____     I accept the reassignment to the position of Chief Management Officer, ES-0301,
          effective September 6, 2025.

_____     I decline the reassignment and understand that I may be subject to removal
          under adverse action procedures pursuant to 5 U.S.C. § 7543.

Signature:     _____
Name (Printed)  _____
Date:     _____