# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MICHAEL ABRAMOWITZ *et al.*,

    *Plaintiffs,*

    –v.–

KARI LAKE *et al.*,

    *Defendants.*

Case No. 25-cv-00887

## PLAINTIFFS' REPLY TO DEFENDANTS' SECOND SUPPLEMENTAL RESPONSE TO PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE

On July 8, 2025, the Court ordered Defendants to submit further information in order "to get a clear picture of how VOA is operating or how the agency plans to operate VOA moving forward." ECF No. 56, Order at 2. Specifically, the Court identified a variety of points of concern or contradiction raised by Defendants' previous submissions, including:

- Defendants' touting of Persian programming to establish compliance with the preliminary injunction, despite Defendants' stated intent to fire nearly all employees working on such programming, *id.*;

- Defendants' failure to provide concrete staffing levels on a going-forward basis, *id.* at 3;

- Defendants' failure to justify VOA operations in light of the FY 2025 budget justification and Congress's appropriation to USAGM and VOA, *id.* at 4; and

- Defendants' failure to articulate any reasoned basis or methodology for how they determined that (1) only four languages are statutorily required for broadcasting; (2) they would broadcast from Greenville, North Carolina, despite not broadcasting in relevant languages; and (3) they would not broadcast at all to Africa. *Id.* at 4-5.

In what has now become routine, Defendants' response unfortunately drives home that Defendants are not complying with the preliminary injunction, have no interest or desire to do so,

and would instead prefer to feign compliance. Nothing in Defendants' response offers satisfactory answers to the points raised by the Court, let alone justifies Defendants' decision to operate VOA and USAGM at *de minimis* levels while the preliminary injunction remains in place. Defendants' recent action aimed at removing VOA Director Abramowitz, even after publicly recognizing that they lack the statutory authority to do so, is just further proof that Defendants intend to ignore both the relevant statutes and their legal duties.[1] Because Defendants' latest response reflects at best irrational decisionmaking and at worst willful non-compliance with the Court's preliminary injunction, the Court should grant Plaintiffs' requested relief and order Defendants to devise a plan to bring themselves into compliance with the preliminary injunction.

## ARGUMENT

I. **Defendants' Latest Response Underscores Their Non-Compliance with the Preliminary Injunction.**

Point by point, Defendants' latest submission leaves more questions than answers and only underscores that they do not take seriously their duty to comply with the Court's preliminary injunction. The Court ordered Defendants to answer three questions: "what VOA is doing, what the defendants' plan is for VOA moving forward, [and] how the defendants made any of these decisions." ECF No. 56 at 5. Defendants have not responded adequately to any of the three.

---

[1] *See* Motion for Partial Summary Judgment, ECF No. 59. On July 8, 2025, Director Abramowitz was informed via a Teams call and a follow-up letter that he was being removed from his post as VOA director and transferred to another position in Greenville, North Carolina, and that a failure to agree to the transfer by July 29, 2025, could result in his termination. *Id.*, Mem. at 4-5. Defendants took this action despite previously admitting that the director position is statutorily required. *See* ECF No. 54-3, Letter to Senator Graham at 3 (pointing out that the head of VOA is a statutorily required position and that "[t]he head[] of Voice of America … may only be appointed or removed if such action has been approved by a majority vote of the Advisory Board"). Abramowitz has sought expedited relief from this Court. ECF No. 59.

*Persian Programming*. Despite previously touting their efforts to broadcast live to Iran last month during Israel's airstrikes as a demonstration of compliance with the preliminary injunction and ability to "surge" programming when necessary, Defendants' emphasis on such programming has disappeared in their latest submission. Defendants do not dispute what this Court highlighted: that their own submission to Congress indicated their intent to mass fire Persian Service staffers. ECF No. 56, Order at 2. Nothing in Defendants' latest submission contradicts that point and the obvious fact that once Defendants' mass firing is complete there will be no surge capacity.

*Going-Forward Staffing Levels*. Despite a clear order from this Court, Defendants still refuse to disclose how many staff they intend to keep at USAGM and VOA. The Court has already explained that Defendants' shifting staffing representations—previously citing 86 employees for VOA and OCB—are too noncommittal to permit evaluation of compliance, and the Court warned that touting activities by staff "that will soon be fired" is not acceptable. ECF No. 56 at 3. Yet once again, Defendants state that "the number [of personnel] is subject to change as the Agency manages it operations." ECF 57-1, Lake Aff. ¶ 4. While stating that presently 72 full-time employees are working at VOA, *id.*, Defendants do not (1) explain the details of these 72 employees' positions, what work these employees are doing, or how this number reconciles with prior counts and whether these positions are slated for RIFs or are temporary positions; (2) explain how these employees are "execut[ing] … VOA's statutorily defined functions," *id.*; (3) explain how the listed staff are carrying out the functions Defendants have identified, *id.* ¶ 5; or (4) explain how the list of 72 employees makes sense in light of prior (and different) representations related to staffing and future staffing, such as the submission to Congress, ECF No. 54-3. Together with the complete refusal to

3

commit to any level of staffing, Defendants' volatile staffing decisions indicate that there is no plan to operate VOA moving forward, directly contrary to the preliminary injunction.[2]

***The Appropriation and Budget Justification.*** Defendants either misunderstand the importance of explaining how they are operating consistent with Congress's appropriation and their own budget justification or have simply decided they need not do so. Either way, simply listing the amounts that VOA has spent year to date is non-responsive to the Court's order. ECF 57-1, Lake Aff. ¶ 12. As this Court is well aware, nearly all VOA staff has remained on administrative leave for over four months, and presumably the amounts that Defendants highlight have been spent to keep staff at home *and banned from working*, after being forced to surrender their press passes, reporting equipment, and access to USAGM systems. *See* ECF No. 4-3. Put differently, Defendants do not explain how they are operating VOA in a manner that comports with the hundreds of millions of dollars Congress appropriated. Congress appropriated that money to support robust programming and did so based on representations USAGM made in support of its budget, including how many hours it intended to broadcast to 100 countries in 48 languages. *See* ECF No. 49-3, FY 2025 Congressional Budget Justification at 13. Defendants continue to obfuscate rather than answer the Court's inquiry, because they have no reasoned answer. They are not operating VOA in line with what they told Congress, what Congress wanted, or what Congress funded. They are lighting money on fire.

***Language Services.*** Defendants continue to resist answering how they determined that they are required to broadcast in only four languages. While Defendants point to certain statutory provisions related to Mandarin, Farsi, Dari, and Pashto, ECF No. 57-1, Lake Aff. ¶ 14, they again

---

[2] Defendants previously represented that there were "209 active personnel onboard." ECF No. 54-1, Wuco Decl. ¶ 20.

refuse to justify their choices in light of the overwhelming statutory and other evidence that they are required to broadcast to more regions and in more languages. Plaintiffs and this Court have repeatedly emphasized the statutory requirements Defendants must follow and the mandates that VOA must fulfill, and that the preliminary injunction must be understood in light of those requirements. *See* ECF No. 55, Plaintiffs' Reply at 6 ("Plaintiffs have repeatedly stressed that Defendants' shuttering of VOA means that they are failing to comply with myriad statutory obligations . . . . And they have repeatedly explained that this Court's preliminary injunction must be understood in the context of the same." (citing *Widakuswara v. Lake*, --- F. Supp. 3d ----, No. 1:25-CV-1015-RCL, 2025 WL 1166400, at *14 (D.D.C. Apr. 22, 2025))).

Defendants' insistence that VOA can exclusively broadcast in these four languages ignores VOA's broader statutory mandates and this Court's order that VOA function as a "consistently reliable and authoritative source of news." By way of an example, VOA (and USAGM) broadcasting must, among other requirements, include "information about developments in *each significant region* of the world"; "programming to meet needs which remain unserved by the totality of media voices to the *people of certain nations*"; and "a variety of opinions and voices from within *particular nations and regions prevented by censorship or repression* from speaking to their fellow countrymen." 22 U.S.C. § 6202(b)(5), (6), (7) (emphases added). As it stands, Defendants have offered no explanation for how they could possibly be complying with these mandates, or how, for example, Africa is not a significant region of the world; indeed, they admit that they are broadcasting in just four languages and not disseminating anything to other countries or regions.

Worse yet, Defendants have not meaningfully addressed throughout this prolonged briefing a basic issue: they are hardly broadcasting at all. Defendants claim that "VOA is

*broadcasting*" in the four languages they identify. ECF No. 57-1, Lake Aff. ¶ 14 (emphasis added). Not so. As Defendants' submissions have repeatedly emphasized, the only languages in which VOA is consistently *broadcasting—i.e.*, disseminating programming by radio or television—are Dari and Pashto through limited radio transmissions to Afghanistan. ECF No. 55, Plaintiffs' Reply at 3. Otherwise, VOA is simply posting web stories that are centrally produced and then translated into the four languages. *Id.* Even if Defendants were only required to produce programming and broadcast in the four languages that they identify, they are hardly broadcasting at all in even those languages.

      ***The Edward R. Murrow (ERM) Transmitting Station.*[3]** Defendants' discussion of ERM leaves more questions than answers. Previously, Defendants represented that they "recommenced shortwave radio broadcasts from [ERM]" on June 27, 2025, and that the "signal blankets all of Latin America and the Caribbean." ECF No. 54-1, Wuco Decl. ¶ 20. But Defendants are not broadcasting VOA programming into Latin America, so that representation must have been concerned with OCB only. That was despite the fact that Frank Wuco's prior declaration was supposed to be concerned with "current operations of the Voice of America." *Id.* ¶ 2. Now, Defendants seemingly admit that ERM is being used only to broadcast OCB programming shortwave into Cuba. ECF No. 57-1, Lake Aff. ¶ 11. Put differently, ERM is not being used to transmit VOA programming at all; it is laying dormant "to support any future VOA broadcasting efforts to the Americas and Eurasia." *Id.* As the Court highlighted, OCB is a separate entity within USAGM and as such, is "irrelevant" to the preliminary injunction. ECF No. 56 at 3 n.1.

---

[3] Defendants' discussion of the Greenville transmitting station also shows why it is imperative that VOA in fact *broadcast* over television and radio, in line with the IBA, as opposed to simply engaging with audiences online. ECF No. 57-1, Lake Aff. ¶ 11 ("ERM has also provided backup shortwave services for VOA programming to different parts of the world in situations where other countries' governments *sever internet access* for their populations." (emphasis added)).

Defendants' decision to rely on ERM to counter charges that they are virtually dismantling VOA is nothing more than a distraction and demonstrates how little Defendants are doing to restore VOA in line with the preliminary injunction.

## II.     Defendants Must do More to Comply with the Preliminary Injunction.

The Court was right to order Defendants to submit more information. And Defendants' submission reflects either what little Defendants believe is required by the Court's preliminary injunction or what little Defendants will do to comply. But it is important not to lose the forest for the trees. The Court's preliminary-injunction opinion laid out in painstaking detail the robust statutory framework that obligates VOA to broadcast to significant audiences across the globe. It took stock of how Defendants have shuttered USAGM and VOA such that these entities are failing entirely to meet their statutory obligations. At every juncture throughout the briefing on Plaintiffs' motion for an order to show cause, Defendants have offered little to no information concerning how they have reversed these harms and complied with the preliminary injunction as they must.

Defendants' shifting rationales, confusing non-answers, and paltry submissions reaffirm what is obvious: Defendants are not complying with the preliminary injunction and they will do everything they can to avoid complying with it. As Plaintiffs have reiterated, Defendants enjoy certain discretion in managing VOA's and USAGM's affairs. But that discretion is not unlimited and is cabined by manifest expressions of Congress's will, including through the VOA Charter, IBA, and appropriations legislation. And their discretion is limited by this Court's preliminary-injunction order that gives effect to these expressions of Congressional will.

Nearly two months into the beginning of the show-cause proceedings, nothing has changed. The situation is as it was then: Defendants have never complied with, and have expressed no intention to ever comply with, this Court's preliminary injunction, despite this Court's repeated attempts to allow them to do so.

## III. The Court Should Order Defendants to Devise a Plan to Comply with its Preliminary Injunction.

Defendants' continued lawlessness and irrationality underscore the need for immediate judicial intervention here. Specifically, and as explained more fully in Plaintiffs' prior submissions, the Court should order Defendants to devise a plan to bring themselves into compliance with the preliminary injunction and should submit that plan to the Court and to the parties. Such a course of action continues to afford Defendants discretion in operating VOA and USAGM while simultaneously ensuring that Defendants' continued non-compliance ceases. Defendants have made it crystal clear through both their actions and inaction that they will not change course unless ordered to do so.

Dated: July 25, 2025                             Respectfully submitted,

*/s/ William B. Schultz*
William B. Schultz (D.C. Bar No. 218990)
Margaret M. Dotzel (D.C. Bar No. 425431)
Brian J. Beaton, Jr. (D.C. Bar No. 90020963)
Jacobus P. van der Ven (D.C. Bar No. 1644774)
ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
Fax: (202) 822-8136
wschultz@zuckerman.com
mdotzel@zuckerman.com
bbeaton@zuckerman.com
cvanderven@zuckerman.com

*Attorneys for Plaintiffs*