**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

MICHAEL ABRAMOWITZ, et al.,

        Plaintiffs,

   v.

KARI LAKE,
Senior Advisor to the Acting CEO of the
United States Agency for Global Media, et al.,

        Defendants.

Civil Action No. 25-cv-0887 (RCL)

---

**RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
<u>JUDGMENT</u>**

**TABLE OF CONTENTS**

Table of Contents ................................................................................................................. i

Introduction ...................................................................................................................... 1

Background ....................................................................................................................... 3

Legal Standard ................................................................................................................. 4

Argument .......................................................................................................................... 5

    I.     Plaintiffs' partial summary judgment motion is not ripe and is procedurally improper. ......................................................................................................... 5

    II.    The district court lacks jurisdiction over Mr. Abramowitz's employment challenge. ...................................................................................................... 10

    III.   The International Broadcasting Act's removal procedures concerning the Voice of America Director are inconsistent with Article II and therefore unconstitutional. 14

    IV.   This Court lacks the power to enjoin Mr. Abramowitz's removal as the Voice of America Director. ........................................................................................ 20

Conclusion ...................................................................................................................... 22

# INTRODUCTION

In March, Mr. Abramowitz, the Voice of America ("VOA") Director and three other VOA employees sued the U.S. Agency for Global Media ("USAGM"); Kari Lake, in her official capacity as Senior Advisor to the Acting CEO of USAGM; and Victor Morales, in his official capacity as Acting CEO of USAGM. ECF. No. 1. Plaintiffs challenged the "dismantl[ing]" of VOA. *See, e.g.*, ECF 1 at 4.[1] At that point in time, Mr. Abramowitz had been placed on administrative leave. ECF 59-1 at 3. Now, months later, Mr. Abramowitz has received a notice of reassignment, which warns that "declin[ing] to accept [the] reassignment" could "subject [Mr. Abramowitz] to removal under adverse action procedures pursuant to 5 U.S.C. § 7543," ECF No. 59-1 at 8, and a notice of proposed removal after Mr. Abramowitz declined to accept the reassignment, Exhibit A. Rather than waiting for an employment action to occur or seeking to challenge any potential action in the appropriate administrative channels provided by the Civil Service Reform Act ("CSRA"), Plaintiffs filed a motion for partial summary judgment in this Court. ECF No. 59. Because Mr. Abramowitz has not actually been removed from his role as the Voice of America Director, Plaintiffs seek the extraordinary relief of an injunction that would "enjoin Defendants from removing him from his position as VOA director unless they comply with 22 U.S.C. § 6205(e)." ECF No. 59 at 21.

Mr. Abramowitz's motion should be denied for several independent reasons. As a threshold matter, Mr. Abramowitz's motion is procedurally improper and not ripe. Although Plaintiffs purport to move under Count I or Count IV of their complaint—an Administrative Procedure Act ("APA") claim and an *ultra vires* claim—the facts and theories supporting those claims are wholly different than the ones underlying Mr. Abramowitz's partial summary judgment motion. And the

---

[1] Pin cites refer to the ECF page numbers.

Court should decline to intervene where Mr. Abramowitz has not actually suffered the harm that he claims. As Plaintiffs concede, Mr. Abramowitz has not been removed from his position as Voice of America Director yet. *See, e.g.*, ECF No. 59 at 21, ECF No. 64 at 4.

Notwithstanding the procedural deficiencies, this Court is the wrong forum for Mr. Abramowitz's employment dispute. Mr. Abramowitz is challenging a (potentially impending) adverse personnel action. Congress, through the CSRA, has set up a carefully crafted, comprehensive, and exclusive scheme to address personnel disputes within the federal government. And Mr. Abramowitz's theory for his allegedly unlawful removal—that Defendants violated the statute—does not change the analysis or take Mr. Abramowitz's impending dispute outside of these administrative channels.

On the merits, the Court should deny Plaintiffs' motion in any event because the Chief Executive Officer, acting on the President's behalf, may lawfully remove the Voice of America Director, an inferior officer. The Government's argument rests on a simple, well-recognized constitutional principle: The power to remove an inferior officer can be vested only in "the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. Art. II, § 2, cl. 2; *see Morrison v. Olson*, 487 U.S. 654, 670 (1988). Here, that means the Voice of America Director—an inferior officer—must be removable at will by the President or the Agency's Chief Executive Officer (the head of the Agency) acting on the President's behalf. Accordingly, if it ever reaches the issue and if the removal occurs, the Court should hold that Mr. Abramowitz's removal is lawful because the statutory removal restrictions—which require that the removal of the Voice of America Director be approved by a majority vote of the International Broadcasting Advisory Board ("Advisory Board")—are unconstitutional.

Finally, on remedy, this Court lacks the power to enjoin Mr. Abramowitz's removal as the Voice of America Director. Under traditional principles of equity, courts of equity have no power over appointments and removals. This Court should decline to exercise such a novel power here.

## BACKGROUND

On March 15, 2025, Mr. Abramowitz, the Voice of America Director, was placed on administrative leave until further notice. ECF No. 59-1 at 3. He, along with three other Voice of America employees, sued shortly thereafter. ECF No. 1. On July 8, Acting CEO Victor Morales told Mr. Abramowitz that he was being reassigned to another role at a transmitting station in Greenville, North Carolina. ECF No. 59-1 at 3. Other Agency personnel, including Senior Advisor Kari Lake, were also on the call. ECF No. 59-1 at 3. Acting CEO Morales sent Mr. Abramowitz a letter memorializing the reassignment later that day. *Id.* at 8–9. The reassignment notice explained that the "geographic reassignment is integral to not only ensure appropriate front-office supervision of USAGM's primary domestic transmission facility for VOA content during this key transitional period, but also to ensure appropriate front-office evaluation of the possibility of an expanded USAGM staff presence at the Greenville facility." *Id.* at 8. The notice also requested that Mr. Abramowitz inform the Agency of his decision to accept or reject the reassignment by July 29 and advised that declining to accept the reassignment may subject him to removal under adverse action procedures pursuant to 5 U.S.C. § 7543. *Id.*

After receiving the July 8 reassignment notice, Plaintiffs filed the instant motion for partial summary judgment. ECF No. 59. Plaintiffs argue that the Acting CEO cannot remove Mr. Abramowitz from his position as the Voice of America Director without a majority vote from the Advisory Board and seek an injunction preventing Mr. Abramowitz's removal.

On July 29, Mr. Abramowitz acknowledged the July 8 letter providing him notice of the reassignment and did not accept the reassignment. Exhibit A at 2. Accordingly, on August 1, the

Agency sent Mr. Abramowitz a notice proposing to remove him from the Voice of America Director position for failing to accept the reassignment. Exhibit A. The notice informed Mr. Abramowitz that "[t]his action will be implemented no earlier than 30 days from the date you receive this Notice." *Id.* at 1. The reassignment would have reassigned Mr. Abramowitz to the position of Chief Management Officer. *Id.* The reassignment, the notice explained, "was strategically aligned with agency priorities." *Id.* at 2. Mr. Abramowitz's "presence at the Edward R. Murrow Transmitting Station [in Greenville, North Carolina] was needed to ensure executive level oversight and leadership during a critical period." *Id.* "This new role would have included directing and focusing staff at the facility on clearly defined operational and strategic priorities, while continuing to maintain and improve day-to-day operations there." *Id.* "It also involved providing regular feedback, direction, and training to ensure the facility staff remained engaged in fulfilling key agency objectives, including efforts to streamline agency functions in accordance with statutory requirements." *Id.*

The August 1 notice of proposed removal also provided Mr. Abramowitz a right to reply to the proposal and informed him of his rights of appeal after a decision was made on the proposal. *Id.* at 5–6. Specifically, the notice informed Mr. Abramowitz that he may appeal any decision with the U.S. Merit Systems Protection Board ("MSPB") or file a claim of prohibited personnel practices with the U.S. Office of Special Counsel ("OSC"). *Id.* at 6–8.

## LEGAL STANDARD

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. *Anderson*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. A dispute is

"genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Holcomb*, 433 F.3d at 895. When Rule 56 is invoked, the moving party has the initial burden of demonstrating the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, to defeat the motion the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted). Though courts must view this evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *see Grosdidier v. Chairman, Broad. Bd. of Governors*, 709 F.3d 19, 23–24 (D.C. Cir. 2013), the nonmoving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his position—"there must be evidence on which the jury could reasonably find for [the nonmoving party]," *Anderson*, 477 U.S. at 252. The nonmoving party, moreover, "may not rest upon mere allegation or denials of his pleading but must present affirmative evidence showing a genuine issue for trial." *Laningham v. Dep't of Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (internal citation and quotation marks omitted).

## ARGUMENT

### I.    <u>Plaintiffs' partial summary judgment motion is not ripe and is procedurally improper.</u>

Plaintiffs' motion for partial summary judgment suffers from procedural and Article III defects out of the gate. First, Plaintiffs' motion is not ripe. Second, Plaintiffs' motion—which is wholly disconnected from Plaintiffs' complaint—is premature.

Article III requires that courts adjudicate only those claims that are ripe for review. Ripeness requires that an alleged injury be certainly impending; a claim is not ripe if it is "dependent on contingent future events that may not occur as anticipated, or indeed may not occur

at all." *Trump v. New York*, 592 U.S. 125, 131 (2020) (quotation omitted). A court lacks jurisdiction over un-ripe claims that do not satisfy the Constitution's case or controversy requirements. "Determining whether administrative action is ripe for judicial review requires [courts] to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (citation omitted).

Mr. Abramowitz's claim is not yet ripe. As Plaintiffs note, the July 8 reassignment notice that Mr. Abramowitz received gave him until July 29 to respond to his reassignment. If he did not accept, then the Agency is required, as noted in the July 8 notice, to undertake adverse action procedures. ECF No. 59-1 at 8 (citing 5 U.S.C. § 7543). These procedural requirements include, among other things, providing Mr. Abramowitz with a written notice proposing to remove him from his position and an opportunity for Mr. Abramowitz to reply. *See* Exhibit A. And as the August 1 written notice makes clear, no action will be implemented earlier than thirty days of Mr. Abramowitz's receipt of the notice. *Id.* at 1. In short, Mr. Abramowitz's removal is not final, and any challenge to an adverse employment action that has not happened yet is premature. His challenge is not yet ripe. And his alleged potential future injuries cannot form the basis for the Court's subject-matter jurisdiction. The Court should decline to intervene at this premature stage.

For the same reasons, the court should decline to enter an "order mandating that [Mr. Abramowitz] be allowed to continue in his role as Director" and enjoin Defendants from removing Mr. Abramowitz from his position. ECF No. 59 at 12, 14. Mr. Abramowitz's harms are based on facts that have not yet occurred; he has not been removed. And his harms are not irreparable in any event, as courts have repeatedly affirmed that loss of employment is not irreparable harm. *See,*

*e.g.*, *Church v. Biden*, 573 F. Supp. 3d 118, 142 (D.D.C. 2021) (explaining that courts, including the Supreme Court, has held that loss of employment is generally not irreparable harm).

Indeed, the D.C. Circuit recently rejected a materially identical argument in *Dellinger v. Bessent*, a case challenging the President's decision to remove Hampton Dellinger as Director of the Office of Special Counsel, alleging that any such removal was *ultra vires*. No. 25-5052, 2025 WL 887518, at *4 (D.C. Cir. Mar. 10, 2025). The D.C. Circuit concluded that Dellinger had not demonstrated irreparable harm based on his statutory rights to function as the Director, even "[a]ssuming he is correct that his removal is statutorily ultra vires, and assuming that his removal constitutes a cognizable injury." *Id*. at *4. At worst, Dellinger "would remain out of office for a short period of time." *Id*. Contrary to Plaintiffs' argument, Mr. Abramowitz has no personal statutory entitlement to the Director role. *See* ECF No. 59 at 19–21. Another person has been fulfilling the responsibilities of the Director position in an Acting capacity role while Mr. Abramowitz has been on administrative leave. But even if this Court found that he did, that does not justify an injunction preventing his removal. *See Dellinger*, 2025 WL 887518, at *4. The Supreme Court has also very recently—and twice over—concluded that when removal of an officer is being challenged, the equities weigh against reinstatement because "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025); *see also Trump v. Boyle*, No. 25A11, 2025 WL 2056889 (U.S. July 23, 2025). Consistent with the Supreme Court's direction, if Mr. Abramowitz is eventually removed, this Court should not enter an injunction reinstating him during the pendency of litigation. *See Wilcox*, 145 S. Ct. at 1415 ("A stay is appropriate to avoid

the disruptive effect of the repeated removal and reinstatement of officers during the pendency of this litigation.").

Relatedly, Plaintiffs' complaint, ECF No. 1, and partial summary judgment motion, ECF No. 59, tell two distinct stories. Although Plaintiffs attempt to tether Mr. Abramowitz's challenge to his (yet to occur) removal to his complaint allegations, their motion raises a fundamentally new claim: the removal of Mr. Abramowitz from his position as Voice of America Director. Indeed, Plaintiffs' complaint could not have raised Mr. Abramowitz's termination claim because it had not occurred at the time Plaintiffs initiated this action (and notably, still has not occurred). Because Plaintiffs cannot raise wholly new claims in their motion for partial summary judgment, the Court should deny Plaintiffs' motion as premature. To the extent Plaintiffs seek to amend their pleadings, a partial motion for summary judgment is the inappropriate procedural mechanism to do so. If Plaintiffs wish for the Court to consider claims that have not been pleaded, they will first need to seek leave to do so under Federal Rule of Civil Procedure ("Rule") 15. They have not done so. And even if they had, the Court would be within its discretion to deny any such motion because leave to amend should be denied when it would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile "if the proposed claim would not survive a motion to dismiss." *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996). To survive a motion to dismiss, a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But for the reasons explained *infra*, Abramowitz's claims would not survive a threshold motion.

Plaintiffs' complaint seeks a declaration relating to "[D]efendants' actions requiring VOA to cease operations," placing "VOA employees on administrative leave," and terminating personal contract employees. ECF No. 1 at 33. It also asks the Court to order "defendants to cancel their

orders putting . . . VOA employees on administrative leave, cancel the termination of personal services contracts . . . , cease dismantling Voice of America, and restore VOA's personnel and operating capacities." ECF No. 1 at 33. Count I of Plaintiffs' complaint alleges that Defendants violated the APA because Defendants' decisions to place VOA employees on administrative leave, terminate the contracts of personal service contractors, and cease some of VOA's functions were "contrary to . . . law" and "arbitrary and capricious." ECF No. 1 at 26–29. Count IV of Plaintiffs' complaint alleges that "Defendants' impeding of VOA's statutorily required functions and dismantling of VOA is contrary to law and exceeds their statutory and constitutional authority." ECF No. 1 at 32. Mr. Abramowitz is mentioned only once in either of these Counts. In Count I, Plaintiffs allege that Defendants' actions were arbitrary and capricious because they will "have the result of . . . depriving [Mr. Abramowitz] of his statutory right to continue directing VOA, because the entity has entirely ceased its functions." ECF No. 1 at 29. At bottom, Plaintiffs' complaint focuses on overall VOA operations.

In contrast, Plaintiffs' motion for partial summary judgment focuses only on Mr. Abramowitz's potential removal or termination and the statutory requirement that the Advisory Board approve the removal of the Voice of America Director by majority vote—issues that were plainly not raised in the complaint. *Compare* ECF No. 1 *with* ECF No. 59.

Plaintiffs' partial motion for summary judgment is premature. Mr. Abramowitz's challenge to his termination is a new claim that cannot fairly be construed from Plaintiffs' complaint. And "a plaintiff is not permitted to raise new claims at the summary judgment stage, where those claims were not pleaded in the complaint." *Taylor v. Mills*, 892 F. Supp. 2d 124, 137 (D.D.C. 2012); *see also Franks v. Salazar*, 816 F.Supp.2d 49, 58 n.5 (D.D.C. 2011) ("[P]laintiffs cannot use their summary judgment briefing to press claims not raised in their amended complaint."); *Sharp v.*

*Rosa Mexicano, D.C., LLC*, 496 F.Supp.2d 93, 97 n.3 (D.D.C. 2007) ("[P]laintiff may not, through summary judgment briefs, raise the new claims . . . because plaintiff did not raise them in his complaint, and did not file an amended complaint."). To provide the notice contemplated by Rule 8, the most fair and proper way for parties to add new claims is by amending their pleadings. *See Harris v. Sec'y, U.S, Dep't of Veterans Affs.*, 126 F.3d 339, 343–45 (D.C. Cir. 1997). The Court should deny Plaintiffs' motion for partial summary judgment as premature and require Plaintiffs to either file a new action or seek leave to amend their complaint pursuant to Rule 15 in accordance with the allegations they improperly raise through their partial motion for summary judgment.

## II.    **The district court lacks jurisdiction over Mr. Abramowitz's employment challenge.**

Although district courts "have jurisdiction over civil actions arising under the Constitution and laws of the United States," "Congress may preclude [that] jurisdiction by establishing an alternative statutory scheme for administrative and judicial review." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump* ("*AFGE*"), 929 F.3d 748, 754 (D.C. Cir. 2019). "To determine whether Congress has done so, [courts] use the two-step framework set forth in" *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). *Id.* "Under that framework, Congress intended that a litigant proceed exclusively through a statutory scheme . . . when (i) such intent is fairly discernible in the statutory scheme, and (ii) the litigant's claims are of the type Congress intended to be reviewed within [the] statutory structure." *Id.* (quotations omitted).

The CSRA "established a comprehensive system for reviewing personnel action taken against federal employees." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012) (quotation omitted). The CSRA provides that employment disputes must first be administratively exhausted before the employing agency and the applicable administrative review board—here, the MSPB or OSC. Judicial review, if any, is generally available only following the exhaustion of administrative review. *See AFGE*, 929 F.3d at 752 (citing 5 U.S.C. §§ 7105, 7123(a), (c)); *United States v. Fausto*,

484 U.S. 439, 448–50 (1988); *see also* 5 U.S.C. § 7703(b) (providing for judicial review in the Federal Circuit or other court of appeals).

When it comes to employment-related actions within the CSRA's purview, the Supreme Court and the D.C. Circuit have been resoundingly clear on the first *Thunder Basin* inquiry: The CSRA provides "the *exclusive* avenue for suit" to a plaintiff whose claims fall within its scope. *Grosdidier*, 560 F.3d at 497 (emphasis added). The CSRA is "a 'comprehensive and exclusive' statutory scheme that 'protects covered federal employees against a broad range of personnel practices, and . . . supplies a variety of causes of action and remedies to employees when their rights under the statute are violated.'" *Am. Fed'n Gov't Emps. v. Sec. of Air Force*, 716 F.3d 633, 636 (D.C. Cir. 2013) (quoting *Grosdidier*, 560 F.3d at 497); *see also Grosdidier*, 560 F.3d at 497 ("Congress designed the CSRA's remedial scheme with care, intentionally providing—and intentionally not providing—particular forums and procedures for particular kinds of claims." (quotation omitted)). A plaintiff must rely on the "variety of causes of action and remedies" created by the CSRA and "may not circumvent the Act's requirements and limitations by resorting to the catchall APA to challenge agency employment actions." *Grosdidier*, 560 F.3d at 497. Even if the plaintiff "cannot prevail in a claim under the CSRA," *id.*, no other relief is available.

Plaintiffs do not seriously contest the first step of the *Thunder Basin* inquiry and instead contend that Mr. Abramowitz's claim fails under the second step. *See* ECF No. 59 at 9. "Claims will be found to fall outside of the scope of a special statutory scheme in only limited circumstances, when (1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claim[s] [are] wholly collateral to the statutory review provisions; and (3) the claims are beyond the expertise of the agency." *AFGE*, 929 F.3d at 755 (quotation omitted; alternations in original). Here, all those factors are met. Mr. Abramowitz's claim—a challenge to a (future)

adverse employment action based on his failure to accept his reassignment—is the quintessential type of claim contemplated by the CSRA.

First, a finding of preclusion would not foreclose all meaningful judicial review. Plaintiffs' sole argument on this point is that Mr. Abramowitz's complaint may take "a long time" to reach an Article III court because the lack of a quorum at the CSRA-administrating agencies. ECF No. 59 at 9. But the CSRA's comprehensive, exclusive review scheme does not recede because judicial review comes after agency review or because review may take time. Judicial review need not be immediately available for a plaintiff to receive meaningful judicial review. *See Thunder Basin*, 510 U.S. 200, 207 (1994). A statutory scheme can provide for meaningful judicial review even if it requires litigants to first seek relief in an administrative forum, so long as an appeal to an Article III court is available "in due course." *Bennett v. U.S. Securities and Exchange Commission*, 844 F.3d 174, 186 (4th Cir. 2016). Meaningful judicial review similarly does not require the involvement of a district court. *See Axon Enter. v. Federal Trade Commission*, 598 U.S. 175, 190 (2023). Review of an agency's action in a court of appeals can meaningfully address a party's claim. *Id.*; *see also Thunder Basin*, 510 U.S. at 215.

Second, Mr. Abramowitz's claim is not "wholly collateral" to the CSRA's statutory scheme. Plaintiffs argue that Mr. Abramowitz's claim for relief "has little to do with the civil service laws" because it is based on Mr. Abramowitz's claim that he cannot be removed as the Voice of America Director absent a majority vote of the Advisory Board. ECF No. 59 at 10. But the fact that an adverse employment claim implicates a statute or constitution does not make the claim collateral. Courts, including the Supreme Court and the D.C. Circuit, have repeatedly concluded that the CSRA provides meaningful judicial review even in the face of statutory or constitutional arguments. *Elgin*, 567 U.S. at 21–23 (explaining that the Federal Circuit can

consider and decide constitutional claims and that the MSPB "routinely considers" statutory and constitutional claims); *AFGE*, 929 F.3d at 760 (explaining that disputes over whether the statute has been violated are not wholly collateral to the statutory scheme).

Third, Plaintiffs fail to even make a full-throated argument on the last factor, merely noting in a conclusory fashion that "there is nothing on which the MSPB (or any other CSRA agency) could bring its 'expertise' to bear." ECF No. 59 at 10. Contrary to Plaintiffs' assertion, this dispute—whether termination is proper after an employee declines a reassignment—lies at the heart of the MSPB's expertise. The MSPB regularly adjudicates these very types of employment disputes, and plaintiffs make no meaningful effort to distinguish Mr. Abramowitz's challenge from the countless others who also challenge their terminations or reassignment decisions. Indeed, Mr. Abramowitz appears to raise various procedural-related issues, albeit in ancillary fashions, that would fall within the MSPB's bailiwick. *See, e.g.*, ECF No. 59-1 at 4; ECF 64 at 3.

Finally, this Court does not write on a blank slate. The D.C. Circuit has already passed on this jurisdictional issue in this case, and this Court should follow its instructive interim decision. When Plaintiffs initially challenged the alleged "dismantling" Voice of America, including the Agency's decision to place certain personnel on administrative leave, *see, e.g.*, ECF No. 1 at 1, 4, this Court issued an injunction that, among other things, ordered the Agency to "restore all USAGM employees and personal service contractors . . . to their status prior to March 14, 2015." ECF No. 29 at 3. Defendants quickly appealed, and the D.C. Circuit stayed that portion of the injunction, concluding that the "district court likely lacked jurisdiction over USAGM's personnel actions." *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *2 (D.C. Cir. May 3, 2025). The D.C. Circuit explained that it has "long held that federal employees may not use the [APA] to challenge agency employment actions" and that "Congress has instead established comprehensive

statutory schemes for adjudicating employment disputes with the federal government." *Id.* (quotation omitted). The D.C. Circuit explained that these remedial schemes are the "exclusive procedures by which federal employees may pursue" employment-related claims and that USAGM employees must pursue their personnel actions through the remedial channels. *Id.* at *2–3 (quotation omitted).

Attempting to dodge the D.C. Circuit's reasoning, Plaintiffs argue that Mr. Abramowitz's claim now is "fundamentally" different than the ones the D.C. Circuit previously considered because it is "predicated on the violation of a specific mandate Congress extended." ECF No. 59 at 10–11. But Plaintiffs also predicated its Agency dismantlement arguments on congressional mandates. *See, e.g.*, ECF No. 1 at 4–5 (citing the International Broadcasting Act's statutory mandates and the Appropriations Act). If anything, the present fact pattern is easier. Instead of general claims about alleged Agency dismantling, Mr. Abramowitz now unequivocally (albeit prematurely) challenges a specific employment action—his termination after he declined to accept his reassignment. This Court lacks jurisdiction to adjudicate his employment dispute with the Agency.

### III.    <u>The International Broadcasting Act's removal procedures concerning the Voice of America Director are inconsistent with Article II and therefore unconstitutional.</u>

Plaintiffs contend that the Agency's Chief Executive Officer cannot remove Mr. Abramowitz from his position as the Voice of America Director because the Agency's organic statute, the International Broadcasting Act, 22 U.S.C. § 6101 *et seq*., requires removal only upon approval by the Advisory Board. *See* ECF No. 59 at 6; *see also* 22 U.S.C. § 6205(e)(2). But Article II requires that inferior executive officers be removable at will, and without impediment, by the President or by a department head acting on the President's behalf. *See* U.S. Const. Art. II, § 2, cl. 2. The statute makes clear that the USAGM Chief Executive Officer is the head of the Agency—

not the Advisory Board. Accordingly, a removal restriction that requires Advisory Board approval for the removal of the Voice of America Director, an inferior officer, is inconsistent with Article II and unlawful.

> **a. *Article II requires that inferior executive officers be removable at will, and without impediment, by the President or by a department head acting on the President's behalf.***

The Constitution vests the entirety of the "executive Power" in the President, who is given the sole responsibility to "take Care that the Laws be faithfully executed." U.S. Const. Art. II, § 1, cl. 1; *id.* § 3. "[A]s a general matter," the executive power encompasses "the authority to remove those who assist [the President] in carrying out his duties." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513–14 (2010). Without such power, the President would be unable to control those who aid him in executing the laws and "could not be held fully accountable for discharging his own responsibilities." *Id.* at 514.

For nearly a century, the Supreme Court has repeatedly reaffirmed "the President's power to remove—and thus supervise—those who wield executive power on his behalf." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020) (citing *Myers v. United States*, 272 U.S. 52 (1926)). The Supreme Court has recognized "only two exceptions to the President's unrestricted removal power." *Id.* at 204. First, in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Supreme Court held that Congress could impose for-cause removal restrictions on "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law*, 591 U.S. at 216. Second, in *Morrison v. Olson*, 487 U.S. 654 (1988), and *United States v. Perkins*, 116 U.S. 483 (1886), the Court recognized an exception "for inferior officers with limited duties and no policymaking or administrative authority." *Seila Law*, 591 U.S. at 218. Those exceptions represent the "outermost constitutional limits of permissible congressional restrictions on the President's removal power"

under current precedent. *Id.* (quotation omitted). The Supreme Court has recently twice reaffirmed this general rule and these "narrow exceptions." *See Wilcox*, 145 S. Ct. at 1415; *Boyle*, 2025 WL 2056889 at *1. Neither exception applies here. Indeed, Plaintiffs fail to even argue they do.

> **b. *The Voice of America Director is an inferior officer who exercises substantial policymaking and administrative authority and removable at will by the President or the USAGM Chief Executive Officer acting on his behalf.***

The Parties agree on two crucial points: The Voice of America Director is (1) an inferior officer and (2) removable at will under Article II. The dispute arises over whether the Advisory Board must also approve such a removal by majority vote. Plaintiffs contend that such approval is required under the statute. And the Government contends that such approval unlawfully impedes the removal authority contemplated in Article II.

"The President . . . must have some 'power of removing those for whom he can not continue to be responsible.'" *Free Enter. Fund*, 561 U.S. at 493 (quoting *Myers*, 272 U.S. at 117). The Constitution divides its officers into two classes: (1) principal officers, who are selected by the President with the advice and consent of the Senate and (2) inferior officers, who "Congress may allow to be appointed by the President alone, by the heads of departments, or by the Judiciary." *Morrison v. Olson*, 487 U.S. 654, 670 (1988) (quotation omitted). And the Supreme Court has observed that if Congress vests appointments in the heads of departments, then it is "ordinarily the department head, rather than the President, who enjoys the power of removal." *Free Enter. Fund*, 561 U.S. at 493.

Notably, there is no dispute that the Voice of America Director is an inferior officer. ECF No. 59 at 18 ("The head of VOA is an inferior officer."). Thus, under the Constitution, the Director may be removed at will and without impediment only by the President or the Agency head acting on the President's behalf. *See Wilcox*, 145 S. Ct. at 1415.

The International Broadcasting Act provides that the "head[] of Voice of America . . . may only be . . . removed if such action has been approved by a majority vote of the Advisory board." 22 U.S.C. § 6205(e)(1). Plaintiffs argue that the Voice of America Director's removal is the "joint responsibility" of the Chief Executive Officer and the Advisory Board. ECF No. 59 at 12. But that arrangement flies in the face of the Constitution. The International Broadcasting Act is clear, and Plaintiffs do not appear to dispute, that the head of USAGM is the Chief Executive Officer. 22 U.S.C. § 6203(b)(1) ("The head of the United States Agency for Global Media shall be a Chief Executive Officer."). Accordingly, the removal power is vested in the Chief Executive Officer as the head of the Agency acting on the President's behalf—not the Advisory Board.

In response, Plaintiffs contend that the Advisory Board is also presidentially appointed and thus the Chief Executive Officer and Advisory Board's "joint" action does not impermissibly restrict the removal power. ECF No. 59 at 11–12. But that response still ignores the constitutional text. Under Plaintiffs' logic, anyone who is presidentially appointed could share in the President's removal power because that person is removable at will and directly accountable to the President. *See* ECF No. 59 at 19. Although accountability is a primary rationale underlying the President's removal power, the rationale cannot overcome or contravene the constitutional text. And the constitutional prescription for removal power is not being presidentially appointed. The removal power of inferior officers is vested in "the President or in the Heads of Departments." U.S. Const. Art. II, § 2, cl. 2. Presidential appointment is beside the point. Contrary to Plaintiffs' assertion, a "joint" removal structure is not "the type of scheme the Supreme Court has repeatedly blessed." ECF No. 59 at 12 (citing *Free Enter. Fund*, 561 U.S. at 483, which dealt with for cause removal restrictions on principal officers and inferior officers—not the "joint" removal structure present here).

Plaintiffs' argument that the "removal restrictions themselves are not onerous" also misses the mark. ECF 59 at 19. Unconstitutional removal restrictions are still unconstitutional, whether onerous or not. But in this case, the restrictions are far-reaching. The statute does not distinguish between at will and good cause removal, *see* 22 U.S.C. § 6205(e), meaning the USAGM Chief Executive Officer cannot remove the Voice of America Director even for cause without the Advisory Board's approval. Here, where the Advisory Board currently lacks a quorum, that means the Chief Executive Officer would be unable to remove the Voice of America Director in the face of gross misconduct, for example. By way of illustration, the statute would prevent the USAGM Chief Executive Officer from being able to remove the Director for embezzling money from Voice of America or for other cause—a significantly more burdensome restriction than the pure for-cause provision in *Morrison*. *Morrison*, 487 U.S. at 689–90 (explaining that the goal of the Supreme Court's "removal cases" is to "ensure that Congress does not interfere with the President's exercise of the 'executive power' and his constitutionally appointed duty to 'take care that the laws be faithfully executed' under Article II").

Additionally, the International Broadcasting Act requires the Advisory Board to be bipartisan. 22 U.S.C. § 6205(b)(1), (3) (explaining that the Advisory Board shall be comprised of seven members—the Secretary of State and six members appointed by the President with the advice and consent of the Senate—but that "[n]ot more than three members of the Advisory Board . . . may be affiliated with the same political party"). By requiring a majority vote for removal, the statute effectively requires bipartisan consensus on removal. Requiring the President to obtain the approval of the opposition party is a significant restriction on his ability to supervise the Executive Branch. *See Free Enter. Fund*, 561 U.S. at 493 (explaining that the president must have the power to remove those "for whom he can not continue to be responsible" (quotation omitted)).

Moreover, because the Voice of America Director exercises significant policymaking and administrative authority, *Morrison*'s exception to the general rule of at will removal does not apply. Indeed, even Plaintiffs fail to argue it does. *See generally* ECF 59. Among other things, the Director manages and has overall responsibility for Voice of America's global multimedia content, and for Voice of America's administration. *See* Exhibit B. This responsibility includes the planning, organization and execution of all Voice of America operations, including ensuring that Voice of America programming and operations are consistent with International Broadcasting Act broadcasting standards and principles. *Id.* at 2. The Voice of America Director reports directly to the Agency's Chief Executive Officer; has a high degree of independence to meet strategic objectives; and represents Voice of America inside and outside the Agency, with government and non-governmental entities, on topics like U.S. international media and the budget. *Id.* at 2–4.

Atop that, the Voice of America Director's extensive policymaking and administrative authority is not limited to domestic matters; it expressly implicates areas of foreign affairs. The International Broadcasting Act charges Voice of America with "present[ing] the views of the United States Government"; "represent[ing] America"; and "present[ing] the policies of the United States clearly and effectively." 22 U.S.C. § 6202(b), (c). The very purpose of the International Broadcasting Act—which governs the Voice of America—is to "advanc[e] the goals of United States foreign policy" through international broadcasting. 22 U.S.C. § 6201. Voice of America, with its Director at its helm, is charged with serving the "long-range interests of the United States" "by communicating directly with the peoples of the world"; "win[ning] the attention and respect of listeners"; and providing "accurate, objective, comprehensive," "authoritative" source of news that "present[s] the policies of the United States clearly and effectively." 22 U.S.C. § 6202(c). In short, the statute charges Voice of America with "represent[ing] America," *id.*—a weighty duty

that entails significant policymaking and administrative authority in the foreign affairs space. The Government agrees with Plaintiffs: The Voice of America Director is an inferior officer. The narrow *Morrison* exception to the general rule of at will removal does not apply, and the statutory restriction requiring approval from the Advisory Board before the USAGM Chief Executive Officer can remove the Director from his or her position is an unconstitutional impediment on the Article II removal power and thus unlawful.

IV.    **This Court lacks the power to enjoin Mr. Abramowitz's removal as the Voice of America Director.**

In addition to the reasons described *supra*, pp. 6–7, this Court should decline to enter the injunction Plaintiffs seek because it is beyond its equitable powers. As explained above, the President or the USAGM Chief Executive Officer acting on the President's behalf is vested with the authority to remove inferior officers. But even if Plaintiffs prevail on the merits, this Court should deny the injunctive relief that Plaintiffs seek.

This Court lacks the power to issue an order enjoining the removal of executive officers. Traditionally, executive officers challenging their removal by the President have sought back pay, not reinstatement. *See Wiener v. United States*, 357 U.S. 349, 350 (1958) (suit "for recovery of his salary"); *Humphrey's Executor*, 295 U.S. at 612 (suit "to recover a sum of money alleged to be due . . . for salary"); *Myers*, 272 U.S. at 106 (suit "for his salary from the date of his removal"); *Shurtleff v. United States*, 189 U.S. 311, 318 (1903) (suit "for salary"); *Parsons v. United States*, 167 U.S. 324, 326 (1897) (suit "for salary and fees"). That rule reflects the obvious separation of powers problems that arise if a court attempts to reinstate—that is, reappoint—an executive officer removed by the President or by a department head acting on the President's behalf. The President cannot be compelled to retain the services of an officer whom he no longer believes should be entrusted with the exercise of executive power. *See Harris v. Bessent*, No. 25-5037, 2025 WL

1021435, at *4 (D.C. Cir. Apr. 7, 2025) (Rao, J., dissenting) ("The government is likely to succeed on its remedial challenge because the injunctive relief concocted by the district court is wholly unprecedented and transgresses historical limits on our equitable authority."). And the courts may not exercise the appointment power for executive officers, which the Constitution vests in the President alone or in department heads acting on his behalf.

Indeed, many members of the First Congress argued against requiring the Senate's advice and consent for removals precisely because of the risk that such a procedure would require the President to retain someone he had sought to remove. As Representative Benson observed: "If the Senate, upon its meeting, were to acquit the officer, and replace him in his station, the President would then have a man forced on him whom he considered as unfaithful." *Myers*, 272 U.S. at 124 (citation omitted). Representative Boudinot argued: "But suppose [the Senate] shall decide in favor of the officer, what a situation is the President then in, surrounded by officers with whom, by his situation, he is compelled to act, but in whom he can have no confidence." *Id.* at 131–32 (citation omitted). And Representative Sedwick asked rhetorically: "Shall a man under these circumstances be saddled upon the President, who has been appointed for no other purpose but to aid the President in performing certain duties? Shall he be continued, I ask again, against the will of the President?" *Id.* at 132 (citation omitted). The broad injunctive relief Plaintiffs seek raises just this problem.

An injunction preventing the removal of Mr. Abramowitz would also exceed the scope of this Court's equitable powers. A federal court may grant only those equitable remedies that were "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). Reinstatement of an executive officer is not such a remedy. "It is . . . well settled that a court of equity has no jurisdiction over the appointment and removal of public officers." *In re Sawyer*, 124 U.S. 200, 212 (1888). Instead, the Supreme Court explained,

"[t]he jurisdiction to determine the title to a public office belongs exclusively to the courts of law," for instance through suits for back pay. *Id.* Thus, "the power of a court of equity to restrain by injunction the removal of a [public] officer has been denied in many well-considered cases." *Id.*; *see, e.g.*, *Baker v. Carr*, 369 U.S. 186, 231 (1962) (decisions that "held that federal equity power could not be exercised to enjoin a state proceeding to remove a public officer" or that "withheld federal equity from staying removal of a federal officer" reflect "a traditional limit upon equity jurisdiction[]"); *Walton v. House of Representatives*, 265 U.S. 487, 490 (1924) ("A court of equity has no jurisdiction over the appointment and removal of public officers."); *Harkrader v. Wadley*, 172 U.S. 148, 165 (1898) ("[T]o sustain a bill in equity to restrain . . . the removal of public officers, is to invade the domain of the courts of common law, or of the executive and administrative department of the government."); *White v. Berry*, 171 U.S. 366, 377 (1898) ("[A] court of equity will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another.") (citation omitted); *Bessent v. Dellinger*, 145 S. Ct. 515, 517 (2025) (Gorsuch, J., dissenting) (explaining that, "by the 1880s this Court considered it 'well settled that a court of equity has no jurisdiction over the appointment and removal of public officers'" (quoting *In re Sawyer*, 124 U. S. at 212)).

Plaintiffs fail to cite any authority for this Court's ability to enjoin the removal of an executive officer. This Court should decline to wade into these novel waters. The appropriate remedy for this employment dispute is instead the statutory scheme that Congress created (*i.e.*, the MSPB or OSC).

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion for partial summary judgment.

Dated: August 5, 2025                    Respectfully submitted,

                                         BRETT A. SHUMATE
                                         Assistant Attorney General

                                         ERIC J. HAMILTON
                                         Deputy Assistant Attorney General
                                         Civil Division, Federal Programs Branch

                                         /s/ *Abigail Stout*
                                         ABIGAIL STOUT
                                         (DC Bar No. 90009415)
                                         *Counsel*
                                         U.S. Department of Justice
                                         Civil Division
                                         950 Pennsylvania Avenue, NW
                                         Washington, DC 20530
                                         Telephone: (202) 514-2000
                                         Email: Abigail.Stout@usdoj.gov

                                         *Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 5, 2025, I caused the foregoing to be served on counsel of record via the Court's electronic case filing system.

/s/ Abigail Stout
Abigail Stout
*Attorney for Defendants*