# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PATSY WIDAKUSWARA *et al.*, <br><br> *Plaintiffs,* <br><br> –v.– <br><br> KARI LAKE *et al.*, <br><br> *Defendants.* | Case No. 25-cv-1015-RCL |
| MICHAEL ABRAMOWITZ *et al.*, <br><br> *Plaintiffs,* <br><br> –v.– <br><br> KARI LAKE *et al.*, <br><br> *Defendants.* | Case No. 25-cv-00887-RCL |

**PLAINTIFFS' JOINT RESPONSE TO JULY 30, 2025 ORDER TO SHOW CAUSE**

Two-and-a-half months after the commencement of the show-cause proceedings, and despite three opportunities to present a meaningful plan to operate Voice of America (VOA) and an order from the Court requiring specific information, Defendants have neither explained how they are complying with Part III of the preliminary injunction nor offered a path toward compliance. As explained below, Defendants are in contempt of this Court's order to show cause. Plaintiffs urge the Court to hold Defendants in contempt. To remedy the contempt and to facilitate Plaintiffs' obtaining the information this Court ordered Defendants to produce, Plaintiffs request that they be allowed to take expedited depositions of up to three of the individuals who have submitted declarations to the Court concerning compliance with the preliminary injunction and the matters discussed in their declarations, in addition to any other sanctions this Court might deem appropriate.

Nearly five months ago, VOA went dark for the first time since its inception during World War II. On April 22, 2025, this Court found that Defendants "took immediate and drastic action to slash USAGM, without considering its statutorily or constitutionally required functions as required by the plain language of the EO, and without regard to the harm inflicted on employees, contractors, journalists, and media consumers around the world." *Widakuswara v. Lake*, 779 F. Supp. 3d 10, 35 (D.D.C. 2025). As a result, "defendants are likely in direct violation of numerous federal laws," including provisions of the VOA Charter and International Broadcasting Act, as well as congressional appropriations laws. *Id.* at 35-36. The Court took immediate action, issuing a preliminary injunction that, as relevant here, required Defendants to "restore VOA programming such that USAGM fulfils its statutory mandate that VOA 'serve as a consistently reliable and authoritative source of news.'" *Id.* at 40 (quoting 22 U.S.C. § 6202(c)).

1

As this Court noted in issuing the April 22 preliminary injunction, USAGM showed "no signs of returning" to active operations at all until, as a result of prior "successive bouts of injunctive relief" in this Court and the Southern District of New York, it re-emerged "as a skeletal version of its former self." *Id.* at 22 n.21. When, following this Court's issuance of the April 22 preliminary injunction, VOA had still only resumed at most *de minimis* operations, Plaintiffs each filed motions for an order to show cause to gauge Defendants' level of compliance. 25-cv-1015, ECF No. 112; 25-cv-887, ECF No. 37.[1] As part of the show-cause process, Plaintiffs also requested that Defendants be ordered to develop a plan to bring themselves into compliance with the preliminary injunction. *Id.* The *Widakuswara* plaintiffs further requested—and Defendants opposed—limited expedited discovery. *See* 25-cv-1015, ECF No. 123 n.5 (Defendants arguing that discovery requested by Plaintiffs was not proper because the preliminary injunction was granted on APA grounds).

At every juncture of the show-cause process, Defendants have obfuscated and resisted explaining how they are complying with the preliminary injunction. Defendants' non-answers and contradictory responses are captured in the various briefs filed by the parties. But this Court is also acutely aware of Defendants' continued intransigence. Indeed, the Court found, *even in response to a direct Court order*, that Defendants:

1. "continue to provide cagey answers and omit key information" related to "VOA's future operational capacity and staffing levels", ECF No. 62 at 3;

2. "made no mention of th[e] monumental personnel decision" to remove Michael Abramowitz from his position as Director of VOA, *id.* at 4;

3. failed to adequately explain how they are spending the $260 million that Congress appropriated to VOA for Fiscal Year 2025, instead "parroting back the amount of money being paid for furloughed employees to do nothing," *id.* at 5-6;

---

[1] For ease of reference and unless otherwise noted, record citations are to Case No. 25-cv-887.

2

4. did not "provide information on staffing that gives a realistic picture of how VOA will be operating moving forward," *id* at 6; and

5. provided "descriptions of their activities [that] are cryptic and even misleading" related to broadcasting levels, language services, and transmitting capacity, *id.* at 7-9, including, for example, "fail[ing] to engage with the additional statutory provisions regarding required language programming" in languages other than Dari, Pashto, Farsi, and Mandarin (e.g., Kurdish programming, Croation and Serbian programs within the Yugoslavia section, and broadcasting into North Korea).

Rightly, this Court deemed that insufficient. Part III of the preliminary injunction plainly requires more. "VOA's staffing levels are inextricably intertwined with its operational capacity and, in turn, its ability to carry out its statutory mandate, because VOA cannot operate without employees." *Id.* at 4. And VOA's appropriations, reflecting Congress's understanding of the level of required operations, must be spent by "VOA *to carry out its statutory mandate* with news and broadcasting operations." *Id.* at 6. Indeed, "surely, when Congress appropriated $260 million to VOA for FY 2025, it did not anticipate that such a significant sum of taxpayer funds would be used to pay employees to sit at home for months on end, making no contributions to VOA's statutory mandate." *Id.* Rather, Defendants must "engage with the additional statutory provisions regarding required language programming" in appropriations acts. *Id.* at 8. Thus, after "provid[ing] the defendants with every opportunity to demonstrate that they are complying with the preliminary injunction in good faith," the Court ordered Defendants to show cause and to produce information and documents reflecting their plan to, *inter alia* "restore[] VOA programming such that VOA is producing and broadcasting news consistent with the International Broadcasting Act[] in each relevant medium." *Id.* at 10.

In what has now become routine, Defendants have failed to produce the required information and to demonstrate that they are in compliance with Part III of the preliminary injunction. In fact, their response to the order to show cause produced almost no new information.

3

In addition to documents this Court has already seen, Defendants simply submitted an affidavit from Defendant Kari Lake, who claimed for the first time and without any explanation that she has been serving as Acting CEO of USAGM—the "politically appointed representative to run USAGM," ECF No. 69-2 ¶ 33—since late July, following an apparently less-than-two-week stint as Deputy CEO of USAGM. *Compare id.* ¶ 1 *with* ECF No. 57-1 ¶ 1 (July 18, 2025 declaration in which Defendant Kari Lake identified herself as Senior Advisor). This declaration basically parrots Defendants' earlier answers that this Court already found to be inadequate. Defendants are in contempt of the Court's order to show cause. The Court should therefore levy appropriate sanctions, in its discretion, until Defendants comply with the order to show cause. Plaintiffs defer to the Court's discretion as to what sanctions are appropriate but would suggest in particular that the Court order that Plaintiffs be allowed to select no more than three of the witnesses from whom Defendants have submitted declarations to sit for expedited deposition testimony within the next 10 days.

## I. Defendants are in Contempt of the Court's July 30 Order to Show Cause.

The Court's order to show cause is clear, concise, and leaves no room for doubt. Defendants were required to produce specific information and documents reflecting their plan to operate VOA consistent with the preliminary injunction, which means consistent with the International Broadcasting Act, VOA Charter, and appropriations law. ECF No. 62 at 10-11. Rather than comply with that order, however, Defendants have produced essentially no new information in addition to that deemed insufficient during the show-cause proceedings, *see* ECF No. 69-1 (Defendants produced only copies of the same letters to Congress and memorandum concerning what positions they intend to retain, a letter concerning sale of the Cohen Building, and ground rules for future negotiations about RIFs that contain no details about the agency's actual reorganization plans), or

4

have recycled the same tired talking points from prior declarations, *see* ECF No. 69-2 ¶ 7 ("USAGM had decided, utilizing its inherent executive discretion to manage its operations as it moves forward, not to broadcast in languages or to nations or locations … not required by the International Broadcasting Act."). To take one notable example, despite this Court's express dissatisfaction regarding "defendants['] fail[ure] to engage" with "statutory provisions regarding required language programming" in addition to the four language services (Dari, Pashto, Farsi, and Mandarin) Defendants have minimally continued, ECF No. 62 at 8, Defendants once again offer only the conclusory statement that "USAGM has identified the [four] language services it is required to maintain … in accordance with the International Broadcasting Act and other federal statutes" without any explanation as to why *other* statutes directing other language programming are not also required, ECF No. 69-2 ¶ 6. *See also* 25-cv-1015, ECF No. 120 at 4-6 (Plaintiffs' reply brief setting forth statutory obligations and noting that Defendants themselves rely on congressional appropriations law to conclude Farsi is required).

Defendants are in contempt.

"A civil contempt action is characterized as remedial in nature, used to obtain compliance with a court order or to compensate for damages sustained as a result from noncompliance." *United States v. Shelton,* 539 F.Supp.2d 259, 262 (D.D.C. 2008) (citing *Evans v. Williams,* 206 F.3d 1292, 1294-95 (D.C. Cir. 2000)). The moving party must show by clear and convincing evidence "that: (1) there was a clear and unambiguous court order in place; (2) that order required certain conduct by Defendants; and (3) Defendants failed to comply with that order." *United States v. Latney's Funeral Home, Inc.*, 41 F. Supp. 3d 24, 29-30 (D.D.C. 2014). Once the movant has made the above showing, "the burden shifts to the defendant to justify the noncompliance" with "adequate detailed proof." *Secs. & Exch. Comm'n v. Showalter*, 227 F. Supp. 2d 110, 120 (D.D.C. 2002).

The Court's order to show cause is clear and unambiguous and requires Defendants to produce information and documents responsive to discrete categories. *See, e.g.*, *Commodity Futures Trading Comm'n v. Wonsey*, No. MC 21-13 (JDB), 2021 WL 5881974, at *1-2 (D.D.C. Dec. 9, 2021) (finding order requiring production of documents and other information clear and unambiguous) (collecting cases). And a basic comparison of what the Court required and what Defendants produced illustrates that Defendants have violated the Court's order to show cause in numerous respects:

| **What the Court Ordered** | **Defendants' Contemptuous Response** |
|---|---|
| An explanation of how Defendants have restored VOA programming consistent with the International Broadcasting Act in each relevant medium and for each language in which VOA is operating. ECF No. 62 at 10. | Repeating that VOA disseminates programming in only four languages, with almost no television or radio broadcasting, with no explanation why the statutory provisions cited as requiring those four language services are mandatory while others are not. ECF No. 69-2 ¶ 6. Despite the Court's previous admonition that "defendants have never actually reported any *radio* or *television* broadcasting in Mandarin" as required by the IBA, ECF No. 62 at 7-8, Defendants report that "VOA covers news in Mandarin via the internet and major social media platforms" without any explanation why they are not broadcasting in Mandarin via radio or television or whether they have any plans to do so in the future. ECF No. 69-2 ¶ 6. |
| An explanation of how Defendants' actions are consistent with appropriations. ECF No. 62 at 10. | Repeating the exact broad categories of spending previously identified. ECF No. 69-2 ¶¶ 28-32. No explanation of how placing approximately 600 employees on administrative leave and paying employees to not work is consistent with the appropriation. No explanation of how operating only four language services is consistent with the agency's FY 2025 Budget Justification, which stated "how many hours it intended to broadcast to 100 countries in forty-eight languages." ECF No. 62 at 4. |

| | |
|---|---|
| Information concerning USAGM employees recalled from administrative leave, including "whether they are actively working on VOA programing," "what work product they have produced," and "the precise number of USAGM employees on administrative leave" ECF No. 62 at 11. | Once again listing employees' roles with no information concerning what those employees are doing; failing to answer how many employees are presently on leave; and again stating that "the number is always subject to change as USAGM manages its inherently executive operations." ECF No. 69-2 ¶¶ 10-15. |
| Production of all documents reflecting Defendants' plan to restore VOA programming in line with the preliminary injunction and VOA's statutory mandate. ECF No. 62 at 11. | Defendants produced no documents reflecting any plan to restore VOA programming in the manner this Court required. |
| Production of all documents concerning anticipated RIFs or terminations of staff, including but not limited to any Agency RIF and Reorganization Plan (ARRP) and lists of positions to be covered by any future RIFs. ECF No. 62 at 11. | Defendants produced only ground rules for future negotiations between the unions and USAGM concerning RIFs, ECF No. 69-1, but no detailed information regarding the agency's own plans for those RIFs other than a reference to "the possibility of one or more future RIFs of USAGM employees who are currently on administrative leave," ECF No. 69-2 ¶ 18. No production (or reason provided for failure to produce) the list of positions that the agency plans to cover in future RIFs, or the ARRP presumably created by the agency to comply with President Trump's February 11, 2025 Executive Order *Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative (Workforce Optimization)*.[2] |
| Production of all documents relating to plans to wind down USAGM operations. ECF No. 62 at 11. | Defendants produced no documents concerning plans to wind down USAGM, despite repeated comments from Defendants and other members of the administration that this is their plan. Although Defendants state for the first time that they will need Congressional authorization to wind down USAGM, under the Court's order they were still required to produce their plans to close the agency. |

---

[2] *See* U.S. Office of Management and Budget and U.S. Office of Personnel Management, *Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative*, Feb. 26, 2025, https://perma.cc/VG3S-MLBY.

Defendants cannot justify their noncompliance with the Court's order to show cause, which simply requires basic explanations and their production of information and documents which likely already exist. To the extent that this information does not exist, and Defendants have no plan to operate VOA consistent with Part III of the preliminary injunction, the show-cause order provided Defendants with yet another opportunity to cure their disregard for the preliminary injunction and VOA's statutory mandates. To be clear, Defendants' continued refusal to answer the Court's questions and provide the Court's requested information about how they are complying with the preliminary injunction represents a failure greater than its individual parts. It shows that Defendants will continue to refuse to operate VOA in a lawful manner and not allow even the most basic oversight of their compliance with the preliminary injunction.[3] Defendants are plainly in contempt.

## II.     The Court Should Exercise its Authority to Remedy Defendants' Contempt.

Because Defendants are in clear violation of the Court's order to show cause and have refused to provide the information required to gauge their compliance with the preliminary injunction, Plaintiffs respectfully request that the Court exercise its equitable powers to remedy Defendants' civil contempt.

The Court has ample discretion to fashion an appropriate remedy for this contempt. After a court determines that a party is "in civil contempt, the only remaining question is the appropriate

---

[3] *See also, e.g.*, NewsTalk 550 KFYI, *TX Dems in Illinois, Beto Rash, No Prayer, Kari Lake, & Trump takes over*, https://kfyi.iheart.com/featured/the-conservative-circus-with-james-t-harris/content/2025-08-11-1248-the-conservative-circus-w-tx-dems-in-illinois-beto-rash-no-prayer-kari/ at 46:44 (Defendant Kari Lake last week claiming that "of course I've got a judge here in Washington, D.C., I've got five cases against me as I try to scale this monster, this beast back and right size it, I mean I've got a judge who's threatening me with contempt of court like, throwing me in prison, if I don't produce more of the propaganda that he wants me to produce").

sanction to impose." *U.S. Bank Nat'l Ass'n v. Poblete*, No. CV 15-00312 (BAH), 2017 WL 4736712, at *3 (D.D.C. Oct. 19, 2017). "Federal courts have broad equitable powers to craft remedial sanctions for civil contempt." *Latney's Funeral Home*, 41 F. Supp. 3d at 37 (citing *Secs. & Exch. Comm'n v. Levine*, 671 F. Supp. 2d 14, 36 (D.D.C. 2009)); *see Poblete*, 2017 WL 4736712, at *4 ("A primary aspect of a district court's discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." (cleaned up)). For example, a court can order graduated sanctions. *See, e.g.*, *Hatfill v. Mukasey*, 539 F. Supp. 2d 96, 99 n.5 (D.D.C. 2008) (imposing graduated per diem contempt fines escalating to $5,000 per day). Plaintiffs defer to the Court's discretion how to exercise this equitable power.

In particular, however, and in light of the lack of information contained in Defendants' response to this Court's order, the Court could obtain further clarity from Defendants by permitting Plaintiffs to conduct limited expedited discovery, in the form of fast-tracked depositions of no more than three of Defendants' declarants, concerning compliance with Part III of the preliminary injunction and the matters discussed in those declarants' declarations. *See, e.g.*, *Abrego Garcia v. Noem*, 348 F.R.D. 589, 593 (D. Md. 2025) (granting plaintiff's motion for expedited discovery, including depositions of four Department of Homeland Security officials, to "ascertain what, if anything, the Defendants [had] done" to comply with the court's preliminary injunction).

Dated: August 22, 2025

Respectfully submitted,

ZUCKERMAN SPAEDER LLP

_____/s/_____
William B. Schultz
Margaret M. Dotzel
Brian J. Beaton, Jr.
Jacobus P. van der Ven
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
wschultz@zuckerman.com
mdotzel@zuckerman.com
bbeaton@zuckerman.com
cvanderven@zuckerman.com

*Counsel for Plaintiffs Michael Abramowitz, Anthony LaBruto, and J Doe 2*

AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, AFL-CIO (AFSCME)

_____/s/_____
Teague Paterson
Matthew Blumin
Georgina Yeomans
1625 L Street, N.W.
Washington, D.C. 20036
(202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org
GYeomans@afscme.org

*Counsel for Plaintiff American Federation of State, County, and Municipal Employees, AFL-CIO (AFSCME)*

DEMOCRACY FORWARD FOUNDATION

_____/s/_____
Kristin Bateman*
Robin F. Thurston
Skye L. Perryman
P.O. Box 34553

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

_____/s/_____
Andrew G. Celli, Jr.
Debra L. Greenberger
Daniel M. Eisenberg
Nick Bourland
One Rockefeller Plaza, 8th Floor
New York, New York 10020
(212) 763-5000
acelli@ecbawm.com
dgreenberger@ecbawm.com
deisenberg@ecbawm.com
nbourland@ecbawm.com

*Counsel for Plaintiffs Patsy Widakuswara, Jessica Jerreat, Kathryn Neeper, John Doe 1, John Doe 2, John Doe 3, John Doe 4, American Federation of State, County and Municipal Employees (AFSCME); American Federation of Government Employees (AFGE); American Foreign Service Association (AFSA); and the NewsGuild-CWA*

AMERICAN FOREIGN SERVICE ASSOCIATION

_____/s/_____
Sharon Papp
Raeka Safai
2101 E Street, N.W.
Washington, D.C. 20037
(202) 338-4045
papp@afsa.org
safai@afsa.org

*Counsel for Plaintiff American Foreign Service Association (AFSA)*

Washington, DC 20043
(202) 448-9090
kbateman@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org

*Counsel for Plaintiffs American Federation of State, County and Municipal Employees (AFSCME); American Federation of Government Employees (AFGE); American Foreign Service Association (AFSA);the NewsGuild-CWA*

\*Admitted in California only; practicing under the supervision of District of Columbia Bar members

GOVERNMENT ACCOUNTABILITY PROJECT

_____/s/_____
David Z. Seide
1612 K Street, NW
Washington, DC 20006
(202) 457-0034
davids@whistleblower.org

*Counsel for Plaintiffs Patsy Widakuswara, Jessica Jerreat, Kathryn Neeper, John Doe 1, John Doe 2, John Doe 3, and John Doe 4*

STATE DEMOCRACY DEFENDERS FUND

_____/s/_____
Norman L. Eisen
Joshua Kolb
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
Norman@statedemocracydefenders.org
Joshua@statedemocracydefenders.org

*Counsel for Reporters Sans Frontières, Reporters Without Borders, Inc., American Federation of State, County and Municipal Employees (AFSCME); and American Federation of Government Employees (AFGE)*

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO

_____/s/_____
Rushab Sanghvi
80 F. Street, NW
Washington, DC 20001
(202) 639-6424
SanghR@afge.org

*Counsel for Plaintiff American Federation of Government Employees, AFL-CIO (AFGE)*

MEDIA FREEDOM & INFORMATION ACCESS CLINIC - YALE LAW SCHOOL\*\*

_____/s/_____
David A. Schulz
127 Wall Street
New Haven, CT 06520
tobin.raju@YLSClinics.org
David.schulz@YLSClinics.org

*Counsel for Plaintiffs Patsy Widakuswara, Jessica Jerreat, Kathryn Neeper, and John Does 1-4*

\*\* The views expressed herein do not purport to represent the institutional views of Yale Law School, if any.

11