UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL ABRAMOWITZ, *et al.*,<br><br>                  Plaintiffs,<br><br>        v.<br><br>KARI LAKE, *et al.*,<br><br>                  Defendants. | Civil Action No. 25-cv-0887 (RCL) |

**MOTION TO STAY PENDING APPEAL**

Defendants respectfully move to stay the Court's Order entered August 28, 2025 (ECF 75, "Order") and explained in its Memorandum Opinion (ECF 76, "Op."), until Defendants' appeal of the Order is decided because the Order raises significant constitutional questions, imposes a major limitation on the core Executive function of choosing and removing personnel, and inflicts ongoing, irreparable harm on the Government. Undersigned Counsel for Defendants discussed this Motion with Counsel for Plaintiffs, who stated that they oppose the Motion.

**INTRODUCTION**

The Court's Order rests on the resolution of important legal questions that should be resolved through appellate review before the Acting Chief Executive Officer ("CEO") of an executive Agency—acting on the President's behalf—is constrained from removing officers of an executive entity. In March, Michael Abramowitz, the Voice of America ("VOA") Director, and three other VOA employees sued the U.S Agency for Global Media ("USAGM"); Kari Lake, in her official capacity as Senior Advisor to the Acting CEO of USAGM; and Victor

Morales, in his official capacity as Acting CEO of USAGM. ECF. 1. Plaintiffs challenged the "dismantl[ing]" of VOA. *See, e.g.*, *id.* at 4. At that time, Mr. Abramowitz had been placed on administrative leave. ECF 59-1 at 3. Months later, Mr. Abramowitz received a notice of reassignment, which warned that "declin[ing] to accept [the] reassignment" could "subject [Mr. Abramowitz] to removal under adverse action procedures pursuant to 5 U.S.C. § 7543," ECF 59-1 at 8, and a notice of proposed removal after Mr. Abramowitz declined to accept the reassignment, ECF 65-1.

Before any employment action occurred, Plaintiffs filed a Motion for Partial Summary Judgment in this Court. ECF 59. They sought the extraordinary relief of "enjoin[ing] Defendants from removing [Mr. Abramowitz] from his position as VOA director unless [Defendants] comply with 22 U.S.C. § 6205(e)." *Id.* at 21. For reasons fully explained in Defendants' Response in Opposition to that Motion, ECF 65 ("Opp."), and revisited *infra*, this Court lacks jurisdiction over Mr. Abramowitz's employment dispute and 22 U.S.C. § 6205(e) poses an unconstitutional removal requirement under Article II. Yet after briefing and a hearing, the Court granted the Motion as to Count 1—Plaintiffs' claim for violation of the Administrative Procedure Act (APA). *See* Order at 1. Under the Order, Defendants are permanently enjoined "from removing Plaintiff Abramowitz from his position as director of Voice of America without the approval of a majority of the International Broadcasting Advisory Board." *Id.*

The Court should stay its Order. Defendants are highly likely to prevail on the merits of their appeal, especially as to their arguments that the Court lacks jurisdiction because Mr. Abramowitz's claim is in the wrong forum and that the statutory removal restrictions applicable to the VOA Director are unconstitutional. Although the Court has disagreed with those arguments, that disagreement does not diminish the force of recent appellate and Supreme Court

decisions either adopting those arguments in very similar circumstances or staying lower-court injunctions against similar personnel actions. Moreover, the Supreme Court has clearly determined that the Executive Branch should be able to proceed with personnel actions while litigation proceeds. *See, e.g.*, *Trump v. Boyle*, 145 S. Ct. 2653 (2025); *Trump v. Wilcox*, 145 S. Ct. 1415 (2025); *see also Trump v. Am. Fed'n of Gov't Emps.*, 145 S. Ct. 2635 (2025) (mem.) ("*AFGE 2*"); *McMahon v. New York*, 145 S. Ct. 2643 (2025) (mem.); *OPM v. Am. Fed'n of Gov't Emps.*, 145 S. Ct. 1914 (2025) (mem.). Those interim orders "inform how a court should exercise its equitable discretion in like cases." *Boyle*, 145 S. Ct. at 2654.

The remaining factors also support a stay. Defendants will be irreparably harmed without a stay; indeed, the minute it was entered, the Court's Order imposed a major intrusion on the Executive's prerogatives over personnel and policy. That harm cannot be undone, but the Court should pause its Order to prevent further harm. The balance of equities and public interest likewise favor a stay. Termination is not an irreparable harm to the officer, as the D.C. Circuit recently held in an analogous case involving an Executive official. *See Dellinger v. Bessent*, No. 25-5052, 2025 WL 887518, at *4 (D.C. Cir. Mar. 10, 2025). Meanwhile, the Government may never recover the salary paid to Mr. Abramowitz while the Court's Order remains in effect. Even more fundamentally, the Court lacks equitable authority to order what amounts to the remedy of reinstatement. All of these factors combine to make the balance of equities weigh heavily in favor of a stay.

## ARGUMENT

To determine whether a stay should issue, courts consider "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will

substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (citation omitted). Those factors strongly favor a stay here.

### I. Defendants are highly likely to succeed on the merits.

Although Defendants raised several arguments for why the Court should not have granted summary judgment—and they maintain the correctness of those arguments—Defendants focus here on two arguments that have a demonstrated likelihood of success on appeal. Defendants first note why their argument that the Court lacks jurisdiction warrants a stay and then turn to their constitutional challenge to 22 U.S.C. § 6205(e).[1]

**1.** This Court lacks jurisdiction over Mr. Abramowitz's employment challenge because the Civil Service Reform Act ("CSRA") channels that challenge instead to the Merit Systems Protection Board ("MSPB") or Office of Special Counsel ("OSC"). Under the controlling *Thunder Basin* framework, "Congress intended that a litigant proceed exclusively through a statutory scheme . . . when (i) such intent is fairly discernible in the statutory scheme, and (ii) the litigant's claims are of the type Congress intended to be reviewed within [the] statutory structure." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump* ("*AFGE*"), 929 F.3d 748, 754 (D.C. Cir. 2019). The application of that framework is clear here. The CSRA "established a comprehensive system for reviewing personnel action taken against federal employees." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012) (quotation omitted). And the Supreme Court and D.C. Circuit have made plain that the CSRA provides "the *exclusive* avenue for suit" to a

---

[1] Although they focus on these two arguments for the purposes of this Motion, Defendants do not concede that the Court's resolution of their other arguments was correct, and they reserve the right to reassert those arguments on appeal or at later stages in the litigation. *See, e.g.*, Opp. at 5–10 (arguing that Plaintiffs' Partial Summary Judgment Motion was not ripe and was procedurally improper).

plaintiff whose claims fall within its scope. *Grosdidier v. Chairman, Broad. Bd. of Governors*, 709 F.3d 19, 23–24 (D.C. Cir. 2013) (emphasis added). Mr. Abramowitz's challenge to his termination fits the bill.

The second step of the *Thunder Basin* analysis also dictates that Mr. Abramowitz brought his claims in the wrong forum. "Claims will be found to fall outside of the scope of a special statutory scheme in only limited circumstances, when (1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claim[s] [are] wholly collateral to the statutory review provisions; and (3) the claims are beyond the expertise of the agency." *AFGE*, 929 F.3d at 755 (quotation omitted; alternations in original). Here, none of those factors are met. As this Court agreed, *see* Op. at 12, a finding of CSRA preclusion would not foreclose meaningful judicial review here. A comprehensive, exclusive review scheme does not recede because judicial review comes after agency review or because review may take time. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994); *Axon Enter. v. Federal Trade Commission*, 598 U.S. 175, 190 (2023).

Next, Mr. Abramowitz's claim is not "wholly collateral" to the CSRA's statutory scheme. Although the Court disagreed based in part on its determination that Mr. Abramowitz's challenge "raises the issue . . . of whether Congress's structuring of the appointment and removal of the director of Voice of America runs afoul of constitutional separation of powers," Op. at 13, that an adverse employment claim implicates the Constitution does not make the claim collateral. Courts have repeatedly concluded that the CSRA provides meaningful judicial review even in the face of statutory or constitutional arguments. *See, e.g.*, *Elgin*, 567 U.S. at 21–23 (explaining that the Federal Circuit can consider and decide constitutional claims and that the MSPB "routinely considers" statutory and constitutional claims). Similarly, claims that

5

his termination violates a statute do not make Mr. Abramowitz's claim collateral. *See, e.g.*, *AFGE*, 929 F.3d at 760 (explaining that disputes over whether the statute has been violated are not wholly collateral to the statutory scheme). *Contra* Op. at 13. Moreover, contrary to the Court's conclusion that Mr. Abramowitz does not "dispute the defendants' proffered reasons for firing him or challenge an underlying USAGM employment policy," Op. at 13, Mr. Abramowitz *does* raise questions about the reasons for his proposed removal. Indeed, in the first paragraph of Plaintiff's Motion for Partial Summary Judgment, Mr. Abramowitz asserted that the Agency "decided to unilaterally remove him from his post, without cause of even an explanation. He can only guess at the reason." ECF No. 59 at 8.

Finally, the claim is not beyond the "expertise" of the MSPB or OSC. This case presents a discrete employment dispute about an individual employee's removal—the type of dispute regularly adjudicated by those entities. This Court disagreed, determining that Mr. Abramowitz's claims do not "involve 'threshold' and other 'questions unique to the employment context.'" *Id.* at 14 (quoting *Axon*, 598 U.S. at 187–89). But the Court's reasoning fell back on its view that constitutional questions and "challenges to agency structure" should go to the courts in the first instance. *See id.* As noted, that view is incorrect in this context because even constitutional and statutory arguments are channeled by the CSRA when they arise in challenges to employment actions. Indeed, contrary to the Court's reasoning, this case is not like *Axon*, where the plaintiffs' claims went to the "core of the [Agency's] existence" and was not connected to "any specific substantive decision—say, to fining a company (*Thunder Basin*) or firing an employee (*Elgin*)." *Axon*, 598 U.S. at 189. Instead, this case is more like *Elgin*, which also involved the termination of an employee. *See id.* The issue should be tested through the appellate process before this Court's Order is in effect any longer.

In sum, Mr. Abramowitz's claim—a challenge to a future adverse employment action based on his failure to accept his reassignment—is the quintessential claim contemplated by the CSRA. As the Court is aware, a closely related CSRA channeling argument succeeded in an appeal from an earlier ruling in this litigation. Specifically, the D.C. Circuit stayed the portion of this Court's preliminary injunction that ordered the Agency to "restore all USAGM employees and personal service contractors . . . to their status prior to March 14, 2015." ECF 29 at 3. The panel held that the "district court likely lacked jurisdiction over USAGM's personnel actions," that it has "long held that federal employees may not use the [APA] to challenge agency employment actions," and that "Congress has instead established comprehensive statutory schemes for adjudicating employment disputes with the federal government." *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *2 (D.C. Cir. May 3, 2025) (citation omitted). Although this Court has declined to follow that guidance in ruling on Plaintiffs' Motion for Partial Summary Judgment, it should stay its Order in recognition that the D.C. Circuit may disagree with its contrary reasoning—reasoning which again uses the APA to address an employment dispute.

Lastly, the Supreme Court has recently stayed injunctions in two cases where the government argued that CSRA channeling applied. *See AFGE 2*, 145 S. Ct. 2635; *McMahon*, 145 S. Ct. 2643. Although the Supreme Court's "interim orders are not conclusive as to the merits, they inform how a court should exercise its equitable discretion in like cases." *Boyle*, 145 S. Ct. at 2654. This Court should exercise its discretion to stay its Order.

**2.** Defendants are also likely to attain ultimate success on their argument that the International Broadcasting Act's removal procedures concerning the VOA Director are unconstitutional because they are inconsistent with Article II. Specifically, 22 U.S.C. § 6205(e)

is unconstitutional because it violates Article II's requirement that inferior executive officers be removable at will, and without impediment, by the President or by a department head acting on the President's behalf. *See* U.S. Const. Art. II, § 2, cl. 2. The USAGM CEO—not the Advisory Board—is the head of the Agency. Thus, the statute's requirement of Advisory Board approval for the removal of the VOA Director, an inferior officer, is inconsistent with Article II. Because the removal restriction is invalid, no impediment existed to Mr. Abramowitz's removal.

The Court disagreed based, first, on its determination that most of the Supreme Court's cases invalidating removal restrictions did so because those restrictions "limit[ed] the *substantive* grounds on which the President or the heads of departments can remove an officer." Op. at 20. It also distinguished the Supreme Court's cases because USAGM's CEO and the Advisory Board's members are "removable at will." *Id.* Those distinctions, however, do not make the removal restriction in § 6205(e) valid. As Defendants explained in their brief opposing summary judgment, Opp. at 15, the Supreme Court has recognized "only two exceptions to the President's unrestricted removal power." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020); *see also Wilcox*, 145 S. Ct. at 1415; *Boyle*, 145 S. Ct. at 2654. Neither exception has anything to do with whether the removal restrictions are substantive or whether those with removal power can themselves be removed at will, and neither exception is implicated here.

First, Mr. Abramowitz is not a "multimember body of experts . . . perform[ing] legislative and judicial functions." *See Seila Law*, 591 U.S. at 216. Second, he is not an "inferior officer[] with limited duties and no policymaking or administrative authority." *See id.* at 218. On the contrary, the VOA Director exercises significant policymaking and administrative authority: among other duties, he manages and has overall responsibility for VOA's global

8

multimedia content and its administration, including the planning, organization, and execution of all VOA operations. ECF 65-2 at 2. The Director reports to the Agency's CEO, has significant independence to meet strategic objectives, and represents VOA inside and outside the Agency. *Id.* at 2–4. In sum, the Director wields policymaking and administrative authority on a consequential scale.

Yet this Court held that the "road bump" of requiring the President to "remove and replace some or all" of the CEO and Advisory Board prior to removing Mr. Abramowitz (if those individuals disagree with the removal decision) was less of a restriction on removal than that addressed by the Supreme Court in *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010). Op. at 21. The Court reached that conclusion because it read *Free Enterprise Fund* as approving a removal-restriction structure in which PCAOB members were removable at will but SEC Commissioners—who had the power to remove PCAOB members—were not. *Id.* The logical conclusion of the Court's reasoning seems to be that as long as someone in the chain of removal power is removable at will, then almost anyone may be given the power to remove (or veto removal of) inferior officers with significant policymaking and administrative authority.

But that view of the law is incorrect—and key to this Motion, it is at minimum subject to debate. It ignores the constitutional text. Under that text, power to remove inferior officers is vested in "the President or in the Heads of Departments." U.S. Const. Art. II, § 2, cl. 2. Thus, whether individuals making up one layer of the removal hierarchy are removable at will is not determinative; if the individual with removal authority over an inferior officer is anyone other than the President or a Head of a Department, then their authority is void.

Although the Court minimized the "barrier" of needing to replace all of the Advisory Board's "removed members" in order to effectuate Mr. Abramowitz's removal, Op. at 22, the magnitude of the barrier is beside the point constitutionally. In any event, being required to jump through the hoops of appointing an all-new Board just to remove an inferior officer is a significant burden on the President's exercise of executive authority. *See Free Enter. Fund*, 561 U.S. at 493 (explaining that the president must have the power to remove those "for whom he can not continue to be responsible" (citation omitted)); *Morrison v. Olson*, 487 U.S. 654, 689–90 (1988) (explaining that the goal of the Supreme Court's "removal cases" is to "ensure that Congress does not interfere with the President's exercise of the 'executive power' and his constitutionally appointed duty to 'take care that the laws be faithfully executed' under Article II").

For these reasons, the removal restrictions in § 6205(e) are unconstitutional. Although the Court has disagreed, that conclusion creates tension with the governing Supreme Court caselaw. And it imposes a serious burden on the President's core executive authority. Defendants are likely to succeed on the merits in their appeal, and the Court should stay its ruling pending adjudication through the appellate process.

II.     **Defendants will suffer irreparable injury absent a stay.**

Every day that the injunction remains in effect, it irreparably harms the Government. The President and the head of USAGM have determined that the VOA program can function better without Mr. Abramowitz after his refusal to accept a different assignment. In our constitutional order, politically accountable Article II actors are entrusted with such judgment calls. Yet this Court's injunction overrides that prudential executive judgment. In addition, if Defendants prevail on the merits, the Government may never recover the salary that it has been

ordered to continue paying to an inferior officer it has determined should no longer be serving in his role. That consideration, too, favors a stay. *See Dep't of Educ. v. California*, 145 S. Ct. 966, 968-69 (2025) (per curiam) (staying preliminary injunction where "respondents have not refuted the Government's representation that it is unlikely to recover the grant funds once they are disbursed" and "the District Court declined to impose bond").

### III. The balance of equities and the public interest favor a stay.

The balance of equities and public interest also support staying the Court's Order. As noted, Defendants will suffer irreparable harm absent a stay. By contrast, Mr. Abramowitz's harms are not irreparable. Courts have repeatedly affirmed that loss of employment is not irreparable harm. *See, e.g.*, *Church v. Biden*, 573 F. Supp. 3d 118, 142 (D.D.C. 2021). And the Supreme Court recently reiterated that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform [his] statutory duty." *Boyle*, 145 S. Ct. at 2654 (quoting *Wilcox*, 145 S. Ct. at 1415). Moreover, in a case analogous to this one, the D.C. Circuit recently held that the former Director of the Office of Special Counsel had not demonstrated irreparable harm from being removed because, if he were correct on the merits of his *ultra vires* challenge, he would at most "remain out of office for a short period of time." *Dellinger*, 2025 WL 887518, at *4. Likewise, the Supreme Court held in *Wilcox* that a stay was "appropriate to avoid the disruptive effect of the repeated removal and reinstatement of officers during the pendency of [the] litigation" 145 S. Ct. at 1415.

Although this Court discounted the relevance of these concerns in its Memorandum Opinion, *see* Op. at 10, it stated that "[w]eighing the hardship the government might suffer without" a stay pending appeal would be "for the Court's appellate overseers to decide." *Id.*;

11

*see also id.* at 22 (stating that "cases analyzing comparative injuries to the parties on applications for stays pending appeal do not provide a useful analog for the Court's ruling *in the present posture*" (emphasis added)). With Defendants' notice of appeal now filed, *see* ECF No. 78, the Court may properly weigh the harms for stay purposes.

Finally, the Court lacks authority to order Mr. Abramowitz's reinstatement. Because this argument, too, will likely succeed on appeal, it supports staying this Court's Order. In brief, the courts may not exercise the appointment power for executive officers, which the Constitution vests in the President alone or in department heads acting on his behalf. And the President may not be compelled to retain the services of an officer whom he no longer believes should be entrusted with the exercise of Executive power. The recent stays in *Wilcox* and *Boyle* should remove all doubt: serious separation-of-powers problems arise if a court attempts to reinstate—that is, reappoint—an executive officer removed by the President or by a department head acting on the President's behalf.

Moreover, reinstatement of any officer or employee is not an available remedy under the APA because it exceeds courts' historical authority in equity. *See, e.g.*, *Sampson v. Murray*, 415 U.S. 61, 83-84 (1974); *White v. Berry*, 171 U.S. 366, 377 (1898). Courts of equity lack "the power to create remedies previously unknown to equity jurisprudence," *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 332 (1999); *see generally Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025). Instead, Congress has the prerogative to enact new remedies. For example, the MSPB—one of the fora where this dispute could properly have been brought—has express congressional authorization to award "reinstatement" to prevailing employees. *Elgin*, 567 U.S. at 6. This Court, however, lacks that authorization. These limitations on the Court's equitable authority tip the equities further in favor of a stay.

## CONCLUSION

For these reasons, the Court should grant a stay of its Order pending resolution of Defendants' appeal.

Dated: August 29, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division, Federal Programs Branch

*/s/ Abigail Stout*
ABIGAIL STOUT
(DC Bar No. 90009415)
Civil Division
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
Telephone: (202) 514-2000
Abigail.Stout@usdoj.gov

*Attorney for Defendants*