IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL ABRAMOWITZ *et al.*,

    *Plaintiffs*,

–v.–

KARI LAKE *et al.*,

    *Defendants.*

**Civil Action No. 1:25-cv-0887 (RCL)**

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STAY PENDING APPEAL**

**INTRODUCTION**

Defendants seek a stay pending appeal because they believe that this Court's order, "the minute it was entered," "imposed a major intrusion on the Executive's prerogatives."  ECF 79 (Mot.) 3.  It did no such thing.  The order prevents Defendants from unlawfully terminating Director Abramowitz's employment without obtaining a vote of the Advisory Board, as required by statute.  But that is a modest remedy.  Defendants placed Director Abramowitz on administrative leave in March, where he remains now.  Someone else is presently serving as an acting director of VOA.  This Court's order does not disrupt those actions.  It does not change how Defendants operate VOA.  It merely retains a status quo—one Defendants themselves created and left in place for several months.  The only plausible harm Defendants could face in the interim, should they ultimately prevail on appeal, is having paid a few months of one federal worker's salary.  That is not the type of irreparable harm to the federal government that justifies staying an order pending appeal.

On the merits, there is not much new in Defendants' filing.  They largely repeat arguments they already made in their opposition brief—arguments this Court already considered and rejected.  Because Defendants are unlikely to succeed on the merits of their appeal, because they face no irreparable harm, and because the equities thus do not favor a stay, this Court should deny Defendants' motion.

**ARGUMENT**

**I. DEFENDANTS CANNOT MAKE A STRONG SHOWING THAT THEY WILL SUCCEED ON THE MERITS.**

To obtain a stay pending appeal, Defendants must make "a strong showing" that they are "likely to succeed on the merits." *Nken v. Holder*, 556 U.S. 418, 426 (2009).  Their motion comes nowhere close to meeting this standard.

1

### A. This Court has Jurisdiction.

The Court correctly held that the Civil Service Reform Act is no bar to its authority to adjudicate Director Abramowitz's claim.  As all seem to agree, the core inquiry in this case asks whether "Congress intended" for claims "of the type" of Director Abramowitz's challenge to be precluded from proceeding in district court.  *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 212 (1994); *see* Mot. 4-5.  The Court correctly held that Congress did not.  As this Court explained, Director Abramowitz "is not a mine-run federal employee."  ECF 76, Memorandum Opinion (Op.) 13.  Rather, "he is among a handful of USAGM network directors to whom the law provides a specialized statutory framework."  *Id.*  Congress created this statutory framework to prevent the exact action Defendants now take.  Defendants believe they can take this action nevertheless because, they say, this Court is powerless to stop it.  That nullification of its own statute could not have been what "Congress intended."  *Thunder Basin*, 510 U.S. at 212.

In seeking a stay of this Court's order, Defendants set out a few arguments.  The Court rejected most of these arguments in its opinion.  And all lack merit.

First, Defendants say broadly that just because a claim "implicates the Constitution" or argues that a "termination violates a statute" does "not make the claim collateral."  Mot. 5-6.  But, as this Court explained, whether that is true in a particular case depends on "the nature of the claim" and "what [the dispute is] about."  Op. 13 (quoting *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 194 (2023)).  Cases about violations of the CSRA's civil service laws (and related statutes) are subject to CSRA channeling. Cases "about" the constitutional separation of powers, the power of the agency to proceed at all, and discrete, specialized statutory frameworks are not.  And here, the dispute is—as the Court explained—about all three:  Defendants' "power to proceed" with Director Abramowitz's termination, given Congress's specialized statutory scheme directed

2

specifically at the USAGM network heads, and Defendants' argument that the statute violates the separation of powers. Op. 13-14 (quoting *Axon*, 598 U.S. at 192).

That is very different than the circumstances in the cases Defendants cite. For instance, Defendants cite *AFGE* for the proposition that "disputes over whether the statute has been violated are not wholly collateral to the statutory scheme." Mot. 6 (citing *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 760 (D.C. Cir. 2019)). But which "statute" is at issue makes all the difference. In *AFGE*, it was the general civil service statute. The question was whether "disputes over whether" the Federal Service Labor-Management Relations Statute (FSLMRS) "has been violated" must be "adjudicated through the FSLMRS's scheme." *AFGE*, 929 F.3d at 760. Put another way, it was about whether violations of a particular civil service act must be adjudicated through *that* act's scheme. Because that challenge was "of the type regularly adjudicated through the FSLMRS's scheme," the D.C. Circuit held that the challenge was not "wholly collateral to the statutory scheme." *Id.* at 759. That is miles from the situation here, that challenges whether Director Abramowitz's "termination is contrary to the structure of USAGM and Voice of America." Op. 13. That is not a question "regulatory adjudicated" by the MSPB.

Defendants next suggest that something other than their failure to adhere to Congress's removal statute is at issue in this case—noting that Director Abramowitz pointed out in the introduction of his brief that he was not given "an explanation" for his removal. Mot. 6. But a statement in an introduction or facts section of a brief does not raise a separate legal challenge. And Director Abramowitz's legal challenge in this Motion is and has always been squarely focused on only one thing: Defendants' failure to abide by Congress's directive that the Advisory Board vote before he can be removed. Defendants do not, and cannot, point to any legal argument in his briefing or request for relief that raises anything else.

3

Moving to the next prong, Defendants argue that the issues in this case are within the MSPB's expertise. But on this point, the Supreme Court "could hardly be clearer." *Axon*, 598 U.S. at 194. "Claims that tenure protections violate Article II"—Defendants' exact and only defense on the merits in this case—are not within an agency's expertise. *Id.* The same is true of "standard questions of administrative law, which the courts are at no disadvantage in answering." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,* 561 U.S. 477, 491 (2010). Contrary to Defendants' suggestion, this is not a case like *Elgin*, where the MSPB "can apply its expertise" to "preliminary questions unique to the employment context," which could "obviate the need to address the constitutional challenge." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 22-23 (2012). There are no preliminary employment-specific questions within the MSPB's expertise. Director Abramowitz's sole argument is that Defendants failed to abide by Congress's command that the Advisory Board vote prior to his removal. And Defendants' sole defense on the merits is that that structure violates the separation of powers. The MSPB knows "nothing special about the separation of powers." *Axon*, 598 U.S. at 194. But this Court does.

Finally, Defendants point to two cases that say nothing explicitly about channeling. They assert that "the government argued that CSRA channeling applies" in a pair of cases in which the Supreme Court stayed injunctions. Op. 7 (citing *AFGE 2*, 145 S. Ct. 2635; *McMahon*, 145 S. Ct. 2643). But the Supreme Court's decisions granting the stays say nothing about this issue. And in *AFGE 2*, the basis for the Supreme Court's decision is expressly something else: that "the Government is likely to succeed on its argument that the Executive Order and Memorandum are lawful." *Trump v. Am. Fed'n of Gov't Emps.*, 145 S. Ct. 2635 (2025). While the Supreme Court may have instructed district courts to be "inform[ed]" by its interim orders, *Trump v. Boyle*, 145 S.

4

Ct. 2653, 2654 (2025), there is nothing in these two stay orders to inform the Court's analysis in this case.

### B. Congress's Statute is Constitutional.

As this Court explained, § 6205(e)(1) poses no constraint on the President's Article II powers. The VOA director is an inferior officer removable at will by two politically accountable entities—the USAGM CEO and the Advisory Board—who are removable at will by the President. This Court pointed out that this scheme impacts the President's Article II power less than the one blessed in *Free Enterprise Fund*, in which the SEC, a commission with for-cause removal restrictions, had the sole authority to remove an inferior officer with significant policymaking responsibility. *Free Enter. Fund*, 561 U.S. at 484, 509.

Defendants' argument that Congress's statute is unconstitutional largely suggests a desire to mold the law in a new direction. They say that this Court's reliance on *Free Enterprise Fund* reflects a "view of the law that is incorrect" or "at minimum subject to debate." Mot. 9. But until the Supreme Court speaks again, its decisions, including *Free Enterprise Fund*, are the law of the land. That disposes of much of Defendants' argument. For instance, while Defendants think that "being required to jump through the hoops of appointing an all-new Board just to remove an inferior officer is a significant burden on the President's exercise of executive authority," Mot. 10, that would have been even more true in *Free Enterprise Fund*. But the Supreme Court still upheld that statutory scheme. Defendants themselves cannot make the vitality of the Supreme Court's decisions "debat[able]."

Similarly, Defendants say that, under the "constitutional text," the "power to *remove* inferior officers is vested in 'the President or in the Heads of Departments.'" Mot. 9 (emphasis added). But under the constitutional text, it is the "*Appointment* of such inferior officers" that

5

"Congress may by Law vest . . . in the Heads of Departments." U.S. Const., art. II, § 2 (emphasis added). And when it comes to removal, the Supreme Court has held there is "no doubt" that Congress may "limit and restrict the *power of removal*" of an inferior officer "as it deems best for the public interest." *United States v. Perkins*, 116 U.S. 483, 485 (1886) (emphasis added). In any event, removal *is* vested in the "Heads of Departments." Under § 6205(e)(1), removal of the VOA director is the joint province of the USAGM CEO and the Advisory Board, both Department heads.

### C. This Court has the Power to Prevent Defendants from Taking Unlawful Action.

Once again, Defendants repeat their argument that "the Court lacks authority to order Mr. Abramowitz's reinstatement." Mot. 12. Of course, this case does not concern reinstatement, because the Court enjoined Director Abramowitz's *removal*. In any event, to the extent that Defendants are making the argument that the Court lacks the power to enjoin their illegal action, they do so without recognizing "the current state of the law." Op. 12 n.5. The en banc D.C. Circuit has considered and rejected Defendants' exact argument. *See Harris v. Bessent,* No. 25-5037, 2025 WL 1021435, at *2 (D.C. Cir. Apr. 7, 2025) (en banc). Defendants are unlikely to succeed on appeal in their continued pursuit of changing this state of the law.

## II. THE EQUITIES DO NOT FAVOR DISRUPTING THE STATUS QUO.

The equitable factors necessary for Defendants to obtain a stay pending appeal do not support their request. This Court's order merely preserves a status quo Defendants themselves created.

Defendants use strong language to suggest otherwise. They claim that "the minute it was entered," this Court's order "imposed a major limitation" on a "core Executive function" and "the Executive's prerogatives over personnel and policy." Mot. 1, 3.

6

But it is hard to see how those protestations line up with the facts. Defendants placed Director Abramowitz on administrative leave in March, where he remains now. And "while Mr. Abramowitz has been on administrative leave," Defendants reported that "[a]nother person has been fulfilling the responsibilities of the Director position in an Acting capacity role." ECF 65 at 7. This Court's order keeps that status quo. It prevents Defendants from taking a further action by terminating Director Abramowitz's employment. But the order does require that Director Abramowitz resume his duties actively directing VOA; it does not remove the other "person" who is acting as the director of VOA. With those actions in place, it is hard to see where the "major intrusion" on the "Executive's prerogatives over personnel and policy" lies. Nor is this a case where Defendants, or the President, seem to have a major issue with Director Abramowitz. In fact, they sought to reassign him to a different position because his "presence" would deliver "executive level oversight and leadership during a critical period." ECF 64-1, Attachment A at 2.

The only concrete concern Defendants do raise is the possibility that the federal government will not get back the portion of Director Abramowitz's salary paid while the appeal progresses. Those several months of salary are not an irreparable injury to the federal government. While the Supreme Court has issued an interim order finding that the government's unrecoverable disbursement of $65 million in grant funds might qualify, the few-months' salary of one federal worker does not. *See Dep't of Educ. v. California*, 145 S. Ct. 966, 968-69 (2025); *see also* Government's Application for Administrative Stay at 9, *Dep't of Educ. v. California*, No. 24A910 (Mar. 26, 2025) (mentioning $65 million figure).

The posture of this case also differentiates the interim orders on which Defendants rely. In interim orders in *Wilcox* and *Boyle*, the Supreme Court relied on "risk of harm" faced by the government of "an order allowing a removed officer to continue exercising the executive power."

7

*Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025); *see also Boyle*, 145 S. Ct. at 2653. As explained above, this Court's order does not require that. In addition, *Wilcox* and *Boyle* both dealt with principal officers removed by the President. This case is about an inferior officer removed by the Acting CEO of an agency. While an applicable interim order might "inform" this Court's discretion, *Boyle*, 145 S. Ct. at 2653, these two deal with different types of officers, removed by different constitutional actors, in different circumstances.

## CONCLUSION

Defendants have pointed the Court to no error, harm, or equity that justifies a stay pending appeal. Their motion should be denied.

Dated: September 1, 2025                                   Respectfully submitted,

*/s/ William B. Schultz*
William B. Schultz
Margaret M. Dotzel
Brian J. Beaton, Jr.
Jacobus P. van der Ven
ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
Fax: (202) 822-8136
wschultz@zuckerman.com
mdotzel@zuckerman.com
bbeaton@zuckerman.com
cvanderven@zuckerman.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 1, 2025, I caused the foregoing to be served on counsel of record via the Court's electronic case filing system.

/s/ *William B. Schultz*
William B. Schultz

*Attorney for Plaintiffs*

9