UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL ABRAMOWITZ, *et al.*,

    *Plaintiffs,*

v.

KARI LAKE, *et al.*,

    *Defendants*.

Case No. 1:25-cv-887-RCL

## ORDER

On August 28, 2025, this Court granted Plaintiff Michael Abramowitz's Motion for Partial Summary Judgment, *see* ECF No. 59, and enjoined the defendants, including the acting CEO of the U.S. Agency for Global Media ("USAGM"), from removing Abramowitz from his position as the director of Voice of America ("VOA") unless a majority of the International Broadcasting Advisory Board (the "Advisory Board" or "Board") provides consent as required under 22 U.S.C. § 6205(e)(1). *See* Order, ECF No. 75; Mem. Op., ECF No. 76. The following day, the defendants noticed an appeal and moved for an interim stay. *See* Mot. to Stay Pending Appeal, ECF No. 79 ("Mot."). For the following reasons, the Motion is **DENIED**.

"A stay is not a matter of right," but "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian R. Co. v. United States*, 272 U.S. 658, 672–73 (1926)). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 434. "[A] court considers four factors" to decide if a stay should issue: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay

1

will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 426 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "The first two factors . . . are the most critical." *Id.* at 435.

Beginning with the likelihood of success on the merits, the defendants argue that they will likely prevail on their arguments that (i) the Civil Service Reform Act ("CSRA") strips the Court's jurisdiction over Abramowitz's claim and requires his claim to be channeled to the Merit Systems Protection Board ("MSPB"), and (ii) that § 6205(e) is unconstitutional. *See* Mot. at 4–10.

The defendants' jurisdiction-stripping argument turns on whether Congress intended to channel Abramowitz's claim through the CSRA's scheme for resolving federal employment disputes. The two-step *Thunder Basin* framework provides that Congress intended for litigants "to proceed exclusively through a statutory scheme" when, at step one, "such intent is fairly discernible in the statutory scheme," and, at step two, "the litigant's claims are 'of the type Congress intended to be reviewed within [the] statutory structure.'" *Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015) (citation omitted).

The Court agreed with the defendants at step one, *see* Mem. Op. at 11–12, but the defendants maintain they should also prevail at step two. They contend that the Court erred at the second stage of the *Thunder Basin* inquiry by ruling that district courts retain jurisdiction over a constitutional-removal claim like Abramowitz's because such claims are "wholly collateral" to the statutory scheme and do not implicate the MSPB's expertise. *See* Mem. Op. at 12 (explaining that at step two, courts examine "*first*, whether precluding jurisdiction might 'foreclose all meaningful judicial review,' *second*, whether the claim is 'wholly collateral to [the] statutory review provisions,' and *third*, whether the claims fall 'outside the agency's expertise.'" (quoting *Axon Enter. Inc v. FTC*, 598 U.S. 175, 186 (2023))). At bottom, the defendants disagree with the Court's

conclusion that the separation-of-powers question at the heart of this case falls outside the mine-run of CSRA cases, repeating their contention that the mere fact that an employment dispute "implicates the constitution does not make the claim collateral," Mot. at 5, or cast doubt on the MSPB's expertise in deciding the issue, *id.* at 6 ("[E]ven constitutional and statutory arguments are channeled by the CSRA when they arise in challenges to employment actions.").

It is well established that "the nature of [a] claim" is what dictates whether the claim is collateral to an agency review scheme set up by Congress. *Axon*, 598 U.S. at 194. Here, the merits question was whether a CEO of USAGM may unilaterally remove the director of Voice of America notwithstanding Congress's decision to vest removal authority, in part, in the Advisory Board. *See* 22 U.S.C. § 6205(e)(1). Thus, when Abramowitz challenged the defendants' attempt to do so, he necessarily challenged USAGM's "power to proceed" with Abramowitz's termination. *Id.* at 192. And claims of that nature are collateral to agency review schemes like that set up by the CSRA. *See id.*; *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 490 (2010). The mere fact that the CSRA *can* decide constitutional claims, *see* Mot. at 5, tells only part of the story. The "nature" of the constitutional claim is still key. *Axon*, 598 U.S. at 194. Constitutional issues that go the heart of employment disputes, like whether an agency's substantive policies unconstitutionally discriminate against government employees, may well be appropriate for channeling.[1] *Cf. Elgin v. Dep't of the Treasury*, 567 U.S. 1, 10–15 (2012). That may be because such questions also implicate the MSPB's expertise. *See Axon*, 598 U.S. at 186 (explaining that

---

[1] Despite the defendants' insistence to the contrary, Abramowitz does not seriously dispute the substantive basis for his removal. *Cf.* Mot. at 6. It is true that the first paragraph of Abramowitz's memorandum filed in support of his Motion for Partial Summary Judgment referenced the defendants' failure to provide Abramowitz a reason for his removal. *See* ECF No. 59 at 8. But were the shoe on the other foot, and had Abramowitz tried to press the issue now, the defendants would surely argue (and correctly so) that such a passing reference cannot amount to developed legal argumentation. *See Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).

the wholly-collateral and agency-expertise factors are "related"). And indeed, the defendants' objection to the Court's reasoning about agency expertise is based on its disagreement with the Court's holding that separation of powers issues ought to come to federal court in the first instance. *See* Mot. at 6. But the defendants' observation that the entirely *distinct* type of constitutional claim at issue in *Elgin* was not collateral to the CSRA review scheme or outside the MSPB's expertise does not, without more, amount to a "strong showing" that *this* claim isn't too.[2] *Nken*, 556 U.S. at 426.

On the separation of powers question itself, the defendants maintain they will succeed on the merits of their contention that § 6205(e) violates Article II of the Constitution. The defendants come back to this Court beating the dead horse that requiring the approval of the Board constitutes a dramatic interference with the President's power to remove Abramowitz. And in doing so, they continue to ignore the text of the Constitution itself, which provides that the appointment (and therefore the removal[3]) of inferior officers (like the director of Voice of America) is emphatically *not* the sole province of the President. Rather, it is up to Congress to vest such power "in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const., art. II, § 2,

---

[2] The defendants also passingly suggest that the Court declined to channel Abramowitz's case merely because it involved the violation of a statute. Mot. at 6 (citing *AFGE v. Trump*, 929 F.3d 748, 760 (D.C. Cir. 2019)). Not so. In any case, *AFGE*, on which the defendants rely for that point, involved a claim that that was "regularly adjudicated" under the agency scheme. *Id.* at 759. Despite now having had two chances, the defendants have given no reason to think that the same is true of the MSPB and the separation of powers question at issue here. Nor is the Court convinced by the defendants' citations to *Widakuswara*, *AFGE II*, or *McMahon*. The CSRA issue in *Widakuswara* did not involve the targeted removal of a senior agency employee subject to bespoke appointment and removal structures. *See* Mem. Op. at 14. And as Abramowitz points out, neither *AFGE II* nor *McMahon* discussed whether or to what extent jurisdiction-stripping factored into its analysis. *See Trump v. AFGE*, 145 S. Ct. 2635, 2635 (2025) ("*AFGE II*"); *McMahon*, 145 S. Ct. 2654, 2654 (2025). The defendants' references to the mere fact that, in those cases, the government raised a CSRA issue and then later prevailed in a stay posture does little, if anything, to satisfy their burden. *See Nken*, 556 U.S. at 434 ("It is not enough that the chance of success on the merits be 'better than negligible.'" (quoting *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999))).

[3] *See Free Enter. Fund*, 561 U.S. at 509 ("Under the traditional default rule, removal is incident to the power of appointment."); *see also Aviel v. Gor*, No. 25-5105, 2025 WL 1600446, at *1 (D.C. Cir. June 5, 2025) (Katsas, J., concurring) (citing *Free Enter. Fund*, 561 U.S. at 409).

cl. 2. That is why the appointment and removal of the five inferior officers who make up the Public Company Accounting Oversight Board may be vested in the SEC (heads of a department who have good-cause protection), and not in the President himself. *See Free Enter. Fund*, 561 U.S. at 509, 511. And it is why the appointment and removal of the director of VOA may be vested in the CEO and the Advisory Board (heads of two separate departments who are removable at will).[4] The defendants' opinion to the contrary is at odds with the text of the Constitution and binding precedent and thus supplies no basis for finding that the defendants are likely to succeed on the merits. *See Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at *1 (D.C. Cir. Apr. 7, 2025) (en banc) ("The Supreme Court has repeatedly told [federal courts] to follow extant Supreme Court precedent unless and until that Court itself changes it or overturns it.").

In their last attempt to show a substantial likelihood of success on the merits, the defendants renew their contention that the Court cannot enjoin the defendants to reinstate Abramowitz under the APA. *See* Mot. at 12. Never mind that the defendants themselves describe Abramowitz's claim as raising a challenge to a "*future* adverse employment action," *see id.* at 7 — begging the question of how the Court's order could reinstate him to a position from which he was never technically removed. But setting that tension aside for the moment, the defendants still have little answer to the en banc D.C. Circuit's refusal to extend stays based on the same argument. *See Harris*, 2025 WL 1021435, at *2 ("The government likewise has not shown a strong likelihood of success on the merits of its claim that there is no available remedy for Harris or Wilcox, or that allowing the district court's injunctions to remain in place pending appeal is impermissible.").

---

[4] The defendants passingly suggest that § 6205(e) vests removal in someone "other than the President or a Head of Department." Mot. at 9. To the extent the defendants now insinuate that the Advisory Board does not qualify as a Head of Department under the Appointments Clause, that argument is unlikely to succeed on the merits because (i) it lacks legal foundation, *see Free Enter. Fund*, 561 U.S. at 511, and (ii) it is doubly waived: it was neither raised in the defendants' summary judgment briefing nor is it developed in their stay briefing.

*Harris* remains the "last word" on the issue, particularly on a stay-posture ruling that presents a materially identical question. *See Aviel v. Gor*, No. 25-5105, 2025 WL 1600446, at *2 & n.2 (D.C. Cir. June 5, 2025) (Katsas, J., concurring).

As the balance of the equities: given the undisputed facts and the scope of the court's injunction, the defendants have not shown they will suffer irreparable harm absent a stay. *See Nken*, 556 U.S. at 434 (noting that irreparable harm is one of the two "most critical" stay factors, along with the likelihood of success on the merits). Abramowitz has been on administrative leave since March, and the defendants represent that "[a]nother person has been fulfilling the responsibilities of the Director position in an Acting capacity." ECF No. 65 at 7. In compliance with the D.C. Circuit's partial stay of the preliminary injunctions entered in this case and *Widakuswara* earlier this year, the Court's order last week did not alter Abramowitz's status within USAGM. To the contrary, the order maintained the status quo by preserving "the state of affairs before" the defendants decided to remove Abramowitz — which is typically the desired effect of a stay in this posture. *See Nken*, 556 U.S. at 429–30.

To the extent the defendants rely on *Department of Education v. California* to assert irreparable harm in the event they cannot recoup salary paid to Abramowitz salary while litigation proceeds, *see* Mot. at 10–11, Abramowitz convincing casts doubt on *California*'s value as a comparator, given the vast differences in the amount of money at stake, *see* Opposition at 7, ECF No. 80; *see also* 145 S. Ct. 966, 968–69 (2025). In any case, the defendants' theory of harm hinges on the correctness of their preferred application of the *Thunder Basin* factors and favored interpretation of the Appointments Clause. *Cf. Harris*, 2025 WL 1021435, at *1 ("[T]he claimed intrusion on presidential power only exists if *Humphrey's Executor* and *Wiener* are overturned.").

And that necessarily shows only a "possibility of irreparable injury," which is insufficient. *Nken*, 556 U.S. at 435.

Defendants make one last argument on the risk of harm, suggesting that a stay is "appropriate to avoid the disruptive effect of the repeated removal and reinstatement of officers during the pendency of [the] litigation." Mot. at 11 (quoting *Wilcox v. Trump*, 145 S. Ct. 1415, 1415 (2025)). There should be no risk of that occurrence here, however, since the very statute that requires the Advisory Board to participate in the removal of the Voice of America director also requires the Board's participation for the appointment of any replacement. So long as the Board remains inquorate, the Court's holding as to the constitutionality of § 6205(e)(1) should prevent the spiral of recurrence that the defendants portend. By now, the parties should need no further cautioning about the seriousness with which the Court takes adherence to its orders.

Finally, because the public interest and the interests of the government are identical, the lack of irreparable harm to the defendants similarly defeats finding that the public interest calls for a stay.[5] *Cf. Nken*, 556 U.S. at 435 (explaining that the third and fourth factors merge when the government is the opposing party).

The defendants have not satisfied the stringent requirements for a stay pending appeal. The motion is **DENIED**.

**SO ORDERED.**

Date: September __2__, 2025

*Royce C. Lamberth*
Royce C. Lamberth
United States District Judge

---

[5] The defendants offer only a single argument on the third *Nken* factor — the risk of harm to Abramowitz — citing *Dellinger v. Bessent*, No. 25-5052, 2025 WL 887518, at *1 (D.C. Cir. Mar. 10, 2025) (observing that a removed officer faces a low risk of harm from "remain[ing] out of office for a short period of time" while litigation proceeds). *See* Mot. at 11. But they do not explain how that observation outweighs the "critical" first and second factors, *Nken*, 556 U.S. at 434, nor does the Court believe it does so in light of the foregoing analysis.