UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL ABRAMOWITZ, et al.,

              Plaintiffs,

      v.

KARI LAKE, et al.,

             Defendants.

Civil Action No. 25-0887 (RCL)

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND
MOTION FOR RELIEF FROM LOCAL RULE 7(n)(1)'S REQUIREMENTS**

# TABLE OF CONTENTS

Table of Contents .................................................................................................................. i

Table of Authorities ............................................................................................................ ii

Introduction ........................................................................................................................ 1

Argument ............................................................................................................................ 1

    I.      This Court Lacks Jurisdiction Over Plaintiffs' Claims .......................................... 1

          A.    This Court Lacks Jurisdiction Over Plaintiffs' Claims for the Plaintiffs That Are Employees of Global Media. ....................................................... 1

          B.    This Court Lacks Jurisdiction Over the Contractor Plaintiffs' Claims. ....... 6

    II.    Plaintiffs Fail to Sufficiently Allege Claims Under the APA (Count I). ................ 8

          A.    Plaintiffs Contend (and this Court Has Already Found) that the Agency Took "Myriad" Actions That When Taken Together Violate the APA, but the APA Requires Review of a Final, Discrete Agency Action. ................ 8

          B.    Plaintiffs Have Other Adequate Alternative Remedies, Which Precludes APA Review. ........................................................................................... 10

          C.    Defendants' Actions Are Committed to Agency Discretion by Law. ...... 10

    III.   Plaintiffs Fail to State Viable Constitutional Claims (Counts II and III). ........... 12

          A.    Plaintiffs' Constitutional Claims are Barred. ........................................... 12

          B.    Alternatively, Plaintiffs' Claim Brought Under the Separation of Powers (Count II) and Take Care Clause (Count III) Fails. .................................. 14

    IV.   Plaintiffs Fail to Sufficiently Plead an Ultra Vires Claim (Count IV) ................. 16

    V.    Defendants Should Be Relieved of Their Obligation to Comply with Local Rule 7(n)(1). ................................................................................................... 18

Conclusion ....................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*Am. Fed'n of Gov't Emps. v. Trump*,
   929 F.3d 748 (D.C. Cir. 2019) ................................................................. 2

*APA. Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004) ................................................................................. 9

*Appalachian Voices v. EPA*,
   Civ. A. No. 25-1982 (RJL), 2025 WL 2494905 (D.D.C. Aug. 29, 2025) ...................... 13-14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................... 15

*Axon Enter. v. Fed. Trade Comm'n*,
   598 U.S. 175 (2023) ............................................................................ 4, 5

*Bd. of Governors, Fed. Reserve Sys. v. MCorp Fin., Inc.*,
   502 U.S. 32 (1991) ................................................................................ 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................... 15

*Bennett v. SEC*,
   844 F.3d 174 (4th Cir. 2016) ...................................................................... 4

*Biden v. Texas*,
   597 U.S. 785 (2022) ................................................................................ 9

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) ............................................................................... 11

*Ctr. for Biological Diversity v. McAleenan*,
   404 F. Supp. 3d 218 (D.D.C. 2019) ............................................................... 16

*Dalton v. Specter*,
   511 U.S. 462 (1994) ........................................................................... 12, 13

*Department of Homeland Security v. Regents of the University of California*,
   591 U.S. 1 (2020) .................................................................................. 9

*Drake v. FAA*
   291 F.3d 59 (D.C. Cir. 2002) ..................................................................... 12

*Elgin v. Dep't of Treas.*,
   567 U.S. 1 (2012) ......................................................................... 2, 4, 5, 6, 17

*Fed. Express Corp. v. Dep't of Com.*,
   39 F.4th 756 (D.C. Cir. 2022) .................................................................... 17

*Fornaro v. James*,
  416 F.3d 63 (D.C. Cir. 2005) ............................................................... 4

*Ingersoll-Rand Co. v. United States*
  780 F.2d 74 (D.C. Cir. 1985) ............................................................ 7, 9

*In re United States*,
  583 U.S. 29 (2017) ........................................................................ 18-19

*Leedom v. Kyne*,
  358 U.S. 184 (1958) ......................................................................... 16

*Lujan v. Nat'l Wildlife Fed.*
  497 U.S. 871 (1990) ........................................................................... 9

*Make the Road N.Y. v. Wolf*,
  962 F.3d 612 (D.C. Cir. 2020) ......................................................... 12

*McMahon v. New York, No. 24A1203*,
  2025 WL 1922626 (U.S. July 14, 2025) ............................................. 3

*Megapulse, Inc. v. Lewis*,
  672 F.2d 959 (D.C. Cir. 1982) ........................................................... 7

*National Association of Immigration Judges v. Owen*,
  139 F.4th 293 (4th Cir. 2025) ............................................................ 5

*Nat'l Treas. Emps. Union v. Vought*,
  No. 25-5091, 2025 WL 2371608 (D.C. Cir. Aug. 15, 2025) ............ 9-10, 12, 13, 17

*Nuclear Regul. Comm'n v. Texas*,
  605 U.S. 665 (2025) ........................................................... 16, 17, 18

*Office of Pers. Mgmt. v. Am. Fed'n of Gov't Emps.*,
  145 S. Ct. 1914 (2025) ....................................................................... 3

*Spectrum Leasing Corp. v. United States*,
  764 F.2d 891 (D.C. Cir. 1985) ........................................................... 7

*Steenholdt v. FAA*,
  314 F.3d 633 (D.C. Cir. 2003) ......................................................... 10

*Thunder Basin Coal Co. v. Reich*
  510 U.S. 200 (1994) ........................................................................... 3

*Trump v. Wilcox*,
  145 S. Ct. 1415 (2025) ....................................................................... 6

*United States v. Fausto*,
  484 U.S. 439 (1988) ............................................................... 5, 6, 17

*Vera Inst. of Just. v. Dep't of Just.*,
   Civ. A. No. 25-1643 (APM), 2025 WL 1865160 (D.D.C. July 7, 2025) ............................. 15

*Vico Prods. Co. v. Nat'l Lab. Rels. Bd.*,
   333 F.3d 198 (D.C. Cir. 2003) ...................................................................................... 18

*Youngstown Sheet & Tube Co. v. Sawyer*
   343 U.S. 579 (1952) ...................................................................................................... 13

## **Statutes, Rules, Regulations, and Other Authorities**

5 C.F.R. § 351.901 ............................................................................................................... 3

5 C.F.R. § 1201.27 ............................................................................................................... 3

5 U.S.C. § 701 ................................................................................................................... 10

5 U.S.C. § 704 ................................................................................................................... 10

22 U.S.C. § 6202 ........................................................................................................... 11, 12

22 U.S.C. § 6204 ............................................................................................................... 12

Defendants, by and through undersigned counsel, respectfully submit this reply in support of their motion to dismiss and motion for relief under Local Civil Rule ("Local Rule") 7(n)(1) (ECF No. 58) and in response to the opposition (ECF No. 63) filed by Plaintiffs Michael Abramowitz, Anthony LaBruto, and one "J. Doe" journalist (collectively, "Plaintiffs").

## INTRODUCTION

Plaintiffs in this action seek to micromanage U.S. Agency for Global Media ("Global Media"), including controlling day-to-day operations and personnel decisions. As previously discussed in Defendants' opening brief, however, Plaintiffs' complaint is subject to dismissal on numerous grounds, including: (1) this Court lacks jurisdiction over Plaintiffs' claims; (2) Plaintiffs fail to challenge any discrete agency action under the Administrative Procedure Act ("APA") and have other adequate alternative remedies, which forecloses relief under the APA; (3) Plaintiffs' constitutional claims are purely statutory arguments and therefore are barred; and, lastly, (4) with respect to Plaintiffs' ultra vires claim, Plaintiffs miss the mark completely because there is alternative review for their claims. Accordingly, the Court should dismiss the complaint in its entirety. Plaintiffs' opposition provides no reasons to conclude otherwise.

## ARGUMENT

## I.    This Court Lacks Jurisdiction Over Plaintiffs' Claims.

### A.    This Court Lacks Jurisdiction Over Plaintiffs' Claims for the Plaintiffs That Are Employees of Global Media.

Plaintiffs appear to rest their entire challenge to a wide swath of discrete employment decisions on the allegation that they are challenging a single policy to "dismantle" the Agency in violation of various statutes requiring the Agency to perform certain duties. *See generally* Compl. (ECF No. 1). Plaintiffs double down on this assertion when they state that this case is "emphatically not about placement on administrative leave—it is about [Global Media's] responsibility to adhere

to the law and operate [Voice of America] in the manner Congress prescribed," Opp'n (ECF No. 63) at 24.[1] But Plaintiffs do not point to any single action that provides concrete directions to carry out the various personnel matters that they assert, and indeed, as they have recognized in their filings, they challenge the purported "myriad" actions taken by the agency to bring Global Media to its statutory minimum. *Id.* at 35. Regardless of their gloss, at bottom Plaintiffs seek to challenge individual employment actions—placement on administrative leave and a proposed termination (in the case of Abramowitz[2]), but those challenges are squarely precluded under the administrative remedial schemes created by Congress. This Court should reject Plaintiffs' attempts to shoehorn under the guise of the APA or the Constitution what plainly are employment actions.

Plaintiffs cannot seriously suggest that they are entitled to bring a single APA claim to challenge scores of individual employment decisions. Indeed, those decisions need to be adjudicated based on the particularized facts applicable to each employee and are subject to the Civil Service Reform Act ("CSRA"). *See Elgin v. Dep't of Treas.*, 567 U.S. 1, 5 (2012) (holding that the "[CSRA] provides the exclusive avenue to judicial review when a qualifying employee challenges an adverse employment action by arguing that a federal statute is unconstitutional"); *Am. Fed'n of Gov't Emps. v. Trump*, 929 F.3d 748, 757–61 (D.C. Cir. 2019) (requiring channeling of constitutional claims). Consistent with this precedent, the Supreme Court recently stayed a district court order that required the government to reinstate Department of Education employees

---

[1]     All pages in this reply refer to the page generated by the Court's electronic court filing system.

[2]     This Court recently granted partial summary judgment to Abramowitz on his employment claims arising from his proposed termination, notwithstanding that the action is not yet ripe for review, is not a claim pled in the operative complaint, and plainly is subject to the CSRA's channeling strictures. *See* Aug. 28, 2025, Order (ECF No. 75). That ruling is on appeal. *See Abramowitz v. Lake*, No. 25-5314 (D.C. Cir.).

fired as part of a reduction in force. *McMahon v. New York*, No. 24A1203, 2025 WL 1922626 (U.S. July 14, 2025); *see also Office of Pers. Mgmt. v. Am. Fed'n of Gov't Emps.*, 145 S. Ct. 1914, 1914 (2025) (staying district court's injunction ordering six departments and agencies to immediately offer reinstatement to over 16,000 employees who had been laid off). Parties cannot evade the CSRA by recasting a suit as challenging the impact that terminations may have on an agency. The CSRA's comprehensive, exclusive review scheme does not recede when the number of terminations reaches an undefined tipping point that a court identifies as affecting particular functions. Indeed, in this case, a motions panel found that the Court likely erred in ordering employees' reinstatement when it granted injunctive relief because the U.S. Merit System Protection Board ("MSPB") may handle voluminous claims, and class-wide litigation is possible. *See* 5 C.F.R. § 351.901; *id.* § 1201.27.

Recognizing the fragility of their claims, Plaintiffs rejoin that even if they seek review for employment disputes that should be channeled through the CSRA, they fall outside the channeling analysis articulated by the Supreme Court in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). Simply put, not so. Under that framework, district courts lack jurisdiction over suits like this one when the intent for exclusive review in the court of appeals is "(i) fairly discernible in the statutory scheme, and (ii) the litigant's claims are of the type Congress intended to be reviewed within [the] statutory structure." 510 U.S. at 212–13.

Plaintiffs argue that denying jurisdiction would "foreclose all meaningful review" because "Judicial review under the CSRA would come only after multiple layers of agency review, a process that could take years, particularly given that all three CSRA-administering agencies currently lack a quorum." Opp'n (ECF No. 63) at 26. But Plaintiffs' arguments miss the mark. Judicial review need not be immediately available for a plaintiff to receive meaningful judicial

review. A statutory scheme can provide for meaningful judicial review even if it requires litigants to first seek relief in an administrative forum, so long as an appeal to an Article III court is available "in due course." *Bennett v. SEC*, 844 F.3d 174, 186 (4th Cir. 2016). Meaningful judicial review similarly does not require the involvement of a district court. *See Axon Enter. v. Fed. Trade Comm'n*, 598 U.S. 175, 190 (2023). Review of an agency's action in a court of appeals can meaningfully address a party's claim. *Id*. (quoting *Thunder Basin*, 510 U.S. at 215). The Court has held that the CSRA provides meaningful judicial review where its administrative processes authorize the Federal Circuit to consider and decide constitutional claims. *Elgin*, 567 U.S. at 21.

Courts have upheld the CSRA's exclusivity against "collateral, systemwide challenge[s]," explaining that "what you get under the CSRA is what you get." *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005). Employees may raise arguments with broad consequences in CSRA matters, such as that a reduction-in-force exceeds an agency's authority or prevents it from carrying out its statutory functions. *Cf. Elgin*, 567 U.S. at 12 (rejecting "exception to CSRA exclusivity for facial or as-applied constitutional challenges to federal statutes," for "availability of administrative and judicial review under the CSRA generally turns on the type of civil service employee and adverse employment action at issue"). But that possibility does not turn one's employment claims into something else.

Plaintiffs cite *Axon Enterprise*, for the proposition that the issues raised in this case are not the issues the relevant administrative bodies customarily handle. Opp'n (ECF No. 63) at 27. But *Axon* cuts the other way. In *Axon*, the challenges were "to the structure or very existence of an agency"—i.e., that "an agency is wielding authority unconstitutionally." 598 U.S. at 189. *Axon* explicitly distinguished the challenges there from *Elgin* and a "specific substantive decision" like "firing an employee." *Id*. Indeed, *Axon* reaffirmed that a challenge to a termination is "precisely

the type of personnel action [that is] regularly adjudicated by the MSPB." *Id.* at 187 (quotation omitted).

Plaintiffs suggest that their claims are not subject to channeling because the President's removal of "members of each CSRA administrative agency has collapsed any implication of jurisdiction stripping that may have been discernible," citing *National Association of Immigration Judges v. Owen*, 139 F.4th 293 (4th Cir. 2025). There, when assessing whether the CSRA stripped the district court of jurisdiction, the Fourth Circuit remanded to a district court the first *Thunder Basin* inquiry—whether Congress's intent to preclude district-court jurisdiction is "fairly discernible in the statutory scheme." *Id.* at 303–04 (quoting *Thunder Basin*, 510 U.S. at 207). Plaintiffs notably decline to acknowledge that *Owen* concluded that all three factors of *Thunder Basin*'s second step were met, meaning the Fourth Circuit concluded that plaintiffs' claims— including their constitutional ones—were just the type Congress intended to be reviewed within the CSRA's statutory structure. *Owen*, 139 F.4th at 308–13.

The Supreme Court has already passed on the question whether Congress intended to preclude district court jurisdiction through the CSRA administrative scheme. And it answered the question, as the Fourth Circuit acknowledges, with a resounding yes. *See United States v. Fausto*, 484 U.S. 439, 452 (1988) (concluding that Congress's intent to foreclose review was "fairly discernable"); *Elgin*, 567 U.S. at 14 (concluding that the U.S. Office of Special Counsel ("Special Counsel") and MSPB are the "exclusive forum" for review of agency personnel action). The Supreme Court explained that the CSRA "prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review," *Fausto*, 484 U.S. at 443, and the "structure of the CSRA evinces Congress's intent because of 'the primacy of the MSPB for administrative resolution of disputes over adverse personnel action,'" *Owen*, 139

F.4th at 304–05 (quoting *Fausto*, 484 U.S. at 449). In short, it was the "elaborate" framework and "painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions" that convinced the Supreme Court that the Special Counsel and MSPB were the "exclusive forum" for review of agency personnel actions. *Elgin*, 567 U.S. at 10–12, 14. Questions about Special Counsel and MSPB quorums and removal protections were never a part of the Court's analysis. *See generally Fausto*, 484 U.S. at 439–55; *Elgin*, 567 U.S. at 1. Nor should they be. The Court already concluded that reinstatement of these members, at least during the pendency of their case, is improper. *See Trump v. Wilcox*, 145 S. Ct. 1415 (2025). And the temporary lack of a quorum does not affect the underlying structure and detailed scheme that the CSRA provides in any event.

*Owen* suggested, but remanded for the district court to decide, whether the President's termination of members of the MSPB compromises the "independence" of the boards and the way that the CSRA was intended to function. Even apart from the paucity of briefing on this point, and the fact that it would not provide any basis for resolving scores of individual employment claims in the sweeping manner at issue here, it would be extraordinary to suggest that the availability of a cause of action under the APA to resolve an employment matter turns on and off depending on the membership of various bodies at any given moment.

### B.    This Court Lacks Jurisdiction Over the Contractor Plaintiffs' Claims.

Plaintiffs attempt to avoid the jurisdictional limitations in claims brought by the contractor Plaintiffs by arguing that they do not seek to "challenge the terms of a contract that it has entered with the United States." Opp'n (ECF No. 63) at 30. As the parties appear to agree, to determine whether "a particular action" is "at its essence a contract action" subject to the Tucker Act or instead a challenge properly brought under the APA, a court looks at both "the source of the rights upon which the plaintiff bases its claims," as well as "the type of relief sought (or appropriate)."

*Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). Critically, in order to sidestep the jurisdictional issue, Plaintiffs ignore all of the plain language of the agreements that they signed with Global Media, disregard the language of the operative complaints, and ignore the relief they seek (in their own words). The Court should soundly reject Plaintiffs' flawed interpretations.

Plaintiffs argue that their claims are based on other sources of law apart from their contracts—namely the APA and the Constitution. Opp'n (ECF No. 63) at 31. But Plaintiffs' arguments are betrayed by the relief they seek and the source of that relief, which renders this Court without jurisdiction under the second *Megapulse* factor. The Abramowitz plaintiffs ask the Court to order Defendants to "cancel the termination of personal services contracts with approximately 500 employees" and "restore [Voice of America's] personnel and operating capacities such that the entities may continue their broadcasting activities at the level before the above actions were taken." Compl. (ECF No. 1) Prayer for Relief ¶ (c). Plaintiffs now try to distance themselves from the inevitable reading of their own words by arguing that the relief they seek does not sound in contract, but rather they seek to "cease" Defendants' conduct. Opp'n (ECF No. 63) at 32. Contrary to Plaintiffs' assertions, however, they "seek the classic contractual remedy of specific performance." *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985). And this Court cannot order the Government to continue to perform under a contract. *Id.* Such a request for an order that the government "must perform" on its contract is one that "must be resolved by the Claims Court." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 80 (D.C. Cir. 1985).

*    *    *

In sum, this Court is without jurisdiction to entertain Plaintiffs' employment claims.

II.    **Plaintiffs Fail to Sufficiently Allege Claims Under the APA (Count I).**

Defendants argued there were three primary reasons warranting dismissal of Plaintiffs'
APA claims: first, Plaintiffs fail to seek judicial review of a discrete agency action; second, there
are adequate alternative remedies available, thus precluding Plaintiffs' APA challenges; third,
Defendants' actions are committed to agency discretion. Defs.' Mot. (ECF No. 58) at 30–34. And
to the extent Plaintiffs attempt to use this action to indirectly challenge the President's Executive
Order, they simply cannot do so.[3] Plaintiffs' opposition does not change this outcome.

A.    **Plaintiffs Contend (and this Court Has Already Found) that the Agency Took
"Myriad" Actions That When Taken Together Violate the APA, but the APA
Requires Review of a Final, Discrete Agency Action.**

Plaintiffs do not identify a discrete and circumscribed agency action that Global Media has
taken and that could specifically be redressed by a federal court. In granting Plaintiffs' injunction,
this Court identified the "series" of "agency actions" at issue to be the "placement of employees
on administrative leave, termination of entire bargaining units of employees, termination of
[personal service contractors], and cancellation of grants." April 22, 2025, Order (ECF No. 29);
*see also* Mem. Op. at 24, *Widakuswara v. Lake*, Civ. A. No. 25-1015 (RCL) (D.D.C. Apr. 22,
2025), ECF No. 98 ("*Widakuswara* Mem. Op.").

Plaintiffs adopt an overly expansive reading of the APA in a circular effort to tie Global
Media's purported "dismantling" to a discrete agency action. Opp'n (ECF No. 63) at 34. But
notably that is not what this Court found when it granted Plaintiffs' relief in April. And in any
event, while Plaintiffs couch their claims as challenging the "discrete" decision to "dismantle"

---

[3]    Plaintiffs concede that they do not challenge the Executive Order, nor could they (for the
reasons explained in Defendants' motion). Thus, to the extent that Plaintiffs attempt to end-run the
APA or other sources of law to challenge the President's Executive Order, they acknowledge they
cannot do so. *See* Opp'n (ECF No. 63) at 39–40.

Voice of America (*id.* at 34), that "decision" is made up of "myriad" actions (as this Court has already found). *See Widakuswara* Mem. Op. at 24; *see also* Opp'n (ECF No. 63) at 35 ("It is true that Defendants took myriad actions."). These conflicting positions cannot be reconciled, and in any event fail to demonstrate a discrete and circumscribed agency action reviewable under the APA. *Norton v. S. Utah Wilderness All*., 542 U.S. 55, 62 (2004) (APA limits judicial review to "circumscribed, discrete agency actions"). Plaintiffs have failed to identify any overarching policy that plausibly would be subject to challenge. Notably, they point to no single document or memorandum. Nor do they even explain with any specificity what the policy allegedly was. To be subject to challenge, a policy would need to dictate particular steps to be taken, rather than being a general policy direction.

The challenged conduct here bears no resemblance to the final agency actions in, for example, *Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1 (2020), or *Biden v. Texas*, 597 U.S. 785 (2022). Those cases involved the wholesale termination or alteration of an agency program or policy, not generalized guidance that could lead to any of several different outcomes. As in *Lujan v. National Wildlife Federation*, Plaintiffs attempt to aggregate Defendants' actions regarding "the continuing (and thus constantly changing) operations of the" agency under its governing statutes and seek wholesale judicial review of Defendants' management of the Agency. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 890 (1990). Plaintiffs' challenge to the purported execution of the alleged plan to dismantle the Agency is no more reviewable agency action than was the Bureau of Land Management's "land withdrawal review program," which was "simply the name" those plaintiffs called the agency's operations, *id*. (cleaned up).  Thus, the Court should dismiss Plaintiffs' APA claim. *See Nat'l Treas. Emps. Union v. Vought*, No. 25-5091, 2025 WL 2371608, at *12–13 (D.C. Cir. Aug. 15, 2025) (alleged decision

to shut down the Consumer Financial Protection Bureau, inferred from various discrete actions its leadership took to downsize agency, did not constitute an "action," let alone a "final agency action," that is reviewable under the APA).

**B.    Plaintiffs Have Other Adequate Alternative Remedies, Which Precludes APA Review.**

It is black letter law that review under the APA is available only where "there is no other adequate remedy in a court." 5 U.S.C. § 704. In their opposition, Plaintiffs fall back on the misguided notion that there are "no alternative" remedies because "channeling through another forum would "foreclose all meaningful judicial review." Opp'n (ECF No. 63) at 39. Plaintiffs devote one short paragraph to counter Defendants' arguments that they have adequate, alternative remedies for relief. For all the reasons discussed above (*supra* § I), the CSRA provides Plaintiffs a meaningful alternative remedy and it ensures consistency in review of the same claims. Plaintiffs baldly state that without this Court's "intervention" under the APA (*see* Opp'n (ECF No. 63) at 39), there is "no remedy at all," but Plaintiffs' placement on administrative leave and "termination" of bargaining units are precisely the types of actions that are appropriately considered by the Merit Systems Protection Board and through the scheme that Congress intended.

**C.    Defendants' Actions Are Committed to Agency Discretion by Law.**

Agency action is "committed to agency discretion by law" when a "statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," which renders "meaningful judicial review impossible." *Steenholdt v. FAA*, 314 F.3d 633, 638 (D.C. Cir. 2003). Here, Defendants argued that the International Broadcasting Act provides no meaningful standard by which a court might adjudicate Plaintiffs' claims, which renders Defendants' actions committed to agency discretion by law. 5 U.S.C. § 701(a)(2); *see also* Defs.' Mot. (ECF No. 58) at 33.

Plaintiffs rejoin that there are "standards" by which to measure Defendants' conduct, but they point in very generalized terms to the International Broadcasting Act, the Voice of America Charter, "appropriations law," and "Defendants own statements." Opp'n (ECF No. 63) at 38. Notably, Plaintiffs do not point to a specific section or subsection of any of those sources of law in support of their argument, only stating in vague and conclusory terms that there are standards by which to evaluate Defendants' conduct. But Plaintiffs' vague references do not suffice.

A "very narrow exception" to the general rule allowing review applies "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971). Those circumstances are present here because the International Broadcasting Act is "drawn in such broad terms." For instance, the International Broadcasting Act, and this Court's April 22, 2025 injunction, required that Voice of America "serve as a consistently reliable and authoritative source of news." 22 U.S.C. § 6202(c)(1); *see also* Order at 3, *Widakuswara*, *supra*, ECF No. 99. As has previously been noted, none of those terms are defined within the International Broadcasting Act, nor does the Act provide any other quantifiable metric for measuring that "broad" standard. Similarly, the statute requires that Voice of America "news will be accurate, objective, and comprehensive," 22 U.S.C. § 6202(c)(1), that it "present a balanced and comprehensive projection of significant American thought and institutions," *id*. § 6202(c)(2), and that it "present the policies of the United States clearly and effectively and will also present responsible discussions and opinion on these policies," *id*. § 6202(c)(3). Undoubtedly, there are no legal norms to evaluate whether news is accurate, objective, or comprehensive, among others. Nor do Plaintiffs point to any. Further still, Congress required the CEO to "supervise" the networks, to "assess the professional integrity" of the networks, and to "ensure" that coverage is "balanced and

comprehensive." *Id.* § 6204(a); *id.* § 6202(b). If no standards for judging the agency action "are discernable, meaningful judicial review is impossible, and agency action is shielded from the scrutiny of the courts," *Drake v. FAA* 291 F.3d 59, 72 (D.C. Cir. 2002) (statute that permits an official to act whenever she "is of the opinion" affords "virtually unbridled discretion"); *see also Make the Road N.Y. v. Wolf*, 962 F.3d 612, 633 (D.C. Cir. 2020) (concluding that neither the statutory text nor structure provides any other legal standards constraining the Secretary's discretionary judgment).

## III.    Plaintiffs Fail to State Viable Constitutional Claims (Counts II and III).

### A.    Plaintiffs' Constitutional Claims are Barred.

Plaintiffs' constitutional claims are barred at the outset because they are purely statutory but are also meritless. *See* Defs.' Mot. (ECF No. 58) at 35–40. Plaintiffs argue that their claims are not foreclosed by *Dalton v. Specter*, 511 U.S. 462 (1994), because they are not bringing claims against the president or executive order and their claims allege that Defendants' unilateral dismantling of a Congressionally created agency violates structural limits on executive power, including the separation of powers, the Take Care Clause, and other constitutional guarantees. *See* Opp'n (ECF No. 63) at 40–41. Similar arguments, however, have been made and rejected by the D.C. Circuit in *National Treasury Employees Union*, 2025 WL 2371608, at *18.

In *National Treasury Employees Union*, 2025 WL 2371608, at *7, the case arose from several actions taken by the Consumer Financial Protection Bureau leadership to downsize the agency.  The claims in that case "target[ed] the defendants' putative decision to shut down the [Bureau]," and "the plaintiffs contend[ed] that a shutdown would violate statutes that establish the Bureau and require it to perform various tasks." *Id.* at *19. The plaintiffs also alleged that "because the Executive Branch cannot 'amend statutes unilaterally' or 'usurp legislative authority conferred

upon Congress,' ... a shutdown would also violate the separation of powers." *Id.* The D.C. Circuit determined that the principles from *Dalton* controlled the case.

In *Dalton*, 511 U.S. at 472, the Supreme Court explained that not "every action by the President, or by another executive official, in excess of his statutory authority is ipso facto in violation of the Constitution." Rather, the Court has carefully "distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* (collecting cases). The Constitution is implicated if executive officers rely on it as an independent source of authority to act, as in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), or if the officers rely on a statute that itself violates the Constitution, *see Dalton*, 511 U.S. at 473 & n.5. But claims alleging simply that an official has "exceeded his statutory authority are not 'constitutional' claims" that can be asserted through a direct cause of action. *Id.* at 473.

As the D.C. recognized in *National Treasury Employees Union*, 2025 WL 2371608, at *19, the Supreme Court in *Dalton* rejected a similar attempt to transform statutory claims into constitutional ones, which is precisely what the Plaintiffs in this case attempt to do. Similar to *National Treasury Employees Union*, in the instant case, "[t]he assertedly constitutional claim here begins with the premise that shutting down the [Voice of America] would violate the statutes that create the agency and require it to perform various mandatory tasks" and, "[b]ecause [] leadership decided to violate these statutes, the argument goes, it 'also violate[d] the constitutional separation-of-powers doctrine." *Id.* Plaintiffs' "supposed separation-of-powers violation turns entirely on whether [Global Media] officials violated the governing statutes." *Id.* at *19. Plaintiffs' claims cannot be reconciled with *Dalton* because the "claims allege nothing more than executive actions in contravention of statutes," which do not give rise to freestanding constitutional claims. *See id.* at *20; *see also Appalachian Voices v. EPA*, Civ. A. No. 25-1982 (RJL), 2025 WL 2494905, at *8

(D.D.C. Aug. 29, 2025) ("Our Circuit interprets *Dalton* as prohibiting a plaintiff from 'bringing a freestanding constitutional claim if the underlying alleged violation and claimed authority are statutory.'" (citing *Glob. Health Council v. Trump*, No. 25-5097, 2025 WL 2480618, at *1 (D.C. Cir. Aug. 13, 2025)).

Accordingly, Plaintiffs cannot bring independent constitutional claims and therefore the Court should dismiss Counts II and III.

### B.    Alternatively, Plaintiffs' Claim Brought Under the Separation of Powers (Count II) and Take Care Clause (Count III) Fails.

Even if the Court determines that Plaintiffs' constitutional claims are not barred, Plaintiffs' separation of powers claim and Take Care Clause claim fail. Plaintiffs argue that Defendants have violated the Presentment Clause, the Appropriation and Spending Clause, and the Take Care Clause, and "Defendants' actions, taken together or separately, violate the separation of powers." Opp'n (ECF No. 63) at 41–45. Plaintiffs are wrong.

First, in terms of Plaintiff's Presentment Clause argument, Plaintiffs contend that Defendants have violated the Presentment Clause because Defendants effectively have repealed statutes through their shuttering of Voice of America. *See* Opp'n (ECF No. 63) at 41. As demonstrated, however, Plaintiffs' claims are speculative at best because Plaintiffs have not identified any statue that Defendants have modified or repealed, nor has Plaintiff identified any such "bill" that violates the Presentment Clause. *See* Defs.' Mot. (ECF No. 58) at 36–37. Thus, this claim fails.

Next, in terms of Plaintiffs' spending and appropriations claim, Plaintiffs claim that "Defendants' actions—reducing [Voice of America] to a shell of an agency unable to perform its statutorily required functions which would necessarily lead to an impoundment of its appropriations—usurp Congress's constitutional role in controlling the federal purse." Opp'n

(ECF No. 63) at 41. Plaintiffs' spending and appropriations claim lacks merit. "When Congress appropriates sums of money for certain purposes, the Executive must spend it." *Vera Inst. of Just. v. Dep't of Just.*, Civ. A. No. 25-1643 (APM), 2025 WL 1865160, at *16 (D.D.C. July 7, 2025). The President cannot refuse to spend appropriated funds based on policy reasons alone, unless Congress explicitly approves rescission. *Id.*; *see also* Impoundment Control Act, Pub. L. No. 93-344, 88 Stat. 297 (1974) (appropriated funds "shall be made available for obligation" absent congressional rescission). Here, as explained in Defendants' opening brief, Defendants have not violated any particular provision of the congressional appropriation at issue, and the complaint is devoid of any factual development to suggest otherwise. *See* Defs.' Mot. (ECF No. 58) at 37–38. Again, merely reducing the size of Global Media, including the Voice of America, does not equate to a violation of the Appropriations and Spending Clauses. *Id.* Plaintiffs' bare assertions of fact are conclusory and "not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). And nowhere else in the complaint does Plaintiffs provide the "factual enhancement" necessary to support their spending-related constitutional claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Lastly, in terms of the Take Care Clause, Plaintiffs claim that "Defendants are not merely failing to take care that the myriad laws applicable to [Voice of America] are being faithfully executed . . . they are actively undermining these laws." Opp'n (ECF No. 63) at 43. Plaintiffs' conclusory allegations of acts taken in excess of statutory authority simply dispute the Executive Branch officials', not the President's, execution[4] of Congress's laws, but the Take Care Clause provides no basis to review the actions of subordinate Executive Branch officials. *See* Defs.' Mot.

---

[4]    Plaintiffs have vowed that they "bring no claim against the President or executive order." Opp'n (ECF No. 63) at 41.

(ECF No. 58) at 40. Plaintiffs have not identified any authority that suggests otherwise.  Also, Plaintiffs do not offer any independent basis for treating their Take Care Clause claim as "anything other than a rehashing of the same concern that animates" their statutory claims. *Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218, 245–50 (D.D.C. 2019).

*    *    *

Defendants' actions have not disregarded congressional statutory directives, repealed or modified any statutes, co-opted the power of the purse, or otherwise violated the separation of powers doctrine, and in any event, as discussed above, Plaintiffs have not put forward any independent constitutional claims as required by *Dalton*. Accordingly, Plaintiffs' constitutional claims fail, and the Court should dismiss Counts II and III.

## IV.    Plaintiffs Fail to Sufficiently Plead an Ultra Vires Claim (Count IV).

Plaintiffs also fail to state an ultra vires claim. The Supreme Court recently clarified the narrow scope of a non-statutory ultra vires claim, describing it as the judicial equivalent of a "Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (citation omitted). The Supreme Court explained that ultra vires claims are "strictly limited" to the "painstakingly delineated procedural boundaries" of the Court's decision in *Leedom v. Kyne*, 358 U.S. 184 (1958). *See Texas*, 605 U.S. at 681.  The *Kyne* exception applies only where an "agency has taken action entirely in excess of its delegated powers and contrary to a specific prohibition in a statute." *Id.*

Neither of these two exceptional circumstances applies here.  Plaintiffs merely attempt to "dress up a typical statutory-authority argument as an ultra vires claim." *Texas*, 605 U.S. at 666. Indeed, Plaintiffs argue that "Defendants have also acted ultra vires by acting in clear violation of duly enacted United States international broadcasting laws and appropriations legislation . . . which require that [Voice of America] continue broadcasting and producing objective, truthful news that

- 16 -

reaches significant global audiences." Opp'n (ECF No. 63) at 46. Defendants have not violated any "clear and mandatory" statutory command, and Plaintiffs fail to demonstrate that Defendants acted "entirely in excess of" their delegated powers and contrary to a specific prohibition in any law or statute. *See Fed. Express Corp. v. Dep't of Com.*, 39 F.4th 756, 765 (D.C. Cir. 2022) ("[U]ltra vires claimants must demonstrate that the agency has plainly and openly crossed a congressionally drawn line in the sand."). Simply put, Plaintiffs have not identified any statute that prohibits Global Media and Voice of America from restructuring. Also, contrary to Plaintiffs' assertions, Voice of America is not closed, has employees to provide mission support, and is meeting its statutory obligations.

Additionally, ultra vires review is not available where "a statutory review scheme provides aggrieved persons with a meaningful and adequate opportunity for judicial review, or if a statutory review scheme forecloses all other forms of judicial review." *Texas*, 605 U.S. at 681. Plaintiffs here have an "alternative path to judicial review." *Id.* Voice of America employees, including Plaintiff Abramowitz, may seek judicial review through the CSRA scheme, and contractors, such as Plaintiffs LaBruto and J. Doe II, can seek relief in the Court of Federal Claims. *See supra* at § I; *Nat'l Treas. Emps. Union*, 2025 WL 2371608, at *18 (determining that aggrieved the Bureau employees may seek judicial review through the CSRA scheme). As explained already, the Supreme Court repeatedly has held that the CSRA provides the exclusive means of redressing employment disputes involving federal employees, *see Elgin v. Dep't of Treas.*, 567 U.S. 1, 10–15 (2012); *Fausto*, 484 U.S. at 455, and "the [Tucker Act] statute provides . . . clear and convincing evidence that Congress intended to deny the District Court[s] jurisdiction to review" claims that are in essence contractual, *Bd. of Governors, Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 44 (1991). Allowing employee disputes and breach-of-contract claims to be reframed as an ultra

vires action against the relevant executive official would allow plaintiffs to easily circumvent the CSRA and the Tucker Act's remedial limits. *See Texas*, 605 U.S. at 681 (explaining that ultra vires review is not an "easy end-run around the limitations of the Hobbs Act and other judicial-review statutes"). This Court should reject such a maneuver here.

## V.    Defendants Should Be Relieved of Their Obligation to Comply with Local Rule 7(n)(1).

The Court should resolve the pending motion to dismiss, which raises significant threshold jurisdictional issues, before requiring production of the administrative record. Plaintiffs argue, however, that Defendants should be ordered to produce an administrative record because "the jurisdictional arguments that Defendants raise are intertwined with factual issues," introduce evidence outside the Complaint, and suggest that Defendants have taken no discrete final agency action. *See* Opp'n (ECF No. 63) at 47–49. Plaintiffs' arguments are unavailing and do not defeat Defendants' motion. Contrary to Plaintiffs' assertions, Defendants seek dismissal not based on an administrative record but instead based on the facts alleged in the Complaint and the arguments described in their motion to dismiss. Indeed, Plaintiffs were able to respond to Defendants' motion without an administrative record and to determine whether this Court has jurisdiction, in all events, even without an administrative record, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Vico Prods. Co. v. Nat'l Lab. Rels. Bd.*, 333 F.3d 198, 198 (D.C. Cir. 2003) (citations omitted).

Production of an administrative record would be unnecessary and inappropriate before the Court's resolution of the threshold issues raised in Defendants' motion to dismiss. *See In re United States*, 583 U.S. 29, 32 (2017) (vacating and remanding to the district court with instructions to rule on the government's threshold arguments regarding jurisdiction and reviewability under the

APA, which "likely would eliminate the need for the District Court to examine a complete administrative record."). And no additional facts or evidence are needed to resolve Defendants' motion to dismiss. Accordingly, Defendants respectfully submit that their motion for relief from Local Rule 7(n) should be granted.

## CONCLUSION

For these reasons, as well as those in Defendants' opening brief, the Court should dismiss Plaintiffs' complaint and relieve Defendants of their obligation to comply with Local Rule 7(n)(1).

Dated: September 9, 2025

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

BRIAN P. HUDAK, D.C. Bar #90034769
Chief, Civil Division

By: _____ */s/ Stephanie R. Johnson* _____
    STEPHANIE R. JOHNSON,
      D.C. Bar # 1632338
    BRENDA GONZÁLEZ HOROWITZ
      D.C. Bar # 017243
    Assistant United States Attorneys
    Civil Division
    601 D Street, NW
    Washington, DC 20530
    Main: (202) 252-2500

*Attorneys for the United States of America*