UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PATSY WIDAKUSWARA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> KARI LAKE, Senior Advisor to the Acting CEO of the United States Agency for Global Media, et al., <br><br> Defendants. | Civil Action No. 25-cv-1015 (RCL) |
| MICHAEL ABRAMOWITZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> KARI LAKE, Senior Advisor to the Acting CEO of the United States Agency for Global Media, et al., <br><br> Defendants. | Civil Action No. 25-cv-0887 (RCL) |

**DEFENDANTS' SURREPLY TO PLAINTIFFS' JOINT MOTION TO PAUSE REDUCTIONS IN FORCE IN SERVICE OF ENFORCING PRONG (3) OF THE PRELIMINARY INJUNCTION**

1

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................. 1

    I.  Defendants Have Not Violated Prong (3) of the Preliminary Injunction, Which Does Not Cover Personnel Decisions .................................................................. 1

    II.  The Court Lacks Jurisdiction to Pause the Reduction in Force ......................................... 3

    III.  Any Relief Should be Limited in Scope ............................................................................ 8

CONCLUSION .............................................................................................................................. 9

In April 2025, the Court ordered Defendants to "restore [Voice of America (VOA)] programming such that [U.S. Agency for Global Media (USAGM)] fulfills its statutory mandate that VOA 'serve as a consistently reliable and authoritative source of news,' 22 U.S.C. § 6202(c)." ECF 98 at 36. This dictate—prong (3) of the preliminary injunction—is vague and uncertain. But since April, Defendants have brought VOA employees back to work and resumed programming across multiple media and in multiple languages. *See* Exhibit A, December 8, 2025, Declaration of Frank Wuco ("Wuco Decl.") ¶ 4. As detailed in the attached Wuco declaration, Defendants have also formulated a "plan for compliance" with statutory mandates that the Court has identified concerning foreign-language broadcasting. Wuco Decl. ¶¶ 6-7; *see* ECF 164 at 9-10. As a result of these restoration actions, Defendants have, along with this surreply, moved to dissolve prong (3). But if the Court concludes that dissolution is not warranted, Defendants request that, before the Court enforces prong (3), the Court modifies prong (3) to specify what Defendants must do to comply. As of now, Plaintiffs fail to prove that Defendants have not complied with prong (3) and that a temporary pause of the reduction in force (RIF) is necessary to ensure compliance moving forward. Plaintiffs also fail to show that the Court has jurisdiction to pause the RIF and that, even if jurisdiction existed, a full pause is necessary to provide complete relief. The Court should deny Plaintiffs' motion.

## ARGUMENT

### I. Defendants Have Not Violated Prong (3) of the Preliminary Injunction, Which Does Not Cover Personnel Decisions.

Before "enforcing" an injunction, a court must first "determine whether the defendant's conduct violates the existing order." ECF 164 at 7; *see Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004). If so, a movant is entitled only to "the relief to which [the movant] is entitled under [the injunction]." *Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24, 29 (D.C.

Cir. 2005) (quoting *Watkins v. Washington*, 511 F.2d 404, 406 (D.C. Cir. 1975)). Defendants have not violated prong (3) of the preliminary injunction, and the relief Plaintiffs seek goes far beyond what prong (3) entitles them to.

Prong (3) requires Defendants to "restore VOA programming such that USAGM fulfills its statutory mandate that VOA 'serve as a consistently reliable and authoritative source of news," 22 U.S.C. § 6202(c)." ECF 98 at 36. In line with the "general rule," this language should "construed narrowly" to "make sure that [Defendants] . . . have clear notice of what they are" required to do. *Schering Corp. v. Ill. Antibiotics Co.*, 62 F.3d 903, 906 (7th Cir. 1995). Prong (3) does not explicitly require Defendants to provide a specific amount of live radio in specific languages or expressly mandate that Defendants exercise their authority in a certain way to live up to broad statutory directives. *See* Fed. R. Civ. P. 65(d)(3) (requiring that an injunction "describe in reasonable detail . . . the act or acts restrained or required"). Indeed, prong (3) provides no guidance as to the acts required for compliance.

Plaintiffs do not defend prong (3)'s lack of specificity. Instead, Plaintiffs devote a large portion of their reply to opining on Defendants' compliance with statutes unmentioned in prong (3). *See* ECF 159 at 5-12. This distracts from the main issue raised by Plaintiff's motion—whether Defendants have violated prong (3)—because Plaintiff cannot prove such a violation. Defendants have complied with prong (3), *see e.g.*, ECF 153 at 9; *see generally* Wuco Decl., and have now formulated a plan to resume "Korean language broadcasting" and Kurdish language broadcasting," on both radio and digital platforms in line with statutory obligations identified by the Court, Wuco Decl. ¶¶ 6–7; *see* ECF 164 at 9–10. Regardless of whether Plaintiffs agree with Defendants' policy decisions, they cannot show that these decisions violate prong (3)'s vague mandate.

The flaws in Plaintiffs' arguments concerning the RIF follow from the Plaintiffs'

2

misreading of prong (3)'s obligations. Prong (3) does not require "particular employment and personnel decisions." ECF 153 at 8. Prong (1) did that, and the D.C. Circuit stayed prong (1)'s enforcement. *See Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *1 (D.C. Cir. May 3, 2025). Accordingly, it is hard to see Plaintiffs' motion as anything more than an attempt to dodge an unfavorable appellate ruling. Even if the RIF implicates prong (3), Plaintiffs' arguments do not fare any better. Plaintiffs assume that Defendants' acts thus far are non-compliant and argue that the RIF will "cement" this non-compliance. ECF 159 at 12. But Plaintiffs fail to show that Defendants have not complied with prong (3) of the injunction. Because the RIF "will not affect Voice of America's ability to broadcast as it is currently broadcasting," ECF 153 at 9, and Plaintiffs have not demonstrated that VOA's current broadcasting ability is below the level required by prong (3), Plaintiffs have not shown that the RIF would result in a violation of prong (3).

In sum, Plaintiffs have not demonstrated a current or impending violation of prong (3) of the preliminary injunction. Even if they did, they would not be entitled to a pause of the RIF, as prong (3) does not cover personnel decisions. The Court should not accept Plaintiffs' invitation to *sub silentio* modify prong (3) by interpreting it to allow for judicial micromanagement of Defendants on an ongoing and indefinite basis.

## II. The Court Lacks Jurisdiction to Pause the Reduction in Force.

Defendants previously explained that, to the extent the Court considered the Plaintiffs' motion to constitute a new motion for a preliminary injunction, Plaintiffs failed to meet the four-part test for preliminary injunctive relief. ECF 153 at 11–18. One of Defendants' arguments was that Plaintiffs are unlikely to succeed on the merits because the Court lacks jurisdiction to suspend the reduction in force. *Id.* at 11–15. Indeed, the D.C. Circuit, in this very case, has already said as much. *Widakuswara*, 2025 WL 1288817, at *2 ("The district court likely lacked jurisdiction

3

over USAGM's personnel actions."). Plaintiffs offer five responses. None have merit.

First, Plaintiffs rely on the D.C. Circuit's *refusal* to reconsider en banc the motion panel's conclusion that the Court likely lacked jurisdiction over personnel actions. ECF 159 at 14. This is because a statement respecting the denial of reconsideration en banc provided that the Court is not foreclosed from considering whether prong (3) allowed judicial intervention in personnel decisions. *Widakuswara v. Lake*, Case No. 25-5144, Doc. 2117869 at 3 (May 28, 2025). Even if the Court, as a formal matter, can consider the issue "in the first instance," *id.*, D.C. Circuit precedent clearly provides an answer. The D.C. Circuit has "long held that federal employees may not use the Administrative Procedure Act to challenge agency employment actions." *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1010 (D.C. Cir. 2009). This remains true even if the plaintiffs raise a "systemwide challenge" to an agency's policy. *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009).[1] Regardless, a federal employee must follow the "exclusive procedures" that Congress has provided. *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 755 (D.C. Cir. 2019) (quotation omitted)). The Court should reject Plaintiffs' attempt to circumvent these procedures.

Next, Plaintiffs rely on a case that cuts against their arguments. As Defendants previously explained, *see* ECF 153 at 12-13, in *National Treasury Employees Union v. Vought*, the D.C. Circuit held that, because of the Civil Service Reform Act (CSRA), a district court lacks subject-matter jurisdiction to consider claims that "flow from [a federal employee's] loss of employment." 149 F.4th 762, 774-76 (D.C. Cir. 2025). Plaintiffs essentially concede that this case binds the

---

[1] To the extent Plaintiffs argue immediate judicial review is necessary because of the scale of the RIF, the D.C. Circuit has already concluded that administrative agencies are capable of handling these matters. *See Widakuswara*, 2025 WL 1288817, at *2 n.2 ("[A]dministrative agencies are not powerless to issue broad-reaching relief in large-scale personnel matters.").

4

Court with respect to most Plaintiffs. *See* ECF 159 at 15-16. But Plaintiffs contend that *NTEU* supports the ability of Reporters Sans Frontières and Reporters Without Borders, Inc. (the "RSF Plaintiffs") and The NewsGuild-CWA (TNG-CWA) to seek a personnel-related injunction. *See id.* Not so. Although *NTEU* did not apply CSRA channeling with respect to plaintiffs not seeking "redress for employment-related injuries," 149 F.4th at 776, Plaintiffs' motion to pause the RIF is exclusively based on injuries that would result from Defendants' employment decisions, *see* ECF 144 at 2 (requesting that the Court "temporarily enjoin[] the widescale reduction in force (RIF)"). The CSRA would be turned "upside down" if the RSF Plaintiffs and TNG-CWA could challenge these employment decisions in this Court. *United States v. Fausto*, 484 U.S. 439, 449 (1988). The "exclusion" of Plaintiffs who are not individual government employees "from the provisions establishing administrative and judicial review for personnel action" of the type challenged here "prevents [them] from seeking review" under other provisions. *Id.* at 455. It would be odd if strangers to the employment relationship—the RSF Plaintiffs and TNG-CWA—could seek judicial review in this Court when the affected federal employees cannot. The Court should not accept this leapfrogging attempt.

Plaintiffs' third argument is based on a decision from the Fourth Circuit that questioned whether, in the light of Presidential control of the MSPB and Office of the Special Counsel, "Congress's intent to preclude district-court jurisdiction is 'fairly discernible in the statutory scheme.'" *Nat'l Ass'n of Immigr. Judges v. Owen*, 139 F.4th 293, 304 (4th Cir. 2025) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994)); *see* ECF 159 at 16-17. The Court should not follow *Owen* because the Chief Justice recently stayed the Fourth Circuit's mandate. *See Margolin v. Nat'l Ass'n of Immigr. Judges*, 25A662 (Dec. 5, 2025). This stay is in line with Supreme Court precedent, which answers—with a resounding "yes"—the question of whether

5

Congress's intent is "fairly discernable" in the CSRA. *See Fausto*, 484 U.S. at 452; *Elgin v. Dep't of Treasury*, 567 U.S. 1, 23 (2012). This is because of, for example, the CSRA's "elaborate" framework and "the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions." *Elgin*, 567 U.S. at 11-12 (quotation omitted). In these cases, the Supreme Court did not place any weight on statutory removal protections for members of the MSPB or the Office of Special Counsel. Therefore, the Court should not follow the direction of the Fourth Circuit—which appears to be headed for Supreme Court reversal—and should instead follow Supreme Court precedent in this area.

Fourth, Plaintiffs argue that, because of the cancellation of collective bargaining agreements with Plaintiffs AFSCME and AFGE, the Court has jurisdiction over the unions' claims. ECF 159 at 17–18. But, as Defendants previously argued, this argument is irrelevant in the light of union members' ability to pursue challenges to the RIF under the CSRA. *See* ECF 153 at 14; *NTEU*, 149 F.4th at 774; *Widakuswara*, 2025 WL 1288817, at *2-3. For the same reasons as above, the unions should not be able to leapfrog their members in seeking judicial review of personnel decisions. *See supra* at p.6. Also, another judge in this District recently enjoined Defendants USAGM and Lake from enforcing Section 2 of Executive Order 14343—which excludes USAGM from coverage under Chapter 71 of Title 5 of the U.S. Code—with respect to USAGM employees represented by AFSCME and AFGE. *AFSCME v. Trump*, Case No. 1:25-cv-3306-PLF (Nov. 18, 2025). This order includes a temporary prohibition on the cancellation of "the collective bargaining agreement[s]" between USAGM and AFSCME and AFGE. *Id.* (alteration in the original). Accordingly, at present the unions have access to "the CSRA administrative channel" through which they can challenge action by federal employers. ECF 159 at 18. It follows that the Court lacks jurisdiction to review the unions' claims based on Defendants'

personnel decisions. *See AFGE v. Trump*, 929 F.3d 748, 755 (D.C. Cir. 2019) ("Congress intended the [FSLMRS] scheme to be exclusive with respect to claims within its scope.").

Fifth, Plaintiffs attempt to shrug off the fact that the Supreme Court has recently intervened to stay district court orders preventing the Executive Branch from carrying out reductions in force. *See McMahon v. New York*, 145 S. Ct. 2643 (2025); *Office of Pers. Mgmt. v. Am. Fed'n of Gov't Emps.*, 145 S. Ct. 1914 (2025). Plaintiffs suggest that the Court should not pay much attention to these stay decisions because the Supreme Court "gave no reason for its stay[s]." ECF 159 at 18. But, regardless of length, the Supreme Court's interim orders "inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). And, when paired with D.C. Circuit precedent forbidding judicial intervention in personnel decisions covered by CSRA channeling, the Supreme Court's stay orders provide a compelling reason to deny Plaintiffs' motion.

Plaintiffs similarly attempt to dismiss the Fourth Circuit's decision in *Maryland v. Department of Agriculture*, 151 F.4th 197 (4th Cir. 2025), as a case only about state standing. *See* ECF 159 at 19. But as Plaintiffs themselves recognize, *see id.*, the Fourth Circuit concluded that the CSRA's "reticulated scheme further supports [the court's] conclusion on redressability." *Maryland*, 151 F.4th at 215; *see id.* ("Given this comprehensive review system, which excludes the federal district courts and where terminated employees are directed to challenge their terminations and seek reinstatement, we are skeptical that the broad relief that the States sought in this case is available to them in a federal district court."). Even if "dictum," ECF 159 at 19, the Fourth Circuit's skepticism about the availability of judicial review supports Defendants' argument.

For these reasons, the Court lacks jurisdiction to temporarily halt the RIF.

7

### III. Any Relief Should be Limited in Scope.

The Court should not pause the RIF. But if the Court decides that preliminary injunctive relief is warranted, "any injunctive relief the Court grants should be limited to Plaintiffs alone—and, even then, only to those Plaintiffs who have clearly shown that they have standing and face imminent irreparable harm in the absence of relief." ECF 153 at 18. The Court should also limit any relief to VOA employees covered by the RIF. *See id.* at 19.[2]

Plaintiffs respond by arguing that limiting relief to Plaintiffs would not be "distinctly different" than temporarily pausing the RIF in full. ECF 159 at 20. This is not the standard. To the extent that a full pause of the RIF is "[un]necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quotation omitted), the Court may not issue that relief, *see, e.g.*, *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (staying preliminary injunctions to "the extent that the injunctions are broader than necessary to provide complete relief to each plaintiff with standing to sue"). And Plaintiffs, despite requesting extraordinary relief, provide no specifics as to what percentage of the employees covered by the RIF is needed for Defendants to comply with prong (3)'s vague mandate. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (explaining that the plaintiff bears the burden of making a "clear showing" that he "is entitled to [a preliminary injunction]"). Also, even if the Court finds that certain non-VOA employees have VOA responsibilities, *see* ECF 159 at 20, its temporary pause should extend only to those non-VOA employees, rather than every USAGM employee included in the RIF.

---

[2] And Defendants request that the Court "stay any such injunction pending any appeal authorized by the Solicitor General." ECF 153 at 18 n.2.

8

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion.

Dated: December 8, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division, Federal Programs Branch

*/s/ Abigail Stout*
ABIGAIL STOUT (DC Bar No. 90009415)
ELIZABETH HEDGES
BRANTLEY T. MAYERS
Counsel to the Assistant Attorney General
Civil Division
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
Telephone: (202) 514-2000
Abigail.Stout@usdoj.gov

*Attorneys for Defendants*